UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Derrick Jones, Jerome Jones, and Darnell Rusan,<br><br>    PLAINTIFFS,<br><br>v.<br><br>City of St. Louis, et al.,<br><br>    DEFENDANTS. | Cause No. 4:21-cv-600-NCC |

**Defendants City of St. Louis, Fowlkes, Turner, Lewis, Alexander, Carson, and Barnes'
Memorandum in Support of their Motion to Dismiss**

Come now Defendants City of St. Louis, Javan Fowlkes, Aisha Turner, Michelle Lewis, Direll Alexander, Jeffrey Carson and Adrian Barnes, and in support of their motion to dismiss Counts I, II, III, IV and VI of plaintiffs' first amended complaint state the following:

**1.     Plaintiffs failed to state a claim for relief on Counts I, II and III of the First Amended Complaint alleging excessive force by individual officers in violation of the Fourteenth Amendment, because they have alleged merely *de minimis* force and injuries.**

Defendants Fowlkes, Turner, Lewis and Alexander are entitled to qualified immunity on plaintiffs' individual claims of excessive force. The officers are shielded "from liability if their conduct does not violate clearly established constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 420 U.S. 308 (1975). A two-step inquiry is generally employed when making a determination of qualified immunity: whether there was a constitutional violation, and if so, whether the violation was of a clearly established right a reasonable officer should know. *Saucier v. Katz*, 533 U.S. 194 (2001). "The Court may address either question first." *Lombardo v. Saint Louis City*, 361 F. Supp. 3d 882, 893 (E.D. Mo. 2019)(*citing Boude v. City of Raymore*, 855 F.3d 930, 933

(8th Cir. 2017)). "If either question is answered in the negative, the public official is entitled to qualified immunity." *Id.* quoting *Norris v. Engles*, 494 F.3d 634, 637 (8th Cir. 2007).

The inquiry in an excessive force case brought by a pretrial detainee is whether there has been a violation of his fourteenth amendment right to due process. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). Though this area of law is evolving,[1] the analysis employed by the Supreme Court in evaluating whether force is excessive in violation of the fourteenth amendment looks at whether the force used by an officer is unreasonable:

> "Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)(internal citation omitted).

The reasonableness inquiry necessarily requires some evaluation of the significance or amount of force used as well as the significance or severity of resulting injuries. The Eighth Circuit has held that "[a] *de minimis* use of force is insufficient to support a claim, and it may well be that most plaintiffs showing only *de minimis* injury can show only a corresponding *de minimis* use." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019). And while evidence of *de minimis* injury may not necessarily foreclose a claim of excessive force, it has significant weight in bearing on the question of whether the force was reasonable under the circumstances. *Chambers v. Pennycook*, 641 F.3d 898 (8th Cir. 2011)(finding that it was reasonable for officers to believe "they remained within constitutional bounds" when their use of force caused only *de minimis* injury).

The Eighth Circuit has never held that pepper spray necessarily causes more than *de minimis*

---

[1] Defendants note that the *Kingsley* was a 5-4 decision, and that the dissenting opinion provides that the correct standard for evaluating excessive force claims by pretrial detainees is whether there has been an intentional infliction of punishment, not objectively unreasonable force.

2

injury, *Peterson v. Kopp,* 754 F.3d 594 (8th Cir. 2014), and the absence of significant injury has a bearing on whether force used was more than *de minimis.* A burst of pepper spray that causes momentary pain or discomfort is not excessive force at all times and under all circumstances. Rather, like a knee in the back, it can be regarded as a *de minimis* use of force.  Cf. *White v. Jackson,* 865 F.3d 1064 (8th Cir. 2017).

Plaintiffs Derrick Jones, Jerome Jones and Darnell Rusan have alleged in conclusory terms an "excessive" use of pepper spray, and only *de minimis* injuries caused by the defendants' uses of force. The lack of significant injury experienced from pepper spray supports the determination that the uses of spray were not only reasonable, but *de minimis* uses of force, such that the officers were not on notice that such use of pepper spray was in violation of plaintiffs' clearly established fourteenth amendment rights, thereby entitling the officers to qualified immunity on these claims.

