# IN THE UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DERRICK JONES, JEROME JONES, and DARNELL RUSAN ) ) ) Plaintiffs, ) ) v. ) ) CITY OF ST. LOUIS, et. al., ) ) Defendants. ) | Cause No. 4:21-cv-600 |

## MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS

Defendants have asked this Court to dismiss Plaintiffs' suit for failure to state a claim. Defendants also argue the claims against Commissioner Carson and Superintendent Barnes in their official capacities are duplicative. Defendants are wrong in their characterization of the facts as alleged and wrong on the law. Plaintiffs have demonstrated more than *de minimis* injuries; plausibly allege that excessive macing[1] and retaliatory water shut-offs are widespread practices so established that they constituted de facto policy; and allege a widespread custom of water deprivation of which Defendants had or should have had notice. In addition, Plaintiffs have identified the proper Defendants in bringing *Monell* claims.

For these reasons and those that follow, Defendants' Motion to Dismiss should be denied.

## Legal Standard

To withstand a challenge pursuant to Fed. R. Civ. P. 12(b)(6), a complaint must put forward "factual content that allows the court to draw the reasonable inference that the defendant

---

[1] For the purposes of this Memorandum, "mace" and "macing" will refer to the use of sprayed chemical munitions designed to cause pain, including pepper spray, capsicin spray, and other specific versions of these weapons.

1

is liable for the misconduct alleged." *In re Pre-Filled Propane Tank Antitrust Litig.*, 860 F.3d 1059, 1063 (8th Cir. 2017) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The complaint must state a claim that is "plausible on its face," but at the pleading stage "it is not, however, a 'probability requirement.'" *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009) (quoting *Ashcroft*, 556 U.S. at 678). When considering a motion to dismiss, "the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005).

<u>**Argument**</u>

  A. **Defendants' motion to dismiss should be denied because Plaintiffs alleged more than *de minimis* injuries.**

Defendants argue that Counts I, II, and III should be dismissed because the Plaintiffs alleged merely *de minimis* injuries that are indicative of a *de minimis* use of force. In their Motion, Defendants describe "a burst of pepper spray that causes momentary pain or discomfort" and suggest that in the present case there is an "absence of significant injury." Doc. #25, p. 3. But precisely the opposite is true. Plaintiffs allege the use of mace in prolonged and excessive fashion, not a mere "burst." Doc. #9, ¶ 54. Each describes intense pain, prolonged, burning of the eyes, face, and skin, subsequently being unable to breathe and lasting symptoms. As such, the allegations describe more than a *de minimis* use of force and Plaintiffs have endured more than *de minimis* injury.

  Specifically, Derrick Jones was maced in the eyes and face, taken to the ground and beaten, handcuffed, maced again, and then placed in a holding cell. *Id*. at ¶ 21-24. Struggling to breathe—his eyes and face burning from the chemical agent—Derrick was in so much pain that he pounded on the door for help only to be maced again. *Id*. at ¶ 25-27. Mace clung to his skin

and clothes for days because he was refused a shower after Defendants denied him medical treatment. *Id*. at ¶ 28.

Jerome Jones, while in handcuffs, was left in a mace-filled fully enclosed 3- by 5-foot room for 25 minutes where his eyes, face, and entire body were burning from being soaked in mace—he was denied medical attention and for weeks would wake in the middle of the night in respiratory distress. *Id*. at ¶ 31-41. He still experiences respiratory issues to this day. *Id*. at ¶ 42.

Darnell Rusan has been maced excessively three times. First, he was maced by two different officers simultaneously while he held up a chair to try to guard his face from the chemical agent. *Id*. at ¶ 44-49. Second, right after this first macing, he was pulled from the showers where he was trying to wash the mace off his body, and handcuffed. *Id*. at ¶ 50. He then was placed in an elevator where his head was slammed into a wall. He was taken to the medical unit, where, instead of receiving treatment for the injuries he was already suffering from, he was hit, choked, and was told "we'll kill your little ass in here." *Id*. at ¶ 51. Finally, Darnell was locked in a mace-filled visiting room for **four hours** fully nude—and he was also denied medical assistance after being released from the cell. *Id*. at ¶ 57-60.

