UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| DERRICK JONES, JEROME JONES, and DARNELL RUSAN<br><br>Plaintiffs,<br><br>v.<br><br>CITY OF ST. LOUIS *et al.*,<br><br>Defendants. | )<br>)<br>)<br>)<br>) Cause No. 4:21-cv-600<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO COMPEL
AND TO AMEND THE CASE MANAGEMENT ORDER**

Plaintiffs allege that they were subject to excessive force and torturous detention conditions at the City Justice Center (CJC), as a result of *de facto* policies, practices, and customs of the City of St. Louis, which include, *inter alia*, punitively and indiscriminately deploying excessive amounts of mace and depriving detainees of water as a form of reprisal in violation of the Constitution. After representing to this Court and counsel for Plaintiffs that they would cooperate in discovery, Defendant's counsel has changed course, refusing to produce information and records that are solely in their possession. Despite the best efforts of Plaintiffs' counsel while meeting and conferring with counsel for Defendant City, the parties have not been able to reach a compromise on these discovery disputes. Because Defendant's evasive tactics have essentially halted discovery, Plaintiffs are forced to bring this Motion to Compel.

Pursuant to Federal Rule of Civil Procedure 37 and E.D.Mo. Local Rule 3.04, Plaintiffs move this Court for an order compelling Defendant City of St. Louis to provide complete responses and documents responsive to Plaintiffs' discovery requests related to identifying John Doe 1 and Plaintiffs' *Monell* pattern and practice claims. Plaintiffs also seek a 60-day extension of the deadline to amend pleadings, as currently set forth in the Case Management Order, as

1

Plaintiffs cannot meet the current deadline given Defendant's delay in producing responsive information. In support of this motion, Plaintiffs state as follows:

## RELEVANT BACKGROUND

Plaintiffs have properly served Defendant City of St. Louis with discovery requests seeking 1) information critical to identifying John Doe 1, the officers responsible for shutting off Plaintiffs' access to water, the identity of whom is exclusively in Defendant's possession, custody, or control and 2) video evidence of other similar incidents involving the use of chemical agents at CJC. Defendant objected and refuses to respond to these highly relevant requests. Despite Plaintiffs' counsel's good-faith attempts to resolve this issue without court action, Defendant persist in unreasonable and unsustainable blanket refusals to these requests.

1. **John Doe Discovery**

In their amended Complaint, Plaintiffs name an unknown "John Doe 1" representing individuals responsible for shutting off access to water at CJC. Plaintiffs' Amended Complaint, Dkt. No. 8. Under the current case management order, Plaintiffs' deadline to amend the pleadings, including to name the Doe defendants, is January 14, 2022. Case Management Order, Dkt. No. 37. Soon after filing the Complaint, Plaintiffs' counsel contacted Defendant's counsel to discuss expedited discovery, particularly regarding the Doe defendants. Defendant's counsel initially agreed to work with Plaintiffs to identify the John Doe defendants in exchange for a later responsive pleading deadline for all Defendants. *See* Emails re. responsive pleadings, attached as Exhibit 1.

Pursuant to this conversation, in an effort to discover the identity of John Doe 1 officers, Plaintiffs served their First Set of Interrogatories on June 29, 2021, which requested Defendant identify, *inter alia*:

> Person(s) who shut off water to any area of CJC between February 6, 2021 and May 24, 2021. For each such person provide: (a) their name; (b) their title; (c) whether they are still employed by the City; (d) their contact information; and (e) dates and times they shut off water and for each incidents: (i) for which pods the water was turned off and the date and (ii) times the water was turned back on.

*See* Def. Response to Interrogatory 3, attached as Exhibit 2.

But Defendant's counsel refused to respond, despite their prior agreement to do so, reasoning that the requests were not what they had imagined. This necessitated that Plaintiffs' counsel file a Motion for Leave to Conduct Early Doe Discovery. *See* Mot. for Leave to Conduct Early Doe Discovery, Dkt. Nos. 22, 22-3 (Email chain between parties).

While that motion was pending, the parties conferred to develop their Joint Scheduling Plan for the Court. In those conferences, Defendant's counsel affirmatively stated Defendant would respond to Plaintiffs' First Set of Interrogatories "no later than October 4, 2021." *See* Joint Proposed Scheduling Plan, Dkt. No. 34. At the Rule 16 conference, Defendant's counsel also represented directly to the Court that Defendant planned to respond on October 4, 2021. Defendant's counsel and Plaintiffs' counsel also jointly agreed to set January 14, 2022, as the date for filing motions for joinder of additional parties or amendment of pleadings. *See* Dkt. No. 37.

