UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Derrick Jones, Jerome Jones, and Darnell Rusan,<br><br>PLAINTIFFS,<br><br>v.<br><br>City of St. Louis, et al.,<br><br>DEFENDANTS. | Cause No. 4:21-cv-600-JCH |

**Defendant City of St. Louis' Response in Opposition to Plaintiffs' Motion to Compel**

Comes now Defendant City of St. Louis, through counsel, and in response to plaintiffs' motion to compel states the following in opposition:

**BACKGROUND**

Plaintiffs move that this Court compel defendants "to produce full and complete responses to Interrogatory 3 from Plaintiffs' Fire Set of Interrogatories and produce responsive records to Requests 1 and 2 from Plaintiff's Second Requests for Production." In their motion, plaintiffs diminish the defendants' obvious effort to provide information and records responsive to their significant discovery requests, accusing defendants of changing course to employ evasive tactics. ECF 47, p. 1.

Defendants have provided plaintiffs with two thousand two hundred and forty-five

1

(2,245) documents in response to their request for production and initial disclosures. In addition, defendants have provided plaintiffs with the four videos in defendants' possession that document Derrick Jones' attack of Lt. Sherry Richard and Darnell Rusan's assault on two corrections officers. Of the over two thousand pages of documents already provided by defendants, over three hundred pages are dedicated to flooding incidents from October 1, 2020 to October 1, 2021. Defendant City of St. Louis ("City") has provided two thousand seven hundred and eighty-seven (2,787) pages of use of force reports, documenting every use of force from October 2, 2020 to March 30, 2021, in response to counsel for the defendants Sunshine Request dated prior to the filing of this lawsuit. To date, defendants have produced over five thousand pages of responsive documents and four videos. Defendants anticipate providing additional documentation to plaintiffs of their most recent violation of the Division of Corrections' policy, which resulted in more uses of pepper spray, pursuant to Defendants' responsibility under the Federal Rules of Civil Procedure.

1. **John Doe Discovery**

Plaintiffs amended their complaint and named an unknown corrections employee/s "John Doe 1" in an effort to represent unspecified individuals who may have turned off water at CJC on unspecified dates. Defendants agreed to assist in identifying Jane Doe and John Doe 2, individuals who interacted with Plaintiffs on the specific days corrections officers were forced to use mace in order to gain compliance from Plaintiffs. In effort to cooperate with plaintiffs efforts to identifying the individual speciously assigned as John Doe 1, defendants provided jail management records regarding instances of cell flooding during a one year period covering the broad timeframe apparent from the complaint. This production was after consultation with jail management who advised that these would likely be the only existing written records of who

may have been involved with inmate water shut-offs. Defendants also offered to produce a jail administrator for deposition to assist plaintiffs in ascertaining who may have been involved in the plaintiffs' experiences of alleged water deprivation.

Defendants recognize and take seriously their discovery obligations as manifested by their extensive production, inquiry into, and identification of two previously unidentified Doe defendants; "[a]t the same time, 'discovery, like all matters of procedure, has ultimate and necessary boundaries.'" *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)(quoting *Hickman v. Taylor*, 329 U.S. 495, 507(1947)). This is especially true in the context of discovery of John Doe defendants. Plaintiffs cite the case of *Munz v. Parr*, 758 F.2d 1254 (8th Cir. 1985), in support of the position that they are entitled to conduct broad and relentless discovery on the identity of the John Doe defendant alleged to have deprived plaintiffs of water. Defendants appreciate the argument insofar as it is applicable to cases factually similar to the *Munz* case, however, this case is not so similar. In *Munz*, the plaintiff alleged that on April 7, 1982, five police officers entered his apartment and searched his room without having obtained a lawful search warrant and used excessive force in effecting his arrest. *Id* at 1256. The date, location and individuals involved in the alleged conduct were certain, and while the plaintiff did not know the identity of the John Doe defendant, the court opined that "[w]ith these specifics, it is quite likely. . ., that Officer Doe is capable of being identified." *Id*.

Here, the allegations involving John Doe 1 are sparse, general and conclusory. John Doe 1 is alleged to have violated Plaintiff Derrick Jones and Plaintiff Jerome Jones' constitutional rights by "purposefully or knowingly taken (sic) actions to cut off the water source bringing water to detainees' cells." First Amended Complaint, Doc. #9, p. 26, para. 144. Plaintiff Jerome Jones alleges that his experience of water deprivation occurred shortly after February 6, 2021,

