**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| DERRICK JONES, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | Case No. 4:21-CV-00600 JCH |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF ST. LOUIS, et al., | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM AND ORDER

Plaintiffs bring this 42 U.S.C. § 1983 action against the City of St. Louis and certain employees[1] of the St. Louis City Justice Center.  Defendants have moved to dismiss Counts One through Four and Count Six of Plaintiffs' First Amended Complaint for failure to state a claim. (Doc. No. 24).  For the reasons set forth below, the Defendants' motion will be granted in part and denied in part.  The Court grants Defendants' motion to dismiss the official capacity claims against Defendants Adrian Barnes and Jeffrey Carson, and denies the motion in all other respects.

### BACKGROUND

The Plaintiffs are all pretrial detainees who allege that while held in the Justice Center, they were maced without warning or provocation, and for the purpose of inflicting punishment or pain, rather than for security reasons.  FAC ¶ 4.  Plaintiffs also allege that they were deprived of the means or ability to remove the chemical residue for excessive periods of time.  *Id*. ¶ 5.  More specifically, Plaintiff Derrick Jones alleges that on December 14, 2020, he asked to transfer cells because his cellmate was exhibiting symptoms of COVID-19.   In response, Defendant

---

[1]  Defendant Adrian Barnes is the Superintendent of the Justice Center and is sued in his official capacity only. Defendant Jeffrey Carson is Acting Commissioner of the St. Louis Division of Corrections and is sued in his official capacity only.  Defendants Lieutenant Javan Fowlkes, Correctional Officer Aisha Turner, Correctional Officer Direll Alexander, Correctional Officer Michelle Lewis, Jane Doe and John Does 1-2, were employees of the Justice Center at all relevant times and are sued in their individual capacities.

Correctional Officer Jane Doe told him he would have to stay in the cell with the presumably infected cellmate, and maced him in the face without warning. *Id*. ¶¶ 18-21. Then Defendant Jane Doe and other guards kicked him in the head, placed him in handcuffs, and while he was restrained on the floor he was maced again and left in a cell to "marinate" in the chemical spray for approximately twenty minutes. *Id*. ¶ 1; ¶¶ 22-27. After that, Derrick Jones saw medical staff, who washed his eyes, but he was then taken to solitary where he was kept for eight days without being allowed a shower, even though the chemicals from the macing were still on his skin and clothing. *Id*. ¶ 28.

Plaintiff Jerome Jones alleges that in February of 2021 he was placed in a small, secure room and, without warning, jail staff, including Defendants Robinson, Allen, and Fowlkes, sprayed the room with excessive amounts of mace and left him there struggling and shouting that he could not breathe for nearly half an hour. *Id*. ¶¶ 29-34. He alleges that he was not acting aggressively at the time of this occurrence and was handcuffed throughout the incident. *Id*. He alleges that he was denied water to flush his eyes, was denied medical attention, and was not allowed to shower until the next day. *Id*. ¶¶ 38-41. He further alleges that he continued to feel burning from the mace for three days, had difficulty breathing for weeks after the incident, and continues to have respiratory difficulties attributable to the macing. *Id*.

Also in December 2020, Plaintiff Darnell Rusan alleges Defendant Lewis told him that he had a "bad attitude" and that Defendant Turner then sprayed mace directly in his face. *Id*. ¶ 1; 47. He further alleges that while he was being sprayed by Defendant Turner, he tried to walk away, at which time Defendant Lewis also sprayed him with mace. *Id*. ¶ 48. He alleges that he went to the shower to try to wash the mace off his eyes and skin when Defendant Alexander and Defendant John Doe 2 removed him from the shower, placed him in handcuffs and took him to the medical unit. *Id*. ¶ 50. He asserts that while in route to the medical unit, Defendant Alexander slammed

2

his head into the wall, and that once in the unit, Alexander hit and choked him while Rusan was handcuffed, and threatened to kill him. *Id*. ¶ 51. Rusan alleges that he never saw a nurse while in the medical unit. *Id*. Rusan alleges that Defendants Alexander and John Doe 2 then took him to a visiting booth, pressed him against the wall and choked him, during which time his vision blurred, he was dizzy, and he struggled to breath; Rusan alleges that he yelled that could not breathe, and Alexander told him that was "the whole point." *Id*. ¶ 52. Rusan was handcuffed throughout the incident. *Id*. Rusan alleges that either Alexander or Doe 2 sprayed excessive amounts of mace into the room and closed the door, leaving him in the small, mace-filled room for approximately nine hours. *Id*. ¶ 53. Rusan alleges that he was again sprayed with mace in February, 2021, this time while fully nude, and was left in a room filled with mace for approximately four hours, after which the was denied the opportunity to go to the medical unit. *Id*. ¶¶ 59-60. Rusan alleges that he was given no warning before the mace was deployed, and that he was  not actively resisting or threatening staff. *Id*.