### a. **Count I: Derrick Jones claim against Lt. Javan Fowlkes**

Plaintiff Derrick Jones alleges he was sprayed on or around December 14, 2020, when he expressed a desire to be moved to a different cell because his cellmate was experiencing signs of COVID-19 infection. Doc. #9, pp. 5-6, para. 18. Plaintiff does not allege any facts confirming that the cellmate was actually positive for COVID-19 infection. Derrick Jones alleges that a female corrections officer engaged in conversation with him to see if moving cells was a possibility before ultimately telling him he would have to stay in his current cell. *Id* at para. 19. Plaintiff alleges that after being told he would have to return to his cell, the female corrections officer left the wing before returning with a can of mace and other corrections officers.  Doc. #9, p. 6, paras 19-20.  He then alleges the female corrections officer then sprayed him in the eyes and face without giving any warning. *Id.* He alleges he was then taken to the ground and beaten, put in handcuffs, and sprayed by Lt. Fowlkes without being warned. *Id* at paras. 22-23. He concludes that at the time he was sprayed, "he was not acting aggressively and was not threatening staff safety." *Id* at para. 24. He

3

alleges that he was then taken to a holding cell in the medical unit where he was sprayed by Lt. Fowlkes for no reason, before being decontaminated by medical staff. Doc. #9, p. 7, para. 27-28. He claims the pepper spray caused his face and eyes to burn, that he had difficulty breathing, and that he spent several days with "the burning mace clinging to his skin and clothes." *Id* at para. 28.

Derrick Jones' injuries amount to burning on his face and eyes after he was sprayed and until he was helped to wash them off with water in the medical unit, and some burning on his skin due to mace residue being left on his clothing. These *de minimis* injuries, combined with the circumstances of the occurrence, bear heavily on the reasonableness analysis. As pled, this instance of use of force occurred during a tense and uncertain time for both inmates and corrections staff as they worked to prevent the spread of COVID-19 virus in the jail. Derrick Jones was displeased with his directions to return to his cell because he believed his cellmate was experiencing symptoms of the virus. A physical confrontation ensued which resulted in Derrick Jones being restrained and transported to the medical unit.

Plaintiff's allegations cannot support a finding that he suffered more than *de minimis* injuries after being sprayed by Lt. Fowlkes. Plaintiff's injuries as pled, combined with the circumstances of the incident establish that Lt. Fowlkes is entitled to qualified immunity. As observed by this circuit, "[a] limited application of mace may be much more humane and effective than a flesh to flesh confrontation with an inmate." *Jones v. Shields*, 207 F.3d 491, 496 (8th Cir. 2000)(internal citation omitted). Lt. Fowlkes is entitled to qualified immunity because both the use of force and resulting injuries were *de minimis*, and it would be reasonable for Lt. Fowlkes to believe he remained within constitutional bounds.

    **b.**    **Count II: Jerome Jones' claim against Lt. Javan Fowlkes**

Plaintiff Jerome Jones pleads that he was pepper sprayed on or about February 9, 2021 when staff asked him to move cells. Doc. #9, p. 7, para. 30. Plaintiff then alleges the following: "CO

4

Robinson and CO Allen told Jerome that Lt. Fowlkes was going to mace Jerome if he did not comply. Jerome indicated again he would not move cells, but he was not physically resisting. Jerome was in handcuffs throughout the course of this entire conversation." *Id* at para. 31. He then alleges that the three officers placed him "in a no-contact visiting room" before he was again asked if he was going to cooperate to move cells. *Id* at para. 31. Plaintiff alleges he "responded, 'No' and Lt Fowlkes sprayed an excessive amount of mace into the visiting booth until it filled the room." *Id* at paras. 32-33. Plaintiff alleges Lt. Fowlkes then closed the door to the visiting booth and plaintiff Jerome Jones was left there for approximately 25 minutes. *Id* at para. 34.

Plaintiff Jerome Jones alleges this use of force caused him to have difficulty breathing while in the visiting booth after being sprayed and that he experienced burning eyes, face and body after being sprayed. Doc. #9, p. 8, paras. 35, 38. He alleges he experienced respiratory symptoms, including difficulty breathing, after this incident, and that he continues to experience these symptoms. *Id* at paras. 41-42. He does not allege that he received any sort of medical diagnosis or treatment for these symptoms while in jail or since being released from custody in mid-April, but that he personally believes these respiratory symptoms were caused by this experience of pepper spray exposure while in jail. *Id* at para. 42.