None of these instances resulted in brief discomfort — Instead, each describes significant force and severe pain. This Court should not allow Defendants to write these facts off as allegations that merely describe "a burst of pepper spray that causes momentary pain or discomfort," which Defendants must, in order to demonstrate that Plaintiffs do not state a claim for relief.

Defendants rely on *Peterson* to argue that the Eighth Circuit has never deemed pepper spray to inherently cause more than *de minimis* harm. *Peterson v. Kopp*, 754 F.3d 594 (8th Cir. 2014). This is a misunderstanding of *Peterson*. In fact, *Peterson* demonstrates precisely why the use of macing described in this complaint is not *de minimis*. In *Peterson,* an arresting police

officer sprayed the plaintiff for two seconds in the face and, at the summary judgment phase, the Eighth Circuit found that the officer was entitled to qualified immunity. *Id.* The Circuit described *Peterson* as a "close case," one where the pepper spraying of Peterson "may have been unreasonable." *Id*. at 601. The *Peterson* court reasoned that while the Plaintiff "suffered some pain, discomfort, and peeling under his eyes for several days after the incident" it was pertinent that he did not seek medical care for his symptoms. *Id*. By contrast, Plaintiffs in the present case were all maced repeatedly and were sometimes trapped in mace-filled rooms for extended periods of time to "marinate." And the Plaintiffs here all sought medical attention, although in several instances were denied treatment. The present case involves plausible allegations of extensive exposure to mace, prolonged pain, and requests made for medical treatment after being excessively sprayed.

In fact, the *Peterson court* only stated that in 2014, the Eighth Circuit had "not held that the use of pepper spray **necessarily** causes more than de minimis injury," but the court then went on to explicitly acknowledge that, at times, excessive use of mace will result in a more than a *de minimis* injury, citing to *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th Cir. 2002). *Peterson,* 754 F.3d at 601. In *Lawrence,* the court held that the plaintiffs suffered more than *de minimis* injuries when "inmates' faces and bodies were soaked in pepper spray" and "their entire cell was covered with the spray." 297 F.3d at 732. The Court in *Lawrence* cited to lasting and "intense burning" that the plaintiffs experienced after inhaling mace for 10 minutes. *Id.* In the present case, Plaintiffs were covered in mace and placed in mace-filled rooms for even longer periods of time. Plaintiffs Derrick Jones and Darnell Rusan were maced repeatedly. The no-contact visiting room where Plaintiff Jerome Jones was held was so suffused with noxious air that he fell to the ground to access fresh air. Doc. #9, ¶ 32-35. All three individual Plaintiffs were left with mace on their bodies for an extended period of time without being allowed to shower for hours or even

4

days. As in *Lawrence*, the exposure to chemical agents was excessive and intended to cause pain—Defendant Fowlkes having locked Derrick Jones in a holding cell said "let him marinate" after macing Jones for the third time in a matter of hours. Doc. #9, ¶ 27. While *Lawrence* was decided in the Eighth Amendment context, the court held that, "orchestrating an unnecessary pepper spray shower violated clearly established rights of which a reasonable person should have known." *Lawrence*, 297 F.3d at 733. The Eighth Circuit has also held that pepper spray is a "painful substance" and that it would be "a matter of serious concern if correctional officers" believed it "could be used at will." *Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002).

As such, in the Eighth Circuit, excessive macing can cause more than *de minimis* injuries. Defendants' contend that what they characterize as *de minimis* injuries correspond with *de minimis* force and cite precedent stating *de minimis* force is insufficient to support a[n excessive force] claim." *Robinson v. Hawkins*, 937 F.3d 1128, 1136 (8th Cir. 2019) (quoting *Chambers v. Pennycook*, 641 F.3d 898, 906 (8th Cir. 2011). Plaintiffs have made sufficient allegations to demonstrate they endured more than *de minimis* injuries because more than *de minimis* force was exerted against them.