Despite these agreements and assurances, on October 4, 2021, Defendant did not provide any responsive information to Interrogatory 3. Instead, they objected that the Interrogatory was burdensome and not proportional to the needs of the case. Defendant added that Department of Corrections employees would "have to run a lengthy report for each day" and "review extensive data" to respond to the Interrogatory. *See* Exhibit 2.

On November 19, 2021, Plaintiffs sent Defendant a letter pursuant to Federal Rule of Civil Procedure 37 and Local Rule 3.04, addressing deficiencies in Defendant's discovery

3

response. Mindful of Defendant's objections, Plaintiffs' counsel offered to significantly narrow Interrogatory 3 to a handful of specific dates, instead of the date range they had previously requested. Specifically, Plaintiffs offered to narrow Interrogatory 3 to: "identify person(s) who shut off water to any area of CJC at any time on February 6-9, March 5, April 25, May 13 and May 18, 2021." *See* Plaintiffs' letter to Defendant dated 11/19/2021, attached as Exhibit 3 ("First Golden Rule Letter"). Defendant did not respond to that letter.

Plaintiffs also sent Defendants a 30(b)(6) deposition notice on November 12, 2021, requesting that Defendants designate a person with the knowledge, experience, and authorization to testify regarding subjects that would help Plaintiffs identify John Doe 1. *See* Plaintiffs' 30(b)(6) Deposition Notice, attached as Exhibit 4. Plaintiffs explained that this deposition was an alternative method to identify the John Doe 1 officers, in the case that Defendant City of St. Louis is unwilling or unable to answer the Interrogatories. Defendants have not yet produced a 30b6 witness for that deposition, which was noticed for December 10.

2. **Monell Recording Discovery**

On September 22, 2021 Plaintiffs served their Second Set of Requests for Production, which sought *inter alia*:

> Any and all audio, visual, or audio-visual recordings that shows, in part or whole, one or more correctional staff member deploying a chemical agent on a detainee at the City Justice Center.

and

> Records showing the date of recording and date of destruction for any audio, visual, or audio-visual recordings, including but not limited to surveillance recordings, which records were destroyed, and the staff responsible for destroying those records from December 2020 through the present date.

*See* Defendant's Response to Request 1 and 2, attached as Exhibit 5.

Defendant objected that Request 1 was not limited in time and scope, was burdensome, and was not proportional to the needs of the case. Defendant also objected that it did not specify any dates, individuals, or locations. With respect to Request 2, Defendant objected that the request was vague and incomprehensible and that there was no responsive record to Request 2. *See* Exhibit 5.

On November 30, 2021 Plaintiffs sent Defendant a second Golden Rule letter, pursuant to FRCP Rule 37 and Local Rule 3.04. In that letter, and in the spirit of compromise, Plaintiffs offered to narrow Request 1 to all recordings from the last <u>five</u> years. Plaintiffs also identified over 100 specific dates that the Defendant's own Use of Force records indicate the use of chemical agents and requested that Defendant produce recordings of those incidents. Plaintiffs also clarified Request 2. *See* Plaintiffs' letter dated 11/30/2021, attached as Exhibit 6 ("Second Golden Rule Letter").

Despite these compromises and clarifications, Defendant did not produce responsive materials.

3. **Meet and Confer**

Defendant did not respond in writing to the First Golden Rule Letter or the Second Golden Rule Letter. Given the lack of response from Defendant and the upcoming deadline to amend pleadings and join parties, counsel conferred over telephone on December 9, 2021 at 2:00pm regarding Defendant's objections to Plaintiffs' discovery requests, pursuant to Local Rule 3.04. *See* email correspondence memorializing Rule 37 conference, attached as Exhibit 7.

In that conversation, Defendant's counsel stated they were not planning to provide a response to Interrogatory 3.[1] *Id*. This came as a surprise to Plaintiffs' counsel given Defendant's counsel's previous, contrary representations that they would do so. Defendant's counsel stated in explanation that they believe the water deprivation claim is not viable and thus did not think *any* John Doe discovery as to the John Doe 1 officers would be proportional. *Id*. Although Defendant's counsel initially stated they would reevaluate Defendant's position on John Doe 1 discovery, Defendant subsequently informed Plaintiffs that they would stand on their objections to Interrogatory 3 on December 20, 2021.