3

and that "following the uprising of CJC detainees that started the prior evening," Jerome Jones was moved from the fourth floor to the fifth floor. *Id*, p. 16, para. 79. Jones alleges that while on the fifth floor, his water was shut off and he went "days without having any liquids to drink," and was unable to flush the toilet in his cell. *Id*, paras. 81, 83, and 84. Plaintiffs conclude that the water shut-off following the riot was "not due to equipment failures, but was an intentional, punitive, and retaliatory deprivation of water." *Id*, p. 17, para. 87. They allege no specific facts to support this conclusion. Also apparently in support of a claim against John Doe 1, plaintiffs allege that "[o]n April 25, a detainee got into an argument with CO Smith in pod 5D. In response, the CO shut off water for the entire pod. When asked why he shut the water off, the CO responded: "I did it cause I want to." Doc. #9, p. 18, para. 96(a). And they allege that "[i]n February 2021, the water was shut off one day to the entire pod where Jerome was housed because the correctional officers stated some of the other detainees were 'acting childish' and needed to be taught a lesson.'" Doc. #9, p. 18, para. 96(a). These allegations are extremely scattered and offer almost no specifics which would allow defendants to narrow in on any particular corrections officers, much less identify an officer responsible for shutting off the plaintiffs' water with any degree of certainty.

To be entitled to early discovery of this John Doe defendant, plaintiffs must make allegations specific enough to demonstrate that his identity can be determined through reasonable discovery. *See Perez v. Does* 1-10, 931 F.3d 641 (8th Cir.2019) (affirming dismissal of Doe defendants where allegations were not specific enough to permit identification of the party after reasonable discovery and where complaint "consist[ed] mostly of legal conclusions and speculation."). It is precisely for this reason, that defendants were able to and did identify John Doe II and Jane Doe for the plaintiffs. Unlike the allegations regarding the Doe defendant's

4

alleged water deprivation, the allegations regarding these Doe defendants accused of excessive force were specific enough to permit identification through reasonable efforts and discovery. Plaintiffs' allegations regarding John Doe I's water deprivation lack the essential specifics to support their feasible identification, painting with a broad brush to describe general conduct of indefinite timing, dissociated from any particular individuals, and reasonably attributable to conduct consistent with the legitimate purposes of the jail administration and staff. For these reasons, plaintiffs' motion to compel should be denied insofar as it would require further discovery on the issue of John Doe I's identity.

**2.     Monell Recording Discovery**

Plaintiffs sent their Second Request for Production on September 22, 2021. Defendants responded on October 22, 2021. Plaintiffs' requested any and all videos or audio relating to a staff member deploying a chemical agent on any detainee at the City Justice Center. Pl RFP 2 ¶1. Defendants properly objected due to the excessively broad scope of the request and the burden it would impose on our staff to search for every use of pepper spray, determine if a video or recording exists for that incident, and copy any video or audio located. On November 30, 2021 Plaintiffs limited their broad and unreasonable request and unilaterally limited the scope to five years. Defendants agreed to a phone call on December 9, 2021 regarding Plaintiffs' unreasonable discovery requests.

**3.     Meet and Confer**

Plaintiffs' characterization of our conversation on December 9, 2021, as expected, is different than defendants' recollection. See Exhibit A. Defendants attempted to explain their concerns with the way the interrogatories and requests for production were written and the proportionality of their request against the needs of the case. Defendants' counsel attempted to

5

explain concerns but was cut off by plaintiffs' counsel who made a sexist comment and another comment that expressed plaintiffs' counsels' interest in excluding the one male member of the conversation. At that point the conversation quickly became unproductive.

## ARGUMENT

### I. **Defendant properly objected to Plaintiffs' unduly burdensome interrogatory: the response was specific as to the burden it presents and the request is not proportional to the needs of the case.**

Because the materials already supplied to plaintiffs have apparently not exposed the identity of an officer who allegedly shut off running water to the cell of one or two of the inmate-plaintiffs, plaintiffs' counsel seeks an order which, if granted, would necessarily require the St. Louis Division of Corrections to assign an employee to run numerous and potentially lengthy reports using the Division's Integrated Jail Management System (IJMS) and review these reports for any notations which might reveal what officers, if any, shut off water in the housing units for a period of approximately four (4) months (later narrowed by plaintiffs to seven (7) dates). Requiring the City to respond to this interrogatory, even for the narrowed date range, would be excessively burdensome and also be uncertain to yield any material enabling the City to respond to this interrogatory. In short, attempting to respond to this interrogatory presents a considerable challenge and strain on Corrections administration and would potentially serve no purpose; if there are no notations regarding specific water shut-offs, responding to this request is most likely impossible without interviewing any number of corrections offers or inmates who might remember the details of any water shut-offs.