Plaintiffs allege that this is part of a widespread pattern and practice in the Justice Center, where staff allegedly use mace to inflict pain and suffering on detainees without cause or warning, often on detainees who are passive, restrained, or confined. *Id*. ¶¶ 61-69.

Plaintiffs additionally allege that Justice Center has a practice of depriving detainees of water to their cells for hours or sometimes days at a time in order to punish and harm detainees for infractions such as talking back, banging on cell doors, or having an "attitude" with staff. *Id*. ¶ 2. Plaintiffs allege that they were subjected to regular deprivations of drinking water and water for toilets when there was no valid security justification for doing so. *Id*. ¶ 6. More specifically, Plaintiffs allege that on February 6, 2021, which was day after a detainee uprising to protest inhumane conditions, Justice Center employees moved several detainees, including Jerome Jones, to the fifth floor and cut off the water supply to all the cells on that level. *Id*. ¶¶ 77-80. Plaintiffs

allege that the detainees had not intentionally flooded their cells or threatened to do so. *Id*. They further allege that the fifth-floor detainees were without water to drink or to flush toilets for several days, during which time they were also denied meals or other liquids to drink. *Id*. ¶¶ 81-83. They further allege that, because of the inability to flush, several toilets on that floor overflowed, leaving the floors of the level covered with excrement and urine for at least three days. *Id*. ¶¶ 84-86. Plaintiffs allege that the water shut-offs led to dehydration, headaches, stress, anxiety, and stomach discomfort. *Id*. ¶¶ 99-102. Similar water shut-offs occurred periodically after the February 2021 incident, including in March, April, and May of 2021. *Id*. ¶ 96. Plaintiffs allege that this incident, and similar water shut-offs, were not the result of any equipment failure, plumbing issue, or maintenance related reason, but were done to punish detainees. *Id*. ¶¶ 89-91. As evidence of the punitive or retaliatory nature of the shut-offs, Plaintiffs allege that in February 2021, the fifth floor detainees were told the water was off because they had been "acting childish"; on April 25, 2021, Correctional Officer Smith, when asked why he shut off the water, replied, "I did it cause I want to"; in May 2021, Defendant Fowlkes shut off the water for the entire pod on two separate occasions for an entire day in response to one detainee kicking his door; and, guards will routinely threaten water shut-offs in response to minor misconduct entirely unrelated to plumbing. *Id*. ¶¶ 96-98. On February 10, 2021, a group of concerned advocates wrote a letter to the St. Louis Public Safety Director and the former Commissioner to notify them of the punitive water shut-offs. *Id*. ¶ 92.

Plaintiffs also allege that the grievance process at the Justice Center is so opaque, confusing, and difficult to access as to deny them access to grievance procedures altogether. *Id*. ¶¶ 107-09. Plaintiff Derrick Jones alleges that he filed several informal resolution requests (IRRs) in response to his conditions of confinement, and has never received a response. *Id*. ¶¶ 110-17.

Plaintiff Rusan alleges that he requested an IRR form and was repeatedly denied and was threatened with mace if he persisted in asking.  *Id*. ¶ 118.