Plaintiff Jerome Jones admits that he was sprayed by Lt. Fowlkes when he repeatedly refused to cooperate with the officer's directions. At this point, and plausibly, Lt. Fowlkes was put in a position that required some use of force to compel Jerome Jones' obedience. As pleaded by plaintiff, Lt. Fowlkes asked Jerome Jones to cooperate and warned him that he would be required to use spray if Jones would not comply. The force used by Lt. Fowlkes was reasonable under the circumstances, especially in light of Jones' defiance and lack of measurable injury which can be reliably interpreted to have resulted from this incident. The *de minimis* injuries combined with plaintiff's admitted defiance and lack of alternatives for the officer to pursue demonstrate that the

5

use of pepper spray as alleged did not amount to knowingly violating the law or plain incompetence on the part of Lt. Fowlkes, and accordingly this court should find that Lt. Fowlkes is entitled to qualified immunity on Jerome Jomes' claim of excessive force in Count II.

### c.     Count III: Plaintiff Darnell Rusan's claim against Defendants Lt. Aisha Turner, Officer Michelle Lewis, Officer Direll Alexander and Lt. Javan Fowlkes

Plaintiff Darnell Rusan alleges that while in custody since "around Thanksgiving of 2020" and "[h]e has been personally maced at least three times, and has witnessed countless other instances of excessive and unwarranted macing by CJC staff." Doc. #9, p. 8, para. 43. One of these instances of use of mace was in December of 2020. Doc. #9, p. 9, para 44. Darnell Rusan alleges he was outside his cell to made a phone call when Defendant Aisha Turner sprayed him while he was in the process of terminating the phone call and without warning him. *Id* at paras. 44-47. He alleges that he picked up a chair to "shield" himself from the spray when another officer, Michelle Lewis, also sprayed him without warning. *Id* at para. 48. He then alleges he was beaten and threatened by other officers including Direll Alexander while they transported him to the medical unit and then to another unit in the jail. Id, p. 10, para. 51-52. The extent of Plaintiff Rusan's injuries as alleged include burning eyes and skin after being pepper sprayed, pain, dizziness and some bleeding. *Id* at paras. 52, 54. Plaintiff Rusan alleges that he sought but was denied medical treatment for his injuries, which would presumably have included washing his eyes and face and having his bleeding wound assessed. *See id* at para. 55.

Plaintiff Rusan also alleges he was sprayed by Lt. Fowlkes in February 2021 (at or around the time of inmate riots occurring within CJC) when he was being strip searched. *Id* at paras. 56-57. Plaintiff Rusan alleges that he refused to allow Lt. Fowlkes to search him because he had already been searched and was uncomfortable, which led to Lt. Fowlkes spraying him. Doc. #9, p. 10-11, paras. 57-60. He also alleges that he made a joke to one of the searching officers asking, "do you

6

actually like this job?" prior to being searched. *Id.* Plaintiff Rusan's alleges no measurable injuries after being sprayed by Lt. Fowlkes other than the discomfort caused by the spray.

In addition to evaluating the plausibility of Plaintiff Rusan's allegations about his treatment and injuries at the hands of Lt. Turner, Lewis and Alexander, this Court may take judicial notice[2] that on June 24, 2021, Plaintiff Rusan was indicted by grand jury for his conduct in CJC on or about December 19, 2021, on charges of felony and misdemeanor assault for causing physical injury to Officer Lewis by throwing a chair at her and beating her, and placing Lt. Turner in apprehension of physical injury by throwing a chair at her. See Cause No. 2122-CR00762, pending in the 22nd Judicial Circuit, State of Missouri. The charging documents in this case demonstrate that the incident giving rise to the indictment is the same incident Rusan complains of in this proceeding. See Exhibit A, Probable Cause Statement in Cause No. 2122-CR00762.

Plaintiff's allegations of injury experienced at the hands of Lt. Turner, Officer Lewis in December of 2021, amount to no more than *de minimis* injuries resulting from the officers' reasonable use of force, entitling these officers to qualified immunity. As pled, Lt. Turner and Officer Lewis sprayed Darnell Rusan while he was outside his cell near the phones in the housing unit. Rusan himself admits he picked up a chair, which is corroborated by the charging documents in his pending criminal case. He experienced, merely burning, eyes and skin attributable to the pepper spray, used by Turner and Lewis. This, in light of the fact that he was charged for placing Lt. Turner in apprehension of immediate physical injury, and in fact causing physical injury to Officer Lewis, allows the Court to conclude that his injuries were merely *de minimis* and the use of force was reasonable under the circumstances.

Similarly, Plaintiff Rusan's claim against Defendant Direll Alexander should be barred

---

[2] Federal district courts appropriately take judicial notice of state court files when they are relevant to issues in federal court. *See Knutson v. City of Fargo*, 600 F.3d 992, 1000 (8th Cir. 2010).