Defendants' reliance on the Fourth Circuit's decision in *Williams* is also misguided. *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996). In *Williams* the 4th Circuit considered the use of mace in "small quantities" used to "prevent riots and escapes or to control a recalcitrant inmate." *Id.* at 763 (internal citations omitted). After the court remarked that mace may be "more humane", *Id* at 763 (citing *Soto v. Dickey*, 744 F.2d 1260, 1270 (7th Cir.1984), *cert. denied*, 470 U.S. 1085 (1985)), than a flesh to flesh encounter, the circuit court immediately went on to explain that a "prompt washing of the maced area of the body will usually provide immediate relief from the pain." *Williams,* 77 F.3d at 763. The pain suffered by Plaintiffs in the present case was not the result of a small quantity of mace being used. Instead, the pain suffered was the

5

result of the use of large amounts of mace and allowing mace to remain in the eyes and on the skin of the Plaintiffs for extended periods of time. Moreover, Plaintiffs were prevented from washing mace off their bodies for extended periods of time or were removed from the shower (and further brutalized) when they sought to wash off the mace. While the Eighth Circuit has not found that the use of mace *inherently* causes more than a *de minimis* injury, the present case demonstrates that the use of mace can be inhumane, that is when it is intended to inflict pain and suffering and used as a form of punishment rather than for legitimate safety or security purposes.

Defendants also attempt to rely on *White v. Jackson*, 865 F.3d 1064 (8th Cir. 2017) to liken the *de minimis* injuries incurred from being maced to an arresting officer pushing an arrestee to the ground and placing a knee on his back. Doc. #25, p. 3, citing *White v. Jackson*, 865 F.3d 1064 (8th Cir. 2017). The referenced case, *White*, is not analogous to the severity of force or injury experienced by Plaintiffs. The court in *White* concluded that there was not an unreasonable use of force when an officer placed a knee against an arrestee's back because the authority to arrest "necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it." *Id*. at 1080 (quoting *Graham v. Connor*, 490 U.S. 386, 396). However, the *White* court **reversed** the lower court's grant of qualified immunity with respect to the use of pepper spray, holding the arrestees head underwater, and punching, and kicking him while he was already handcuffed, holding there was a genuine issue of material fact as to whether these actions constituted gratuitous, unnecessary force against a subdued individual which was not objectively reasonable. *Id.* The excessive use of mace in the present case was not related to the authority to arrest—Plaintiffs instead allege they were maced by excessively, without adequate warning, and when they did not pose imminent danger, constituting the same type of gratuitous force which is objectively unreasonable under the Fourth Amendment. *See* Doc. #9, ¶ 61-71.

Finally, Plaintiffs have presented clear allegations as to the state of their injuries, and to the extent there is a genuine dispute of material fact as to the severity of the injuries endured from the excessive macing of the Plaintiffs, that issue cannot be resolved here.

> **B. Even if this Court found that the injuries suffered by Plaintiffs were *de minimis*, *de minimis* injuries are sufficient to sustain § 1983 excessive use of force claims.**

Contrary to Defendants' arguments, *Peterson* establishes that the Eighth Circuit rule is that "de minimis *injury* does not foreclose a claim of excess force." *Peterson*, 754 F.3d at 601 (italics in original). Specifically, *Peterson* explains that in a prior case, *Chambers v. Pennycook*, the Eighth Circuit has held that "[t]he degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." *Id.,* citing *Chambers v. Pennycook*, 641 F.3d at 906. In *Pennycook,* the court explained "[i]t is logically possible to prove an excessive use of force that caused only a minor injury, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question." *Id*. As such, *Pennycook* establishes that a *de minimis* injury is sufficient to establish an excessive force claim. *Id* at 908-09.