Defendant City also stood on their objections to Requests for Production 1 and 2, stating that they would not be producing videos of similar use of force incidents involving non-Plaintiff CJC detainees, although they later added that they would reconsider their objections to Request 2. *See* Exhibit 7. Plaintiffs sent Defendant a letter memorializing their conference and, again in an effort to avoid court intervention, offered to further limit Request 1 to: "Any and all audio, visual, or audio-visual recordings that shows, in part or whole, one or more correctional staff member deploying a chemical agent on a detainee at the City Justice Center within three years before the allegations in the complaint through the present day." *See Exhibit* 7.

Defendant replied on December 20, 2021, and stated the City would be standing on their objections to Interrogatory 3 and Production Requests 1 and 2. In that reply, Defendants also stated that producing a 30b6 witness on water deprivation issues would be extremely burdensome and instead suggested we depose a fact witness. *See* Exhibit 7.

---

[1] Defendant's counsel noted in this conversation they identified other Doe defendants, but those defendants had to do with deploying chemical agents on Plaintiffs and not water deprivation.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FRCP 26(b)(1). The standard for discoverability is liberal. See *Bartis v. Biomet, Inc.* 2021 WL 2092785, at *1 (E.D. Mo. May 24, 2021). Relevancy in this context "is to be broadly construed... it encompasses any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Spring Lake Pork, LLC v. Great Plains Mgmt., LLC*, No. 2:19-CV-18 HEA, 2021 WL 3051902, at *2 (E.D. Mo. July 20, 2021) (citation and quotation omitted). A party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. FRCP 37(a)(3)(4).

## ARGUMENT

### I. Defendant Improperly Refuses to Respond to Interrogatory 3 Which Requests Information Critical to Identifying John Doe 1

Courts have long recognized the need for targeted discovery as to the identity of Doe defendants. *See*, *e.g.*, *Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985) (collecting cases). This discovery is particularly important "in cases of alleged police brutality, where a plaintiff may be aware of the nature and cause of the injury but not the identity of the perpetrators, and has no realistic means of obtaining the information outside the discovery process." *Martinez-Rivera v. Sanchez Ramos*, 498 F.3d 3, 8 n.5 (1st Cir. 2007) (emphasis added). Under controlling Eighth Circuit precedent, once a Plaintiff pleads specific facts about an unknown officer, "the court should [] order[] disclosure of Officer Doe's identity by other defendants named and served or permit[] the plaintiff to identify the officer through discovery." *Munz v. Parr* at 1257. Indeed, this Court has issued orders requiring the City to comply with John Doe discovery in numerous

recent suits. *See*, *e.g.*, *Faulk v. City of St. Louis*, 4:18-cv-00308-JCH (E.D. Mo. August 1, 2019), Dkt. No. 74; *Nelson v. City of St. Louis*, 4:18-cv-01561-JCH (E.D. Mo. July 24, 2019), Dkt. No. 47; *Gullet v. City of St. Louis*, 4:18-cv-01571-JCH (E.D. Mo. July 24, 2019), Dkt. No. 50; *Baude v. City of St. Louis*, 4:18-cv-01564-RWS (E.D.Mo. Oct. 8, 2019), Dkt. No. 50; *Davis v. City of St. Louis,* 4:18-cv-01574-HEA (E.D. Mo. Sept. 18, 2019), Dkt. No. 51.

Plaintiffs issued targeted Doe discovery requests almost six months ago. Defendant has declined to respond, at all, to Interrogatory 3. Defendant has advanced two explanations for their refusal: first, that responding Interrogatory 3 would put a burden on Defendant; and second, the recent explanation (made for the first time five months after the request was sent) that because of Defendant's perception of the "validity" of the water deprivation claim, Interrogatory 3 is not proportional. Both are unavailing.

**A. Defendant has failed to identify a specific burden they would face from responding to Interrogatory 3**

Defendant has the burden of showing that responding to a discovery request is "unusual, undue or extraordinary." *Factory Mut. Ins. Co. v. Neb. Beef, Inc.*, No. 8:09 CV 159, 2010 WL1553458, at *2 (D. Neb. Apr. 15, 2010); see also *Carboline Co. v. A-1 Indus. Maint., Inc.*, No. 4:19 CV 1721 CDP, 2020 WL 3605295, at *3 (E.D. Mo. July 2, 2020) (citation omitted) ("All discovery requests are a burden on the party who must respond…[u]nless the task of producing or answering is unusual, undue or extraordinary, the general rule requires the entity answering or producing the documents to bear that burden.")