Additionally, the broader question of plaintiffs' entitlement to John Doe discovery is one that is worthy of consideration. While defendants are willing to concede that plaintiffs are

6

entitled to some reasonable discovery so as to identify their John and Jane Doe defendants, the Court should observe that what is reasonable depends on the issues of the case, the specificity of the plaintiffs' allegations regarding misconduct and even the strength of the plaintiffs' claims themselves. *See e.g. Richardson v. Johnson*, 598 F.3d 734 (11th Cir. 2010)(dismissing claim against a John Doe, noting that fictitious-party pleading is generally not permitted in federal court except where the description of the defendant is so specific as to be surplusage); see also *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir.1980) (allowing use of unnamed defendant where it was clear that discovery would uncover the defendant's identity). For reasons articulated above in the general discussion of John Doe discovery, defendants maintain that plaintiffs' allegations against John Doe 1, do not entitle them to discovery beyond what has already been provided. If plaintiffs wish to depose any jail administrators or corrections officers to aid them in discovering John Doe I, defendants remain willing to oblige.

      **II.**    **Defendants have not asserted an objection to all *Monell* discovery.**

      **A.**    **Plaintiffs' request for all recordings is not proportional to the case and would require undue burden and expense.**

Defendants, in order to be successful in their objection to a motion to compel, must show, "that the requested documents either do not come within the broad scope of relevance defined pursuant to Rule 26(b)(1) or else are of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." *Burke v. New York City Police Department*, 115 F.R.D. 220, 224 (S.D.N.Y. 1987). Defendants have produced four videos that show Plaintiffs Derrick Jones and Darnell Rusan being given multiple orders from corrections officers to lock down and return to their cell, not complying with the orders for several minutes, and corrections officers using de minimis force, pepper

7

spray, to gain compliance. The videos do not support plaintiffs' claims, instead they show both men attacking corrections officers immediately after being sprayed.

Plaintiffs' request is for all uses of a chemical agent by correctional staff. Defendants have already provided plaintiffs with five months of use of force reports. Those reports consist of more than twenty seven hundred pages of documentation in a period of five months. The City of St. Louis Justice Center has been open since 2002. If the five months provided is indicative of the average number of documents for a five month period, assuming documents have been retained, plaintiffs are requesting defendants review approximately 129,000 pages of use of force reports to determine if video or audio exist for any cases involving the deployment of chemical agents. Reviewing that many documents and making copies of videos would cost tens of thousands of dollars in staff time and months of work. The videos of all non-party inmates violating department policy prompting the use of mace is not proportional to the needs of the case.

Plaintiffs state that they unilaterally conceded to a three year period for any audio or video recordings. But again, they themselves identify 100 uses of force involving mace in a five month period. There are three named plaintiffs. Plaintiffs are requesting defendants review hundreds of use of force reports for non-plaintiff inmates, make a determination if mace was used, determine whether audio or video recordings exist, and make copies of those recordings in support of a claim. However, the videos provided by defendants of the named plaintiffs do not support plaintiffs' claims. Plaintiffs are using the discovery process to harass, cause undue burden to staff, and place unnecessary financial costs on defendants.

  **B.**  **Defendants' objections are legally sufficient and reasonable**.

Plaintiffs to support their argument that defendants' objections are insufficient, by citing a case in which the defendants, "objected that the disputed discovery requests were vague, ambiguous, irrelevant, or overbroad, without further specifying how the requests were objectionable." *In re Am. River Transp. Co.*, No. 4:11-CV-523 (CEJ), 2017 U.S. Dist. LEXIS 26852 (E.D. Mo. Feb. 27, 2017). Here, defendants state that they have previously provided relevant videos and that the request lacks specific dates, individuals, or locations for the use of force plaintiffs' wish to obtain video of. Pl. 2nd RFP Response 1. In response to plaintiffs' 2nd Request for Production question 2, defendants state that to the best of their knowledge we are not in possession of responsive records. Plaintiffs' concession to three years does not change the fact that City employees would need to dedicate countless hours and expenses to satisfy plaintiffs' unnecessary and disproportionate fishing excursion. Defendants have provided sufficient information to show that the request, as defendants understand it, would require numerous staff hours, review of tens of thousands of documents, and hundreds of hours of video to fulfill plaintiffs' request. Defendants' objections were reasonably specific, clearly communicating to the plaintiffs what the objections are based upon.

### III.     Defendants object to an extension of the deadline to amend pleadings.

Plaintiffs' requirement to amend their pleading by January 14, 2022 is not the responsibility of defendants. Plaintiffs have had six months to notice fact witnesses for deposition or review the thousands of pages of discovery provided to identify their John Doe 1. The delay is unnecessary and is not likely to assist in identifying new defendants.

WHEREFORE, for the foregoing reasons, Defendants respectfully request that this Court deny Plaintiffs' Motion to Compel and to Amend the Case Management Order.

Respectfully submitted,

9

SHEENA HAMILTON,
CITY COUNSELOR

By:   */s/ Adriano Martinez*
Adriano Martinez #69214
Catherine Dierker #70025
Assistant City Counselors
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-3786
Fax: 314-622-4956
dierkerc@stlouis-mo.gov
martineza@stlouis-mo.gov

10