Plaintiffs filed this action pursuant to 42 U.S.C. § 1983, asserting claims under the Fourteenth Amendment, and are seeking declaratory, injunctive, and compensatory relief.  Count One of the amended complaint alleges that Defendants Jane Doe and Fowlkes used excessive force against Derrick Jones by spraying him with excessive amounts of mace while he was restrained and again while he was confined within a secure room without prior warning.  Count Two alleges that Defendant Fowlkes violated Jerome Jones's Fourteenth Amendment rights through the use of excessive force when he sprayed him with mace while he was restrained and in a secure room.  Count Three alleges Defendants John Doe 2, Turner, Alexander, Lewis, and Fowlkes used excessive force against Darnell Rusan by spraying him with excessive amounts of mace while he was restrained and again while he was confined naked in a secure room without prior warning, and by slamming his head into a wall, choking, and beating him.  Count Four is a *Monell* claim by all Plaintiffs against the City and Defendants Barnes and Carson in their official capacities, alleging that the use of mace in the Justice Center without any security need was the result of lack of formal training and supervision, and was so widespread and frequent as to constitute de facto policy.  Count Five is brought by Derrick Jones and Jerome Jones against Fowlkes and John Doe I, and asserts that the conditions of confinement in the Justice Center with respect to the lack of water constitutes impermissible punishment unrelated to serving any criminal judgment in violation of the Fourteenth Amendment.  Count Six is a *Monell* claim brought by Derrick Jones against the City and Barnes and Carson in their official capacities, alleging that the persistent water shut-offs are imposed not in response to misconduct but as punishment for minor and non-threatening misconduct, and are so widespread and frequent as to constitute de facto policy.

As relief, Plaintiffs request a declaration that the City's policies and practices violate their Constitutional rights; a permanent injunction preventing the City from enforcing these policies and practices; and an award of compensatory damages, punitive damages, attorneys' fees, and costs.

Defendants move to dismiss Plaintiffs' amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).  (Doc. No. 24).

## LEGAL STANDARD

A pleading is deficient and may be dismissed under Rule 12(b)(6) if a plaintiff fails "to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  Rule 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (quoting *Twombly*, 550 U.S. at 555).  A claim "has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (quoting *Twombly*, 550 U.S. at 556).  The reviewing court must accept the plaintiff's factual allegations as true and construe them in plaintiff's favor, but it is not required to accept the legal conclusions the plaintiff draws from the facts alleged.  *Iqbal*, 556 U.S. at 678; *Retro Television Network, Inc. v. Luken Commc'ns, LLC*, 696 F.3d 766, 768-69 (8th Cir. 2012).  A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each

individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## I.     Excessive Force Claims

Defendants assert that Counts One through Three of the amended complaint alleging excessive force by individual officers in violation of the Fourteenth Amendment must be dismissed for failure to state a claim because Plaintiffs have alleged no more than *de minimus* force and injuries, and because they are entitled to qualified immunity on these claims.  The Court concludes that Plaintiffs' excessive force claims in Counts One, Two, and Three are sufficient to state a claim.

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015). *See also Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.*, 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id*.

In the First Amended Complaint, Derrick Jones alleges that on December 14, 2020, he asked to transfer cells because his cellmate was exhibiting symptoms of COVID-19.  In response, Defendant Correctional Officer Jane Doe told him he would have to stay in the cell with an infected

cellmate, and maced him in the eyes and face without warning.  Then, Defendant Jane Doe and other officers kicked him in the head, placed him in handcuffs, and while he was restrained on the floor he was again maced, this time by Defendant Fowlkes, and left in a cell to "marinate" in the chemical spray for approximately twenty minutes.  After that, medical staff washed his eyes, but he was then taken to solitary where he alleges he was kept for eight days without being allowed a shower, even though the chemicals from the macing were still on his skin and clothing, causing pain and discomfort.  Derrick Jones further alleges that he was not acting aggressively and was not threatening staff safety throughout the encounter.

Derrick Jones is essentially alleging that correctional officers used excessive force on him without reason or provocation.  There is no indication that the force used was in an attempt to maintain or restore discipline, particularly as he was handcuffed during much of the encounter. The reasonable inference to be drawn is that force was used against Derrick Jones to punish him because he asked that he not be housed with a cellmate who he believed had COVID-19.

In Count Two, Jerome Jones alleges that he was handcuffed and placed in a small, mace-filled room for approximately 25 minutes while his eyes, face, and body were burning from being soaked in mace, all because he said he would not change cells.  He also alleges that he was denied medical attention, had trouble breathing for weeks due to the incident, and continues to experience respiratory distress that he attributes to the macing.  He alleges that he was not physically resisting at any time during the encounter.