7

because plaintiff has plead only *de minimis* injuries. Officer Alexander became involved with Rusan immediately following the incident involving Turner and Lewis, now the subject of a felony assault prosecution. Alexander was tasked with transporting Rusan to different areas of the jail, and during this transportation allegedly slammed Rusan's head into a wall, used threatening language and choked him. Rusan pleads no measurable injuries following these instances with Officer Alexander. Plaintiff's plausible allegations fail to show that Officer Alexander inflicted more than *de minimis* injuries as a result of his allegedly violent transportation of Rusan.

Finally, the claim against Lt. Fowlkes should not be permitted to proceed. Lt. Fowlkes is alleged to have sprayed an inmate who, even if misunderstood, was uncooperative during a strip search being conducted at a tumultuous and dangerous time in the jail. These circumstances combined with Plaintiff Rusan's lack of measurable injuries entitle Lt. Fowlkes to qualified immunity on this claim of excessive force.

Because Rusan has failed to plead facts showing that each defendant's conduct, individually evaluated, was unreasonable, involving nothing more than *de minimis* injury, he is unable to state a claim for more than *de minimis* force, and the officers are entitled to qualified immunity.

### d.    Conclusion as to Counts I, II and III

Plaintiffs Derrick Jones, Jerome Jones and Darnell Rusan have failed to plead any injuries exceeding the *de minimis* threshold.[3] None received medical treatment. Those alleging medical treatment was refused them do not allege what medical treatment, if any, was necessary beyond having their eyes and skin washed. Plaintiff Jerome Jones' allegation that he is experiencing long term respiratory effects of the spray is not supported by any plausible facts supporting an actual

---

[3] *See Peterson,* 754 F.3d at 601 (finding injuries *de minimis* and officer entitled to qualified immunity when "viewing the facts in the light most favorable to [inmate plaintiff], he was sprayed directly in the face with pepper spray for just a few seconds, and suffered some pain, discomfort, and peeling under his eyes for several days after the incident. He did not seek medical care and his injuries resolved themselves without medical intervention").

diagnosis or causation. Therefore, plaintiffs' claims in Counts I, II, and III against the individual officers should be dismissed.

**2.     Plaintiffs' claims against the City, Commissioner Carson and Superintendent Barnes must be dismissed because plaintiffs have failed to show the existence of a widespread custom or policy condoning use of excessive force; or deprivation of water and inhumane housing conditions.**

In addition to suing multiple individual officers at CJC, plaintiffs have sued the City of St. Louis, Acting Commissioner of Corrections Jeffrey Carson and Superintendent of CJC Adrian Barnes in their official capacities. In order to obtain relief under 42 U.S.C. §1983 against these defendants, the plaintiffs must plead and prove an actionable municipal policy or custom that caused the claimed constitutional violation. E.g., *Bd. Of County Commissioners v. Brown*, 520 U.S. 397 (1997); *Marsh v. Phelps County*, 902 F.3d 745 (8th Cir. 2018). In order to adequately plead an actionable custom or policy under §1983, a plaintiff must do more than allege conclusions: the complaint must state a claim with "facial plausibility," i.e., the plaintiff pleads factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009).

A plaintiff cannot establish §1983 liability by only identifying conduct properly attributable to the municipality; instead, a plaintiff must also demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights. Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee. In *Soltesz v. Rushmore Plaza*

9

*Civic Ctr.*, 847 F.3d 941, 947 (8th Cir. 2017), the Eighth Circuit observed that, "The Supreme Court has set a high bar for establishing municipal liability under § 1983."

Proof of "custom" liability under §1983, therefore, requires (1) proof of existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the municipality's employees; (2) deliberate indifference to or tacit authorization of such conduct by the municipality's officials after notice of the misconduct; and (3) the pattern of misconduct was the "moving force" behind the plaintiff's injury. *Metler v. Whitledge*, 165 F.3d 1197, 1204 (8th Cir. 1999). "Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson v. City of Mountain View*, 709 F.3d at 1216.