The proper question is one of the objective reasonableness of Defendants' actions. *Peterson*, 754 F.3d at 601. Defendants are not entitled to qualified immunity if (1) the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) the right at issue was clearly established at the time of the offending conduct. *Bonenberger v. St. Louis Metro. Police Dep't*, 956 F. Supp. 2d 1059 (E.D. Mo. 2013) (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir.2009)). "A right is clearly established when the contours of the right are sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Mathers v. Wright*, 636 F.3d 396, 399 (8th Cir.2011) (internal quotation marks and citation omitted).

A detainee can prove an excessive force claim under the Fourteenth Amendment by showing the force used was objective unreasonable. Courts must consider the following factors in evaluating such a claim: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015).

Defendants presumably call attention to the extent of injury factor—which, even if disputed, is not enough to justify dismissal at this procedural posture—because all the other factors weigh decisively in Plaintiffs' favor. The extent and nature of macing used by the Defendants violated Defendants' own written policy; Plaintiffs were left with their eyes, face, and skin burning for hours if not days (Doc. #9, ¶ 26; 38; 50); none of the Plaintiffs posed immediate security risks to the Defendants (Doc. #9, ¶ 24; 37; 52-53); Plaintiffs were placed in mace-filled rooms where they could pose no threat to officers (Doc. #9, ¶ 27; 34; 54); Plaintiffs were not actively resisting when they were maced (Doc. #9, ¶ 26-27; 31; 52).

Even if this Court found that the excessive macing in this case did cause only *de minimis* injuries, the Eighth Circuit has repeatedly found that such macing can be objectively unreasonable. In *Tatum v. Robinson*, the Eighth Circuit found that the use of pepper spray for one second against the plaintiff—who was suspected at the time of stealing eight pairs of shorts—was unreasonable. 858 F.3d 544, 546 (8th Cir. 2017). The *Tatum* court reasoned that "all the facts and circumstances" bore on what "the perspective of a reasonable officer on the scene" might be. *Id*. at 548. Because a reasonable officer would not have viewed the plaintiff as resisting, as an immediate threat, or engaged in a severe crime, the court held that even a short burst of mace was objectively unreasonable. In *Henderson v. Munn*, 439 F.3d 497 (8th Cir.

2006), the Eighth Circuit affirmed a decision denying an arresting officer qualified immunity because a reasonable jury could find that an officer used excessive force in pepper spraying a man in the face who was handcuffed and lying in the ground. While the officer in this case had already kneed the plaintiff and hit him with a baton, the court held that the circumstances of the arrest, "particularly with regard to Officer Munn use of pepper spray against Henderson," left it unconvinced the defendant's actions were objectively reasonable. *Id*. at 502.

Moreover, in the Eighth Amendment context, the Eighth Circuit has also held that the use of pepper spray in response to a non-recalcitrant incarcerated person constitutes an excessive use of force, whether the macing causes only *de minimis* injuries notwithstanding. In *Treats v. Morgan*, the circuit court considered whether a plaintiff who had been maced without warning for disputing an officer's order could sustain an excessive force claim at the summary judgment phase. *Treats v. Morgan*, 308 F.3d at 872-73. The court rejected the argument that pepper spray causes only *de minimis* injury if "an inmate has disobeyed an order and received medical attention after being sprayed." *Id.* at 871. Instead, the court held that the constitutional issue turned on the circumstances of the individual case and prison context and because the plaintiff could not at the summary judgment phase "be said to have been recalcitrant or threatening" that there were genuine issues for trial regarding the plaintiff being pepper sprayed. *Id*. at 873; *see also Foulk v. Charrier*, 262 F.3d 687, 702 (8th Cir. 2001) (holding a reasonable jury could find an officer engaged in a malicious and sadistic use of force when a prison officer enticed an incarcerated person to a screened window and sprayed pepper spray directly into the plaintiff's face).