Defendant argues that responding to Interrogatory 3 would require correctional staff "to run a lengthy report for each day." But, according to Plaintiffs' narrowing of the Interrogatory, Defendant would have to look at facility notes from February 6-9, March 5, April 25, May 13 and May 18, 2021 – seven days in total. Defendant also states vaguely it would require them to "review

8

extensive data." Defendant has not explained what this data is, or why reviewing that data presents a true obstacle to answering the discovery, and thus have failed to show that reviewing facility notes from seven days presents an unusual, undue or extraordinary burden. Nor have Defendants explained why they can't simply produce this data in response to Interrogatory 3, pursuant to FRCP 33(d).

### B. Defendant cannot use its own, unilateral opinion that claims are invalid as a reason to declare John Doe discovery disproportionate to the needs of the case

Rule 26(b)(1) dictates that parties may obtain discovery "proportional to the needs of the case" and outlines the factors to be considered, to wit:

> the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.

Defendant has not addressed how responding to Interrogatory 3 is not proportional considering any of these factors. Nor can they. The importance of discovery into the identity of John Doe 1 is essential in Plaintiffs' ability to bring Count V. The identity of John Doe 1 is information that is solely within the possession of Defendant. And, as explained above, the burden of the proposed discovery appears to be small.

Instead, Defendant maintained that the claim is "not viable." By this, Defendant explained that it believed the claim would either be dismissed pursuant to their pending Motion to Dismiss or later on in the litigation.[2] As such, Defendant has expressed that they are standing on their objection with respect to Interrogatory 3. Parties "cannot, by their sole insistence,

---

[2] Defendant's counsel stated that Plaintiffs' attempt at a memorialization of the conference did not accurately reflect Defendant's position, specifically that Defendant's counsel is not relying on the pending Motion to Dismiss. Despite this protestation from Defendant's counsel, Defendant's counsel then repeated their position that due to their evaluation of the water deprivation claim as unviable, they are unwilling to participate in John Doe discovery as to John Doe 1. *See Exhibit* 7.

9

declare evidence undiscoverable and irrelevant merely because it does not fit into their own theory of the case." *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925-96 (8th Cir. 2014). "Rule 26(b)(1) does not give any party 'the unilateral ability to dictate the scope of discovery based on their own view of the parties' respective theories of the case,' because '[l]itgation in general and discovery in particular ... are not one sided.'" *Liguria Foods, Inc. v. Griffith Labs., Inc.*, 320 F.R.D. 168, 183 (N.D. Iowa 2017) (quoting *Sentis Grp., Inc. v. Shell Oil Co.*, 763 F.3d 919, 925 (8th Cir. 2014)).

In two recent cases, judges in this district have considered, and denied, similar assertions by defendants that the merits of the case render the plaintiff's requests irrelevant, allowing for discovery. *Carboline Co. v. A-1 Indus. Maint., Inc.*, 2020 WL 3605295, at *3 (E.D. Mo. July 2, 2020); *SI03, Inc. v. Musclegen Research, Inc*, No. 1:16-CV-274 RLW, 2020 WL 6544261 at *4 (E.D. Mo. Nov. 6, 2020). In so holding, this Court has noted that discovery is guided by Rule 26(b)(1) and not by whether any party will prevail on their claims or defenses in this action. *Id*.

Obviously, Plaintiffs and Defendant have starkly differing views of the viability of Count V. This difference of opinion is undoubtedly the same in all contested litigation. A system that allows a defendant to unilaterally choose claims it deems appropriate for discovery, as Defendant has here, would lead to absurd outcomes not envisioned by the Rules.

At the scheduling conference in this case, this Court did not limit the scope of discovery in any way, despite the pending Motions to Dismiss. The requested discovery as to the John Doe 1 officers is essential for Plaintiffs' claim that they have been unconstitutionally deprived of

water as improper punishment. Defendant's new objections to participating in this discovery to identify John Doe 1 officers cannot stand.[3]