Finally, in Count Three, Darnell Rusan alleged that he has been maced excessively three times.  First he was maced by two different officers simultaneously while he held up a chair to try to guard his face from the chemicals.  Then, right after the first macing, he was pulled from the showers where he was trying to wash the mace off his body, handcuffed, and placed in an elevator. He alleges that while in the elevator, his head was slammed into the wall, and he was then taken

to the medical unit, where, rather than receiving treatment, he was hit choked, and threatened with death.  Finally, he alleges that he was locked in a mace-filled visiting room for four hours while fully nude.

The allegations in Counts One through Three are sufficient at this stage to state a claim that Defendants violated Plaintiffs' right to be free from excessive force.  However, the inquiry does not end there; to overcome qualified immunity, Plaintiff must present facts to show not only (1) that the officer[s'] conduct violated a constitutional right, but (2) that the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). Defendants argue that some minimum level of injury is required to establish the violation of a constitutional right.  Defendants assert that Plaintiffs have alleged no more than *de minimus* injuries, and that such minimal injury generally precludes a claim of excessive force.  However, even if the injuries alleged were *de minimus* (and it by no means clear that they are) it is clearly established that the unreasonableness of the force used, not the nature of the injury is the relevant inquiry. *Chambers v. Pennycock*, 641 F.3d 989, 906 (8th Cir. 2011).

Additionally, the Eighth Circuit has repeatedly found that excessive macing can by objectively unreasonable even when only *de minimus* injury occurred.  In May 2017, the Eighth Circuit held in *Tatum v. Robinson*, that it was unreasonable to use pepper spray for one second on a non-resisting, non-fleeing individual, suspected of a non-violent misdemeanor.  *Tatum v. Robinson,* 858 F.3d 544, 548-550 (8th Cir. 2017).  Even though Tatum was actively arguing with the officer when the officer deployed his pepper spray, the Eighth Circuit held that the use of pepper spray was unreasonable, because a reasonable officer would not have viewed the plaintiff as an immediate threat.  The Court emphasized that "even when officers are justified in using some force, they violate [the] suspects' Fourth Amendment rights if they use unreasonable amounts of force."  *Id.* at 550.  In *Johnson v. Carroll*, the Eighth Circuit found that it was clearly

9

established that "it was unlawful to throw to the ground and mace a nonviolent, suspected misdemeanant who was not fleeing or herself resisting arrest, who posed little or no threat to anyone's safety, [and] who never received verbal commands to remove herself...." *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011).  Additionally, in *Treats v. Morgan*, the Eighth Circuit held that the use of pepper spray in response to a non-recalcitrant incarcerated person constitutes an excessive use of force, whether or not the macing caused only *de minimus* injury.   308 F.3d 868, 872-73 (8th Cir. 2002).  *See also Bauer v. Norris*, 713 F.2d 408, 42 (8th Cir. 1983) ("The use of force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned."); *Krout v. Goemmer*, 83 F.3d 557, 566 (8th Cir. 2009) ("The use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable.").   Taken together these cases show that Plaintiffs' right to be free from excessive force in the alleged circumstances was clearly established.   Accordingly, Defendants are not presently entitled to qualified immunity on the excessive force claims.

## II.    1983 Municipal Liability

Section 1983 provides a remedy against any person who, under color of state law, deprives another of rights protected by the constitution." *Collins v. City of Harker Heights, Tex*., 503 U.S. 115, 120 (1992).  Section 1983 liability for a constitutional violation may attach to a municipality if the violation resulted from (1) an "official municipal policy," *Monell v. Dept. of Soc. Servs*., 436 U.S. 658, 691 (1978); (2) an unofficial "custom," *id*.; or (3) a deliberately indifferent failure to train or supervise, *see City of Canton v. Harris*, 489 U.S. 378, 389 (1989).  The Supreme Court has rejected any heightened pleading requirement for claims alleging municipal liability under § 1983. *Leatherman v. Tarrant Cty. Narcotics Intelligence & Coordination Unit*, 507 U.S. 163, 165-66 (1993).  To survive a motion to dismiss, a complaint need only allege facts sufficient "to draw

an inference that the conduct complained of resulted from an unconstitutional policy or custom." *Crumpley-Patterson v. Trinity Lutheran Hosp.*, 388 F.3d 588, 591 (8th Cir. 2004).