The Eighth Circuit has not directly addressed the quantum of "continuing, widespread, persistent" conduct that can establish liability, but its view closely parallels the Fifth Circuit's view that when a plaintiff uses prior incidents to allege a pattern, the prior incidents "must have occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees." *Webster v. Houston*, 735 F.2d 838, 842 (5th Cir. 1984) (en banc). Both the Eighth and Fifth Circuits reason that to hold municipalities liable for conduct that does not rise to the level of continuing, widespread frequency would create the respondeat superior liability that the Supreme Court repeatedly has rejected in §1983 actions. When a plaintiff alleges an unwritten or unofficial policy, there must be evidence of a practice, so permanent and well-settled as to constitute a custom, that existed--a custom having the force of law. *See Brewington v. Keener*, 902 F.3d 796, 801 (8th Cir. 2018); see also *Burbridge v. City of St. Louis,* 430 F. Supp. 3d 595, 618ff. (E.D.Mo. 2019), aff'd on other grounds, 2021 U.S.App.LEXIS 18953 (8th Cir. 2021).

    **a.**     ***Count IV: Claims against the City, official capacity officers Carson and Barnes for the existence of a custom of Excessive Use of Pepper Spray***

Plaintiffs allege a variety of instances of use of pepper spray in support of their claim that the City and official-capacity defendants "have a widespread custom of using excessive mace on CJC detainees, without adequate warning, and for the purpose of inflicting pain." Doc. #9, p. 11. In support of this claim plaintiffs plead the Division of Corrections' policy on use of force which explicitly provides that pepper spray is not to be used as punishment, as well as a handful of specific instances of use of pepper spray in the manner they describe including: one instance of use of pepper spray in November of 2020; one instance in December 2020 (in addition to the Derrick Jones incident); two instances in January 2021 (one when an inmate was "refusing to put his cigarette out" while inside his cell); four instances in February 2021 (one when another inmate was "standing outside someone's cell, trying to defuse tension between that third person" and another corrections officer); and one instance in May of 2021 (involving a captain spraying an allegedly compliant inmate in his cell).

Apart from the allegations of the individual plaintiffs and their own experiences, the first amended complaint is bereft of specific facts details and facts regarding additional instances of excessive use of pepper spray. Plaintiffs do allege vague generalities of their observance of excessive use of mace on "multiple occasions when there was no security threat and the detainee was not acting aggressively or actively resisting staff," Doc. #9, p. 13, para. 64; the use of mace at CJC is a "daily occurrence" and is "often deployed by or in the presence of jail supervisors," Doc. #9, p. 14, paras. 65-67.

In support of the claim that there is a widespread custom amounting to a prescribed policy of using pepper spray on compliant or passive inmates and as a form of punishment for lack of cooperation, plaintiffs cite and provide a link to Division of Corrections' monthly reports[4] for

---

[4] These monthly reports are published by the Corrections division of the City of St. Louis and provide data regarding various issues in the jail such as instances of contraband seizure, allegations of excessive force by inmates, number of inmates receiving mental health treatment and so on.

11

October 2020 to March 2021 and allege that they report "zero allegations of use of force, and zero instances where staff used force that required minor first aid." Doc. #9, p. 15, para. 74. Plaintiffs attempt to suggest that there is a lack of reporting of instances of use of force and therefore jail administration is effectively condoning this form of excessive force. However, plaintiffs have omitted from their pleading the fact that these reports reflect that anywhere from 19 to 50 uses of force (including pepper spray) involving no injuries to inmates or staff are investigated each month. See Division of Corrections Monthly Reports.[5]

As discussed above, notice to the municipality and its officials is essential to succeeding on a *Monell* claim for liability. If, as plaintiffs suggest (and defendants dispute), they were all thwarted in their attempts to grieve the practices of excessive force in pepper spraying, jail administration almost certainly did not have notice of the plaintiffs' grievances. See Doc. #9, p. 20, para. 109.  More importantly, the sources imported into plaintiffs' complaint show affirmatively that corrections administration does in fact investigate each and every use of force reported to it.  This fact refutes the notion that there is any "custom" or practice of ignoring demonstrated unlawful uses of force, or that the individual defendants Barnes and Carson turned a blind eye to such misconduct.  See, e.g., *Perkins v. Hastings,* 915 F.3d 512 (8th Cir. 2019); *Szabla v. City of Brooklyn Park,* 486 F.3d 385 (8th Cir. 2007)(*en banc*).  While defendants dispute plaintiffs' allegations about inaccessibility of the grievance process, plaintiffs' allegations, considered in light of the plausibility standard required under F.R.Civ.P. 8, fail to state a claim for relief under *Monell*.