    **C. Plaintiffs' have plausibly alleged that excessive macing and retaliatory water shut-offs are widespread practices that were so established they constituted *de facto* policy.**

Defendants contend that Counts IV and VI should be dismissed because Plaintiffs have failed to demonstrate the existence of widespread customs of unconstitutional misconduct. However, Plaintiffs have alleged numerous instances of excessive macing and water deprivation, such that there is a widespread custom at CJC of using both as forms of punishment.

Under *Monell,* municipal liability involves two requirements: "(1) a policy, practice, or custom must be attributable to the City through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury." *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). Plaintiffs in this case allege months of routine uses of excessive force and water deprivation intended to inflict pain and suffering upon detainees in violation of the Fourteenth Amendment. The Complaint outlines a pattern of the use of excessive mace against specific detainees in specific contexts and retaliatory water shut-offs in specific pods of the CJC on particular dates. Doc. #9, ¶ 79-86; 96. The facts outlined establish a pattern of punitive practices that more than supports a reasonable inference of liability.

The allegations in the complaint more than meet the standard in the Eighth Circuit to demonstrate the existence of a widespread custom. In *Watson v. Boyd*, a recent, published opinion from this District, the court concluded that ten to fifteen complaints over fourteen months constituted "sufficient evidence of a custom in support of *Monell* claim to withstand Defendants' Motion for Summary Judgment." 447 F. Supp. 3d 924, 950 (E.D. Mo. 2020); *cf. Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (noting that "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work" and reversing the district court's grant of summary judgment against the plaintiff) (citation omitted).

In the present case, Plaintiffs plainly allege repeated instances over months in which CJC

10

staff violated the Fourteenth Amendment, and plainly allege the City was on notice of these claims. The Complaint lists multiple examples of when excessive macing or water deprivation were used to punish detainees. Doc. #9, ¶ 63; 96. Plaintiffs present the exact type of claims that should proceed to discovery so that evidence can be provided to support the facts of the recurrent practices. that should have put Defendants on notice.

Defendants' reliance on *Mettler* and *Atkinson* for the proposition that "custom" liability hinges on notice does not undercut Plaintiffs' claims. *Mettler v. Whitledge*, 165 F.3d 1197 (8th Cir. 1999); *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201 (8th Cir. 2013). The present case is clearly distinguishable from both cases. In *Mettler*, at the summary judgment phase, the 8th Circuit found that the two types of evidence were insufficient to substantiate a *Monell* claim regarding the excessive use of force: (1) the mere existence of a number of citizens' complaints regarding two police officers' prior behavior; and (2) the failure of a police force to investigate a single incident. *Mettler v. Whitledge*, 165 F.3d at 1205. Because the citizens' complaints had been investigated, contained no information regarding the factual background of these complaints, and did not indicate the prior incidents bore any factual similarity to the incident that prompted the *Monell* suit, the Eighth Circuit held the plaintiff had not produced sufficient evidence. *Id*. at 1204-05. Moreover, because there was only a single incident that undergirded the claim, the court granted summary judgment for the defendants with respect to an alleged custom of police misconduct. *Id*. at 1205.

Likewise, *Atkinson* does not support Defendants' assertions that Plaintiffs' complaint does not adequately allege notice. In *Atkinson*, the Eighth Circuit looked at a single incident of excessive force by a plain-clothes police officer. The plaintiff alleged the City's absence of a written policy on the use of force demonstrated deliberate indifference on its own, but the court held the plaintiff did not adequately substantiate a connection between the lack of the policy and

11

the likelihood of a constitutional violation. *Atkinson v. City of Mountain View, Mo.*, 709 F.3d at 1216.