## II. Defendant Has Asserted Legally Insufficient Objections to Producing Highly Relevant *Monell* Evidence

### A. Recordings of similar incidents at CJC are highly relevant to Plaintiffs' *Monell* Claim

Recordings of the use of chemical agents deployed against CJC detainees are, without a doubt, highly relevant to Plaintiffs' *Monell* claim. One of the central questions in this case is whether an underlying policy or practice of excessively deploying chemical agents was a "moving force" behind the constitutional injury inflicted on Plaintiffs. *See Monell v. Department of Soc. Serv.*, 436 U.S. 658, 694 (1978). Plaintiffs detail in their Complaint a punitive pattern and practice of violent use of chemical agents against CJC detainees that occurred over a period of months. Amd. Compl., Dkt. 8, ¶ 79-86; 96. The facts are grave: chemical agents are repeatedly deployed through chuckholes into cells in violation of the City's own policies, forcing detainees to sit and inhale chemicals for lengthy periods of time; chemical agents are deployed against detainees who present no physical threat whatsoever, while they are talking with loved ones on the phone or objecting to deficient COVID protocols; chemical agents are deployed indiscriminately and excessively, such that all detainees suffer from exposure, not just those directly targeted. *Id*. ¶ 79-86; 96. The use of chemical agents at CJC is so pervasive that it seems to be a near-daily occurrence according to Use of Force records and detainee reports. Indeed, Plaintiffs are aware that such incidents occurred at least a hundred times in the past two years

---

[3] While Plaintiffs would strongly oppose such a motion, Plaintiffs note Defendant has not even taken the step of asking the Court to stay proceedings while it considers the pending Motion to Dismiss. Instead, Defendant represented to the Court that they were prepared to proceed with the deadlines in the CMO.

11

alone.[4] *See* Exhibit 6. And attorneys conducting legal visits at CJC report smelling the reside of chemical agents in the visiting room. Even undersigned counsel have had to cut visits at CJC short because of the deployment of chemical agents in amounts so excessive that they infiltrated the secure legal visitation room.

Recordings of similar use-of-force incidents at CJC can be used to prove a custom of excessively and indiscriminately deploying chemical agents as alleged in Plaintiffs' Complaint. It is well established that a pattern of similar unconstitutional incidents can give rise to an actionable *Monell* claim. See *Parrish v. Luckie*, 963 F.2d 201, 205 (8th Cir. 1992) (to establish a city's liability based on its failure to prevent misconduct by employees, the plaintiff must show that city officials had knowledge of prior incidents of police misconduct and deliberately failed to take remedial action); *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("Evidence that a police department failed to investigate previous incidents *similar to the incident in question* may support a finding that a municipal custom exists[.]" ); *Whitt v. City of St. Louis*, No. 4:18-CV-1294 RLW, 2020 WL 7122615, at *7–9 (E.D. Mo. Dec. 4, 2020) (similar incidents would be relevant to Plaintiff's *Monell* claims); *see also Board of County Comm'rs v. Brown*, 520 U.S. 397, 407-08 (1997) (recognizing that "the existence of a pattern of tortious conduct by inadequately trained employees may tend to show that the lack of proper training … is the 'moving force' behind the plaintiff's injury").

This reasoning applies to incidents that occurred both before and after Plaintiffs' assaults detailed in the amended Complaint. As the court in *Whitt* stated:

> The Court finds the clear majority of case law, as set forth above, supports the conclusion that subsequent incidents may be probative of what policies, practices,

---

[4] This information was primarily gathered through a sunshine request for Use of Force records from October 2020 to April 2021, so it does not capture the prevalence of chemical agent incidents from April 2021 onwards.

or accepted customs existed at the time of Plaintiff's arrest, which would be relevant to his Monell claims. From this post-incident evidence the jury may imply the existence of a pre-incident policy, and the evidence may also infer knowledge and moving force.

*Whitt v. City of St. Louis*, 2020 WL 7122615 at *9 (collecting cases).

The requested recordings are plainly relevant and should be produced. Because the recordings are relevant, Defendant should also produce any records memorializing its destruction as sought in Request 2.

### B. Defendant's Objections are Boilerplate and Legally Insufficient

Defendant has not come close to meeting their heavy burden under Rule 26 of showing why Plaintiffs' discovery requests are improper and instead have asserted boilerplate objections. See *Jo Ann Howard & Assocs., P.C. v. Cassity*, 303 F.R.D. 539, 542 (E.D. Mo. 2014) ("After the proponent of discovery makes a threshold showing of relevance, the party opposing a motion to compel has the burden of showing its objections are valid by providing specific explanations or factual support as to how each discovery request is improper.").

> 1. Any and all audio, visual, or audio-visual recordings that shows, in part or whole, one or more correctional staff member deploying a chemical agent on a detainee at the City Justice Center.
>
> RESPONSE: Objection. This request is not at all limited in time and scope, is burdensome, not proportional to the needs of the case. Defendants have already produced existing video surveillance of the specific use of force incidents identified by plaintiff's in their claims for excessive force by use of pepper spray. This request does not specify any dates, individuals or locations for the use of force plaintiffs' wish to obtain video of.