Policy and custom are not the same thing. "[A] 'policy' is an official policy, a deliberate choice of a guiding principle or procedure made by the municipal official who has final authority regarding such matters." *Corwin v. City of Independence, MO.*, 829 F.3d 695, 699-700 (8th Cir. 2015) (quoting *Mettler v. Whitledge,* 165 F.3d 1197, 1204 (8th Cir. 1999)). "Alternatively, a plaintiff may establish municipal liability through an unofficial custom of the municipality by demonstrating '(1) the existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees; (2) deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials . . .; and (3) that plaintiff was injured by acts pursuant to the governmental entity's custom.'" *Corwin*, 829 F.3d at 700 (quoting *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1160 (8th Cir. 2014). "*Monell*'s 'policy or custom' requirement applies in § 1983 cases irrespective of whether the relief sought is monetary or prospective." *Los Angeles Cty. v. Humphries*, 562 U.S. 29, 39 (2010).

Defendants argue that Counts Four and Six of the amended complaint must be dismissed because Plaintiffs have failed to show the existence of a widespread custom or policy condoning use of excessive macing or retaliatory water shut-offs. However, at this early stage of the proceedings, Plaintiffs need not "show" the existence of a widespread custom or policy, but need only make plausible allegations of the same. The amended complaint alleges numerous instances of excessive macing and water deprivation, and clearly alleges that the practices are widespread and customarily used as forms of punishment at the Justice Center. Plaintiffs allege months of routine uses of excessive force and water deprivation intended to inflict suffering on detainees in violation of the Fourteenth Amendment. The Court finds that Plaintiffs have pleaded facts sufficient to raise a reasonable expectation that discovery will reveal evidence to support their

claim of municipal liability under § 1983, which is all that is required at this early stage in the proceedings.  *See Fant v. The City of Ferguson*, No. 4:15-cv-00253-AGF, 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016) (citing *Johnson v. City of Philadelphia*, No. 13-cv-02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013) (city's policies and procedures, or lack thereof, are fact-sensitive issues that can be addressed in later proceedings)).

### III.  Official Capacity Claims Against Carson and Barnes

Finally, Defendants argue that Plaintiffs' claims against Defendant Acting Commissioner of Corrections Jeffrey Carson and Superintendent of the Justice Center Adrian Barnes, which are brought only in their official capacities, must dismissed as duplicative of Plaintiffs' claims against the City.  The Court agrees.

" 'A suit against a government officer in his official capacity is functionally equivalent to a suit against the employing governmental entity.' " *Bonenberger v. City of St. Louis*, 4:16CV00788 PLC, 2016 WL 5341113, at *2 (E.D. Mo. Sept. 23, 2016) (quoting *Veatch v. Bartels Lutheran Home,* 627 F.3d 1254, 1257 (8th Cir. 2010) (action under 42 U.S.C. § 1983).  *See also Robb v. Hungerbeeler*, 370 f.3d 735, 739 (8th Cir. 2004) ("Because the real party in interest in an official-capacity suit is the governmental entity and not the named official, and official-capacity suit is, in all respects other than name, to be treated as a suit against the entity.").  It is proper, then, for a court to dismiss, as duplicative or redundant, claims against an official sued in his official capacity that are also asserted against the official's governmental employer. *Id.; Artis v. Francis Howell North Band Booster Ass'n, Inc.,* 161 F.3d 1178, 1182, 1185 (8th Cir. 1998) (finding the district court correctly dismissed a claim under 42 U.S.C. § 1983 against a school official sued only in his official capacity, as redundant of a claim against the school district employing the official).

Because Plaintiffs' First Amended Complaint names Carson and Barnes in their official capacity only, the claims against them are treated as claims against the City, and the claims will be dismissed as redundant and duplicative of Plaintiffs' claims against the City.

## CONCLUSION

For the reasons set forth above,

**IT IS HEREBY ORDERED** that Defendants' motion to dismiss is **GRANTED** in part and **DENIED** in part.  (Doc. No. 24).

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss the official capacity claims against Defendants Adrian Barnes and Jeffrey Carson is **GRANTED**.

**IT IS FINALLY ORDERED** that Defendants' motion to dismiss is **DENIED** in all other respects.

Dated this 13th day of January, 2022.

/s/Jean C. Hamilton
JEAN C. HAMILTON
UNITED STATES DISTRICT JUDGE