       **b.**       **Count VI: Custom of shutting off water as punishment for inmate misconduct**

Plaintiffs allege in Count VI of their first amended complaint that "on February 6, following the uprising of CJC detainees that started the prior evening, some detainees formerly housed in the

---

[5] As provided in the first amended complaint, these monthly reports are available on the City website at https://www.stlouis-mo.gov/government/departments/public-safety/corrections/documents/monthly-reports-2021.cfm.

fourth-floor pods were moved up to the fifth floor that same day." Doc. #9, p. 16, para 79. Plaintiff alleges that the water supply in the unit on the fifth floor was cut off in the days following the uprising. *Id* at paras. 80-81. According to the pleading, the detainees were not receiving drinking water and were not able to flush the toilets during the three days following the uprising. *Id*. Plaintiffs allege additional instances of water deprivation, arguing that the water shut-offs are a result of malicious and punitive intentions. *Id*, pp. 17-19, paras. 87, 89, 90, 94-99. In addition to the instance immediately following the widely reported on and sensational riot in the jail in early February, 2021, plaintiffs allege three instances of water shut-offs performed by Lt. Fowlkes (Marcy 5, 2021, May 13, 2021, and May 18, 2021), and one instance of water shut off by a C.O. Smith on April 25, 2021. Plaintiffs do not allege with specificity any other instances of the water being shut off in CJC, but do acknowledge that water is shut off when inmates commit vandalism such as purposely flooding their cells. *Id*, p. 18, para 94.

Plaintiffs' *Monell* claim regarding punitive water deprivation fails. A claim against a municipality and its official capacity employees must allege a practice that has "occurred for so long or so frequently that the course of conduct warrants the attribution to the governing body of knowledge that the objectionable conduct is the expected, accepted practice of [the municipality's] employees." *Webster,* 735 F.2d 838 at 842. Plaintiffs have simply failed to show that a water shut off following a violent riot which involved significant damage to the plumbing of the jail, combined with two instances of Lt. Fowlkes shutting off inmate water, and one instance of Officer Smith shutting off inmate water, constitutes a custom that is continuing, widespread and persistent. Additionally, plaintiffs were unable to avail themselves of any grievance process it is unclear how City policy makers would have notice of this practice.

3. **Plaintiffs' claims against Jeffrey Carson and Adrian Barnes in their official capacities must be dismissed as duplicative of their claims against the City.**

13

Plaintiffs name as defendants Acting Commissioner of Corrections Jeffrey Carson and Superintendent of the City Justice Center Adrian Barnes, both in their official capacities. These claims should be dismissed as redundant and duplicative of plaintiffs' claims against the City of St. Louis. Courts in this jurisdiction hold that "[b]ecause the real party in interest in an official-capacity suit is the governmental entity and not the named official, an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Robb v. Hungerbeeler*, 370 F.3d 735, 739 (8th Cir. 2004) (quoting *Kentucky v. Graham*, 473 U.S. 159, 166 (1985)) (internal citation and quotation marks omitted); As recently held by Judge Henry Autrey of this district: "Official-capacity claims are properly dismissed where they are redundant of claims asserted against the officer's governmental employer." *Perkins v. Derrick Frye*, No. 20CV1433 HEA, 2020 U.S. Dist. LEXIS 232334, at *7 (E.D. Mo. Dec. 10, 2020)( citing *Caruso v. City of St. Louis*, No. 4:16 CV 1335 RWS, 2016 WL 6563472, at *1 (E.D. Mo. Nov. 4, 2016) (citing *Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010); *Bonenberger v. City of St. Louis*, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016)).

Plaintiff's claims against the Defendants Carson and Barnes should be dismissed as duplicative and redundant to plaintiffs' claims against the City

**Conclusion**: Defendants City of St. Louis, Acting Commissioner of Corrections Jeffrey Carson, Superintendent Adrian Barnes, and Officers Fowlkes, Turner, Lewis and Alexander respectfully request that this Court grant their motion to dismiss Counts I, II, and III because the individual officers named are entitled to qualified immunity; dismiss Counts IV and VI against the City and Defendants Carson and Barnes because plaintiffs have failed to adequately plead a claim of municipal "custom" liability under §1983; and dismiss Defendants Carson and Barnesad defendants because the claims against them are duplicative of plaintiffs' claims against the City.

Respectfully submitted,<br>
MATT MOAK,<br>
CITY COUNSELOR

By: <u>/s/ Catherine Dierker #70025</u>

Assistant City Counselor<br>
1200 Market Street<br>
City Hall Room 314<br>
St. Louis, Missouri 63103<br>
Phone: 314-622-3786<br>
Fax: 314-622-4956<br>
dierkerc@stlouis-mo.gov