The allegations here are far more severe than those in *Mettler* or *Atkinson*. Plaintiffs detail a pattern of incidents that undergird these claims, with numerous factually similar incidents that occurred over a period of months. *Id*. ¶¶ 61-76, 96. Plaintiffs allege multiple allegations of excessive force have not been investigated because their attempts to file grievances have been obstructed or ignored. Doc. #9, ¶ 107-19. Plaintiffs also allege CJC staff have regularly engaged in water shut-offs on a weekly basis in response to alleged detainee misconduct, and describe with specificity the repeated use of water deprivation in response to minor alleged detainee misconduct. *Id*. ¶¶ 94-102.

These patterns are united in similarity by the use of water deprivation and excessive use of force as means of punishing detainees for minor misconduct (assuming there was misconduct at all). For *Monell* claims, the overall rule is that, "isolated incidents do not suffice and that evidence of 'many' incidents does establish liability." *Burbridge v. City of St. Louis, Missouri*, 430 F. Supp. 3d 595, 620 (E.D. Mo. 2019), *aff'd*, 2 F.4th 774 (8th Cir. 2021). On both counts, Plaintiffs allegations show many similar incidents that violate the constitutional rights of the detainees at the CJC. As such, this Court should not dismiss Plaintiffs' *Monell* claim.

> **D. Plaintiffs state a claim with respect to the existence of a widespread custom of water deprivation at the CJC of which Defendants had or should have had notice.**

Defendants also dispute whether the allegations regarding water deprivation constitute sufficient instances to show notice to the *Monell* defendants. The Complaint clearly alleges Defendants were on notice. *See* Doc. #9 at ¶ 151. The allegations show employees commonly and routinely announcing their punitive intentions and shutting off water to whole pods—actions the City and Defendants Barnes and Glass *should* have been aware of. *Id.* at ¶ 94-98. Moreover,

after a three-day water shut-off at CJC, advocates wrote to City officials and received a response regarding the deprivation of water. Doc. #9, ¶ 92-93. While Plaintiffs dispute the City's position regarding why water is routinely shut off at the CJC, the City's response demonstrates that City officials were aware of the practice as punitive water shut-offs continued. Doc. #9, ¶ 96. Finally, the acquisition of more detailed facts with respect to instances of water deprivation is the purpose of discovery and this claim should not be dismissed at this stage of proceedings.

> E. **Plaintiffs allege the plausible existence of a widespread custom of excessive force of which Defendants had notice or should have had notice, if not for purposeful obstruction of the detainee grievance process.**

Finally, Defendants argue that given Plaintiffs' argument they were unable to utilize the grievance process means that, "the jail administration almost certainly did not have notice of the plaintiffs' grievances." Doc. 25 at 10. Plaintiffs' precise argument is that because CJC staff deliberately thwarted detainees' attempts to use the grievance process and the grievances did not reach the officials they ought to have reached under CJC policy, therefore CJC administrators cannot be on notice of the detainees' allegations. Such deliberate ignorance ought not be rewarded, and in any case the law in Eighth Circuit does not accept Defendants' argument as winning. In their complaint, Plaintiffs describe their attempts to use the grievance process and either receiving no reply—in violation of CJC policies—or being threatened with mace for attempting to file an informal resolution request (IRR). Doc. #9, ¶ 107-19.

"The right to access the prison grievance process" is a protected constitutional right. *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 913 (8th Cir. 2013). CJC staff make the grievance process practically inaccessible—it is a broken system designed to fail. CJC staff have not provided Plaintiffs with the inmate handbook that describes the IRR filing process and the handbook does not discuss the new electronic grievance process on detainee tablets. Doc. #9, ¶ 107-08. Defendants miss the mark in suggesting that because some use of force incidents are

13

reflected in the monthly reports that it follows that all uses of force are investigated. Instead, the reports are indicative of how CJC staff fail to report all instances where force is used because CJC staff prevent detainees from grieving. Defendants are liable for their deliberate indifference to a widespread custom and not just for the uses of force CJC staff selectively reports.