*See* Exhibit 5.

As described above, in an effort to compromise, Plaintiffs offered to limit the scope of Request 1 to <u>five</u> years and then to <u>three</u> years. Plaintiffs even undertook the burden of producing

13

a list of over 100 relevant dates on which alleged assaults occurred, but Defendant still refused to take the steps required of them under the Rules. *See* Exhibits 6 and 7. Defendant continues to stand on their objections that the requests are overbroad and not proportional.

These boilerplate objections, without any specificity, are almost uniformly deemed to be improper and insufficient as a matter of law. *See Matter of Am. River Transportation Co.,* No. 4:11-CV-523 (CEJ), 2017 WL 747608, at *3 (E.D. Mo. Feb. 27, 2017) (Boilerplate objections are not appropriate and the party resisting discovery must show specifically how each request is not relevant overly broad, burdensome or oppressive); *LADS Network Sols., Inc. v. Agilis Sys., LLC*, No. 4:19-CV-00011-AGF, 2019 WL 5696147, at *3 (E.D. Mo. Nov. 4, 2019).

"A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required." *Vallejo v. Amgen, Inc.*, 903 F.3d 733, 743 (8th Cir. 2018) (citation and quotation omitted). Defendant has offered no such evidence. In fact, Defendant is in possession of the very information they rest their objections on: CJC policy requires correctional officers to document every instance in which chemical agents are deployed and indicate whether there was a video of the incident. Moreover, according to Defendant's own representation, Defendant only retains video for 60 days, and so producing all relevant video since the filing of this lawsuit should not be burdensome. As laid out above, the requested videos go to the heart of Plaintiffs' *Monell* claim. These boilerplate objections cannot stand.

### III. Plaintiffs ask this Court to Extend the Deadline to Amend Pleadings to Accommodate Defendant's Delay in Responding to Discovery

Under the current Case Management Order, Plaintiffs' deadline to join additional parties and amend pleadings is January 14, 2022. *See* Dkt. No. 37. This deadline is not feasible given the City's refusal to respond to Interrogatory 3 or identify a 30(b)(6) witness. Plaintiffs respectfully

request that the dates in the Case Management Order be adjusted by 60 days, such that the deadline to amend pleadings is March 14, 2022. This request for an extension of time on the deadlines in the case is made in good faith, and not for purposes of delay.

WHEREFORE, for the foregoing reasons, Plaintiffs respectfully request this Court grant an order: (i) compelling the Defendant City of St. Louis to produce full and complete responses to Interrogatory 3 from Plaintiffs' First Set of Interrogatories and produce responsive records to Requests 1 and 2 from Plaintiffs' Second Requests for Production, including all non-privileged responsive records, within 14 days of its order; (ii) amending the Case Management Order and (iii) granting further relief as is just and appropriate under the circumstances.

Dated: December 22, 2021

Respectfully submitted,

By: */s/ Shubra Ohri*

Amy E. Breihan (MBE #65499MO)
W. Patrick Mobley (MBE #63636MO)
Shubra Ohri (E.D. Mo. Bar No. 63098241L)
906 Olive Street, Suite 420
Saint Louis, Missouri 63101

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER

*/s/Maureen Hanlon*

Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
Brittney Watkins (MBE #73992MO)
Emanuel Powell (E.D. Mo. Bar No. #706171MA)
Nathaniel R. Carroll (MBE #67988MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102

ARCHCITY DEFENDERS, INC.

/s/Brendan Roediger

Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930

SAINT LOUIS UNIVERSITY SCHOOL OF LAW LEGAL CLINICS


 /s/Oren Nimni

Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001

RIGHTS BEHIND BARS


*Attorneys for the Plaintiffs*

**CERTIFICATE OF CONFERENCE PURSUANT TO LOCAL RULE 3.04**

As laid out in detail in the memorandum above, Plaintiffs' counsel has conferred by email and by telephone with the opposing counsel in good faith multiple times, specifically: Plaintiffs sent Defendants two golden rule letters, followed up by phone, had a phone conference on December 9, 2021 and again followed up by email. After sincere efforts to resolve their dispute, counsel have been unable to reach an accord.

By: /s/ Shubra Ohri

**CERTIFICATE OF SERVICE**

I hereby certify that on December 22, 2021 the foregoing was filed electronically via the Court's electronic filing system, which will send notice to all counsel of record.

By: /s/ Shubra Ohri