Defendants further err in asserting that the existence of use of force reports involving no injuries proves that Defendants investigate each use of force claim: Plaintiffs properly allege that detainees have been injured by the excessive use of mace at the CJC and the absence of reports is indicative of deliberate indifference. Plaintiffs contend that when detainees file grievances regarding instances of used force, staff disregard and refuse to submit or deliver those grievances. Doc. #9, ¶ 138-141. Defendants Barnes and Carson are responsible for the supervision of CJC employees who are required to make accessible a detainee grievance process. *Spencer v. Jackson Cty. Mo.*, 738 F.3d at 913. The City is the public entity responsible for the oversight of the CJC.

The *Monell* Defendants are all aware that mace is used at the CJC, have provided specific guidelines for its use, and should be on notice when it is being used excessively and in violation of their policy, for the purpose of inflicting pain and suffering.[2] Defendants Barnes, Carson, and the City of St. Louis are liable for the excessive force claims because to the extent they may credibly claim they were not on notice, it was Defendants' own employees who obstructed detainees' only method to provide such notice.

>  F. **Plaintiffs' have identified the proper Defendants in bringing *Monell* claims against the City of St. Louis, Commissioner Carson, and Superintendent Barnes.**

---

[2] Plaintiffs include numerous allegations concerning how mace is used in CJC that would provide actual or constructive notice to all Defendants. See e.g. Doc. #9, ¶ 66- 68.

Plaintiffs' claims against the *Monell* Defendants are not duplicative because each Defendant is named properly as to bring claims against the CJC, the Department of Corrections, and the City of St. Louis as respective entities. *See Am. C. L. Union v. Tarek ibn Ziyad Acad.*, 788 F.Supp.2d 950, 958-59 (D. Minn. 2011) (allowing claims against charter school and individual employees to proceed as claims against supervisors were not redundant). The individual Defendants perform unique roles in their official capacities. Defendant Barnes is sued for his liability as the Superintendent of the CJC, where he is responsible for the training and supervising of all Correctional Officers at the CJC in addition to other responsibilities. Defendant Carson is sued for his liability as the Acting Commissioner of the St. Louis Division of Corrections. Defendant Carson is responsible for training and supervising all other Defendants and other employees who staff the CJC. The CJC, the St. Louis Division of Corrections, and the City of St. Louis are respectively distinct government entities for municipal liability purposes and thus the claims against Defendants in their official capacities are appropriate.

## Conclusion

For the forgoing reasons Defendants' motion to dismiss should be denied.

Dated: July 28, 2021

Respectfully submitted,

ARCHCITY DEFENDERS, INC.

By: */s/ Maureen Hanlon*
Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
Emanuel Powell (E.D. Mo. Bar No. #706171MA)
Nathaniel R. Carroll (MBE #67988MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)

bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
epowell@archcitydefenders.org
ncarroll@archcitydefenders.org

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER

By: */s/* Amy E. Breihan
Amy E. Breihan (MBE #65499MO)
William Patrick Mobley (MBE #63636MO)
3115 S. Grand Blvd., Suite 300
Saint Louis, MO 63118
(314) 254-8540
(314) 254-8547 (fax)
amy.breihan@macarthurjustice.org
pat.mobley@macarthurjustice.org

SAINT LOUIS UNIVERSITY SCHOOL OF LAW LEGAL CLINICS

By: */s/* Lauren Bartlett
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778
brendan.roediger@slu.edu
lauren.bartlett@slu.edu

RIGHTS BEHIND BARS

By: */s/* Oren Nimni
Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(206) 200-9088
oren@rightsbehindbars.org

*Attorneys for the Plaintiffs*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of July, 2021, I filed the forgoing memorandum on the CM/ECF system where it will be sent to all parties. I also certify that I caused a true and correct copy of this memorandum to be served by electronic mail upon counsel for Defendants.

July 28, 2021                                                                                  /s/ Oren Nimni