# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DERRICK JONES, JEROME JONES, and DARNELL RUSAN | ) ) ) |
| Plaintiffs, | ) ) ) Cause No. 4:21-cv-600 |
| v. | ) ) |
| CITY OF ST. LOUIS *et al.*, | ) ) |
| Defendants. | ) |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' SECOND MOTION TO COMPEL

Come now Defendants and state their opposition to Plaintiffs' Second Motion to Compel:

**INTRODUCTION**

Plaintiffs have sued numerous corrections officers at the St. Louis City Justice Center (hereinafter "CJC" or "Justice Center") and the City of St. Louis, alleging instances of excessive force by pepper spray and punitive water deprivations as well as unofficial customs relating two both the excessive force and water deprivations. Yesterday, Plaintiffs additionally filed a motion for leave to amend their complaint a second time (ECF Doc. #70), adding a new plaintiff and substantially different claims against defendants, as well as a motion for class certification (ECF Doc. # 71).

Defendants have already explored their criticisms of the manner the case has been pled in their Motion to Sever and/or Bifurcate (ECF Doc. #48). Suffice it to say, Defendants find serious deficiencies in Plaintiffs' choice of combining varying and distinct involving individualized proof, and also that the *Monell* claims against the City should be bifurcated with a stay of discovery pending resolution of the individual claims, because they are derivative of the underlying claims of constitutional violations. While this is the Defendants' legal position with

respect to the form of case, which they have memorialized in their motions to date, Defendants have engaged in discovery to the degree required under the rules and remain willing to cooperate with Plaintiffs' requests to the same degree. Defendants submit that the confines of time and resources have borne on their ability to comply with Plaintiffs' voluminous discovery requests, and that both parties have had difficulty resolving their differences with respect to what they deem proportional to the needs of the case, but they are willing to give Plaintiffs the materials available to them and pertinent to the needs of the case (which as it stands now is comprised of seven distinct claims for relief, including two *Monell* claims (which Plaintiffs' maintain entitle them to broad and extensive discovery)).

 Defendants also caution the Court with respect to Plaintiffs' frequent mischaracterizations of statements made by defense counsel in conferences and over the telephone. Indeed, Plaintiffs themselves observe that defense counsel has engaged in meet and confer sessions, one of which took approximately two hours. See ECF Doc. #63, p. 3. Defense counsel have maintained a forthright and professional approach to communicating with plaintiffs' counsel, despite obvious differences of opinion with respect to discovery. Defendants also respectfully point out that their differences with Plaintiffs' counsel likely could have been resolved, had Plaintiffs' not filed their Motion to Compel after giving a seven-day ultimatum to defense counsel on February 9, 2022, and filing the Motion to Compel on February 17, 2022, despite assurances from defense counsel and agreement in amending the Case Management Order to account for delays, and also aware that both defense attorneys on the case were engaged in extensive trial preparation for different cases (one asbestos and one police brutality) set for jury trials during the last week of February and first week of March. (*Lohse*, 1822-CC11126; *Jones v. Buscemi, et al*. 4:17-cv-02875-SEP). One case settled on the eve of trial and the other

2

was tried to verdict over a period of four days in federal district court. Defendants' will not test the Court's patience by elaborating further on this issue, but will note the obvious fact that competing demands of litigation and trial often require considerable accommodation, flexibility and compromise when it comes to discovery productions and deadlines. Defendants will outline below the discovery they have provided to date, as well as additional materials they have compiled in anticipation of production that was halted by this Motion to Compel.

For these practical reasons, Plaintiffs' Motion to Compel should be denied, along with their request for attorney's fees. In lieu of granting the Motion to Compel, Defendants propose that this Court order the parties to confer face-to face in good faith, in accordance with Local Rule 3.04, in order to determine whether the records in Defendants' possession will satisfy their discovery demands. Defendants would be remiss though, if they did not point out to the Court that they are currently aware of a few types of material they feel strongly are not subject to disclosure, including corrections officers' personnel materials unrelated to issues of use of force or water shut offs, Division of Corrections use of force reports for more than a one year period, internal affairs investigations, and materials relating to criminal investigations.  Arguments in opposition to disclosure of these materials are included in this memorandum. These are the only areas of contention Defendants are aware of at this juncture.

**Relevant Discovery Background**

Defendants provided substantial documentation in their initial disclosures on October 5, 2021, as required by the Case Management Order then in place. Defendants also answered and produced materials in response to Plaintiffs' first and second requests for production on October 4, 2021 and October 22, 2021. Plaintiffs sent their Third Set of Requests for Production on October 29, 2021. Defendants responded on November 30, 2021, with numerous objections.

Plaintiffs' counsel and Defendants' counsel had a one hour phone call on December 9, 2021 to discuss these objections and other matters including Plaintiffs' First Set of Interrogatories, 30(b)(6) notice, John Doe 1, Plaintiffs' Second Set of Request for Production, and Plaintiffs' Third Set of Requests for Production. Defendants supplemented their response on January 13, 2022, to clarify their objections to Plaintiffs' bloated and confusing requests. Counsel for the defendants attempted to address their concerns with the third request for production during the December 9, 2021 phone call but was quickly brushed aside, insulted and no substantive conversation was possible.

Plaintiffs requested a second call on January 18, 2022 to discuss Defendants' objections with Plaintiffs' Third Request for Production, forty-nine days after Defendants' made their first objections. On January 21, 2022, counsel for the defendants had a two hour conversation with six representatives for the plaintiffs, going through the forty two requests in detail. This was the first significant conversation to address defendants' objections that were first lodged fifty two days prior to the call. Counsel for the defendants stated that if possible, Defendants would like thirty days to respond to their request. Plaintiffs filed this action twenty six days later. Defendants anticipated supplementing their response but instead are forced to deal with Plaintiff's latest delay with their filing of a second motion to compel. Prior to Plaintiffs' latest motion, Defendants consented to expanding the case management order to ensure that discovery issues would not hinder either party's ability to effectively litigate their case.

### Plaintiffs' Requests

Plaintiffs' Second Motion to Compel boils down to a request that Defendants' be ordered to respond to their third set of requests for production (consisting of 42 separate requests) with more substantial responses. Defendants point out that they are willing to respond with available

4

materials, but maintain their objections to the form of Plaintiffs' requests insofar as most of them are patently overbroad, vague, and redundant. See Ex. A, Def. Objections to PL Third Req. for Production. For instance, Plaintiffs' definition of the term, "Events", which touches on many of the requests, is so broad as to encompass almost every interaction between corrections officers and inmates and the Justice Center. Defendants also note that the clarity employed by Plaintiffs in identifying the records they seek for the Court in their Motion to Compel would have also been usefully employed in the requests themselves as they were served on Defendants. Plaintiffs omit the actual language of their requests for production which speaks for itself in terms of its overbreadth and disproportionality. See Ex. B., PL Third Req for Production.  In opposition to Plaintiffs' Second Motion to Compel, Defendants submit that they have already produced a significant amount of records evidencing their willingness to participate in reasonable discovery. To date, Defendants have produced the following materials:

| Date of Production | Materials Produced |
| --- | --- |
| October 5, 2021 | CJC Rosters 12/1/20 to 12/31/20 |
| October 5, 2021 | Derrick Jones Use of Force Report 12/14/20 |
| October 5, 2021 | Jerome Jones Use of Force Report 2/9/21 |
| October 5, 2021 | Darnell Rusan Use of Force Report 2/3/21 |
| October 5, 2021 | Darnell Rusan Use of Force Report 12/19/20 |
| October 5, 2021 | Employee List (Redacted) 10/28/20 to 5/28/21 |
| October 5, 2021 | Derrick Jones Medical Records |
| October 5, 2021 | Jerome Jones Medical Records |
| October 5, 2021 | Darnell Rusan Medical Records |
| October 5, 2021 | Darnell Rusan Long Profile |
| October 5, 2021 | Derrick Jones Long Profile |

5

| October 5, 2021 | Jerome Jones Long Profile |
| --- | --- |
| October 5, 2021 | Flooding Incident Reports 1 of 7 |
| October 5, 2021 | Flooding Incident Reports 2 of 7 |
| October 5, 2021 | Flooding Incident Reports 3 of 7 |
| October 5, 2021 | Flooding Incident Reports 4 of 7 |
| October 5, 2021 | Flooding Incident Reports 5 of 7 |
| October 5, 2021 | Flooding Incident Reports 6 of 7 |
| October 5, 2021 | Flooding Incident Reports 7 of 7 |
| October 5, 2021 | Video Derrick Jones Assault on Sherry Richards |
| October 5, 2021 | Video Dayroom 4A – inmate Darnell Rusan |
| October 5, 2021 | Video Dayroom 4A Officer Lewis Use of Force |
| October 5, 2021 | Video 4A West Lt. Turner Officer M. Lewis Injury Report |
| January 12, 2021 | Video POD 3-N Use of Force Jones 12/7/21 |
| January 12, 2021 | Video POD Hallway End N Use of Force Jones 12/7/21 |
| January 12, 2021 | Incident Report Derrick Jones 12/7/21 |
| January 13, 2021 | May 18, 21 Safety Supply Update |
| January 13, 2021 | Pepper Spray Vouchers |

Defendants are willing and able to produce the following additional materials:

1. CJC Maintenance Orders February 2021
2. CJC Maintenance Orders March 2021
3. CJC Maintenance Orders Plumbing March 2021
4. Derrick Jones IRRs
5. Derrick Jones Use of Force Report 12/7/21
6. Duty Officer Log September 1, 2020 to January 3, 2021
7. July 2021 Maintenance Report – CJC
8. Maintenance Orders for CJC February 5- February 10, 2021
9. Maintenance Work Orders June 2021
10. Maintenance Work Orders CJC August 2021
11. Maintenance Work Orders April 2021
12. CJC Roster February 1, 2021 to February 28, 2021
13. Javan Fowlkes Training Record

6

14. Michelle Lewis Training Record
15. Aisha Turner Training Record
16. OC Spray Lesson Plan
17. OC Spray PowerPoint
18. Emails relating to named Plaintiffs

As evidenced by the lists included above, Defendants are open to producing extensive materials. However, the language used in the Plaintiffs' requests themselves was often verbose, incomprehensible, or all-encompassing. This language necessitated Defendants objections and probably belabored the discovery process.

## Areas of Opposition

Despite their willingness to engage in extensive discovery, Defendants are aware of the following areas of contention and present arguments in opposition to the disclosure of related records:

1. Personnel/disciplinary records that do not relate to uses of force or water shut-offs;

2. Internal Affairs materials not clearly related to the allegations of the complaint;

3. Materials related to criminal investigations which involved all CJC employees over a period of 5 years; and

4. Use of Force reports beyond one year.

**Personnel materials and Internal Affairs materials[1]**: With respect to Plaintiffs' requests for materials relating to officers' personnel and disciplinary histories as well as their extremely extensive request for internal affairs investigation materials spanning a period of five

---

[1] Defendants combine these two areas of materials in one argument as internal affairs records are generally considered to constitute personnel records. *See Laut v. City of Arnold*, 417 S.W.3d 315, 322 (Mo. App. 2013)"):

7

years, Defendants submit that only those materials that are directly related to the three named individual plaintiffs' claims for excessive force and water deprivation are discoverable. See *Session v. Rodriguez*, No. 3:03-cv-00943 (AWT), 2008 U.S. Dist. LEXIS 43761, 2008 WL 2338123, at *2 (D. Conn. June 4, 2008)(In a Section 1983 case against a police officer, "police internal investigations files are discoverable when they involve allegations of similar misconduct"); *Whitley v. McClain*, 2014 WL 1400178, at *3 (E.D. Mo. Apr. 10, 2014)( The Court found that the request for seven years' worth of personnel materials was overbroad and instead ordered defendant to produce portions of the personnel files that were "relevant to plaintiff's claims, including any portion relating to alleged misconduct or discipline for misconduct similar to that alleged in the complaint"). Personnel and internal affairs materials are discoverable only to the extent they relate to Plaintiff's claims of mistreatment, or similar instances of alleged mistreatment. Additionally, the scope should be limited to the relevant riot-ridden, pandemic period at issue in Plaintiffs' complaint (approx. December 2019 - December 2020).

      Plaintiffs have presented their own distinct claims for relief based on entirely different surrounding circumstances and actors. Additionally, the three named plaintiffs were confined during a period of unrest, riots and pandemic. At least one of the named plaintiffs has been charged with felony assault on female corrections officers he accuses of using excessive force against him. *See State v. Rusan*, Cause No. 2122-CR00762, pending in the 22nd Judicial Circuit, State of Missouri. The uniqueness of each of Plaintiffs' claims is apparent from the face of the First Amended Complaint, and the breadth of the discovery requests served on Defendants is not commensurate with the alleged claims. Though willing to cooperate, Defendants maintain that they are not obligated to disclose all personnel materials for the named defendants and officer-

witnesses in addition to any other CJC employee who has been involved in uses of force. Instead, Defendants have provided all use-of-force reports for the events at issue. There are no disciplinary records in the named defendants' files which relate to the uses of force at issue, or similar uses of force. Plaintiffs' request that Defendants be compelled to produce personnel records and internal affairs documentation should be denied as it is currently set forth.

**Materials that relate to criminal investigations**: Plaintiffs seek all documents or media of all criminal investigations conducted by law enforcement agencies, concerning any of the Defendants or CJC employees, officers or agents, limited to a five-year period. Defendants admit that they do not fully comprehend what is contemplated by this request, but they are certainly unable to provide materials that are the subject of pending criminal investigations (which include the repeated riots, assaults on corrections officers, and attacks on inmates by other inmates). The Division of Corrections is not a law enforcement agency with the authority to investigate criminal activity; it merely cooperates with or provides assistance to the police department or prosecutor if necessary. To the extent Corrections has provided such cooperation, any materials compiled and conveyed to law enforcement should be considered non-discoverable as they related to ongoing criminal investigations and potential prosecutions. To the extent the City is obliged to provide records on behalf of the St. Louis Metropolitan Police Department, the requested materials are protected from disclosure under the Missouri Sunshine Law, and not subject to disclosure under the proportionality standard of Fed. R. Civ. P. 26.

There is a policy in Missouri of closing records that would potentially endanger witnesses or jeopardize a criminal prosecution. Such policy should be considered by the Court in reviewing Plaintiffs' request for criminal investigation materials. Mo. Rev. Stat. 610.100.3 provides:

> "if any portion of a record or document of a law enforcement officer or agency, other than an arrest report, which would otherwise be open, contains information that is

9

> reasonably likely to pose a clear and present danger to the safety of any victim, witness, undercover officer, or other person; or jeopardize a criminal investigation, including records which would disclose the identity of a source wishing to remain confidential or a suspect not in custody; or which would disclose techniques, procedures or guidelines for law enforcement investigations or prosecutions, that portion of the record shall be closed…"

This Court should acknowledge that Plaintiffs' request contemplates materials relating to ongoing criminal investigations and prosecutions. The City has serious concerns about the safety of its corrections officers, the majority of whom are female, as these officers frequently endure harassment, threats to themselves and their families, and even physical abuse at the hands of inmates in the course of their performing their duties. Providing Plaintiffs with materials relating to "all criminal investigations conducted by law enforcement agencies, concerning any of the Defendants or CJC employees, officers or agents, limited to a five year period" poses a risk of endangering victims, witnesses and potentially impairing criminal prosecutions.

Additionally, materials related to "all criminal investigations "involving any employee of CJC" over a five year period is burdensome and not proportional to the needs of the case. In order to satisfy this request, the Police Department would be required to do a search for each and every CJC employee employed during the last five years to ascertain his or her involvement or lack thereof in any criminal investigations over the course of five years, review any yielded incident report materials to ascertain the level of involvement, and appropriately redact the materials before conveying them. Without venturing suggest exactly how much time and resources would be consumed by such an undertaking, Defendants submit that it would be extensive and this request should be limited. *See Vallejo v. Amgen, Inc.*, 903 F.3d 733, 747 (8th Cir. 2018)(*quoting Onwuka v. Fed. Express Corp.*, 178 F.R.D. 508, 516 (D. Minn. 1997))(affirming district court ruling limiting discovery based on proportionality concerns, finding that "The [] [Rule 26] factors are not talismanic. Rather, they are to be applied in a

10

common sense, and practical manner"). Plaintiffs' claims are brought pursuant to 18 U.S.C. 1983, alleging unconstitutional uses of force by specific officers and conditions of confinement in the form of punitive water deprivation occurring during a specific time of pandemic unrest in the jail. Requiring the production of such extensive and protected materials would be exceptionally burdensome, potentially impair prosecutions, potentially endanger and harass corrections officer victims and witnesses, and would be disproportionate to the needs of this case as alleged in the first amended complaint and the burden and expense outweighs any likely benefit.

To the extent Plaintiffs seek police reports and materials regarding their own criminal prosecutions in which they are represented by separate counsel, they are entitled to these under the Missouri Rules of Criminal discovery, and may request them through criminal discovery if they have not yet been disclosed. See Mo.Sup.Ct.R. 25.01, *et seq*.

**Material related to use of force reports:** Plaintiffs seek, "any and all use of force reports completed by CJC staff from 2011 to the present that relate to the use of chemical agents at CJC." Plaintiffs state that they later offered to limit the scope to 2016 to present, however that is not reflected in their amended Third Set of Requests for Production. Defendants appropriately objected in their First Supplemented Response that the scope of the request is grossly disproportionate to the needs of the case, is burdensome, and impermissibly vague. Plaintiffs' First Amended Complaint states that Plaintiff Derrick Jones has been in custody since November 3, 2020. (ECF Doc. 22 ¶16). Plaintiff Jerome Jones spent over two years in custody prior to trial at CJC. *Id* at ¶29. Plaintiff Darnell Rusan has been in custody at CJC since Thanksgiving of 2020. *Id* at ¶43. Plaintiff Jerome Jones was arrested on December 6, 2018. Defendants have already provided each Plaintiffs' long profile and use of force reports.

11

In *Qandah v. St. Charles City*, Judge Hamilton stated, "Plaintiff Smith has specifically alleged battery and excessive use of force against Defendant Gillett and deprivation of medical care against Defendant Graebner, in addition to municipal liability claims arising from these occurrences. Therefore, the Use of Force Reports regarding Defendant Gillett, Defendant Graebner, and other correctional officers during the time of Plaintiff Smiths detention are discoverable." *Qandah v. St. Charles Cty.*, No. 4:18-CV-171 JCH, 2020 U.S. Dist. LEXIS 5148 (E.D. Mo. Jan. 13, 2020). Here, Plaintiffs have asked for every use of force report for eleven years. Plaintiffs, at most, have been confined at CJC since December 2018. Additionally, Defendants have already provided all use of force reports involving the named Plaintiffs. Plaintiffs also secured use of force reports, through an open records request, from October 2020 through April 30, 2021. The request for seven months of use of force reports took multiple months for staff to compile over two thousand pages of documentation. Plaintiffs' refusal to limit the scope to the relevant times of their detention or to specific officers is impermissibly vague and would require significant staff time and resources, as stated in Defendants' response and subsequent conversations.

## Sanctions

Plaintiffs, in their motion, cite Rule 37(a)(5) in their request for attorney's fees related to the filing of their motion to compel. Rule 37(a)(5), states in part,

> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Defendants do not dispute both Plaintiffs and Defendants have made attempts to work in good faith to resolve the discovery dispute. However, Plaintiffs' refusal to change or amend their

12

discovery request, despite Defendants' repeated raised concerns, is the true cause of the delay in disclosure. Second, the Defendants' objections are justified. Plaintiffs' Third Set of Request for Production is confusing, impermissibly vague, and overly broad by design so as to assist Plaintiff in their fishing expedition.

As referenced above, Defendants have provided significant discovery in this matter and were in the process of a second supplemental disclosure of more documentation prior to Plaintiffs filing their latest motion. In addition to working with Plaintiffs, Defendants agreed just days prior to the filing of the present motion to amend the Case Management Order to extend the discovery deadline, with the understanding that additional time would allow parties to resolve our current differences. Awarding Plaintiffs' attorney fees would be unjust, in light of Defendants continued attempts to comply with the rules.

## Conclusion

Plaintiffs have asked that this Court comb through their Third Requests for Production so as to order Defendants to produce responsive documents. Defendants appreciate that this is no easy task. They too have struggled to understand the requests and come to an understanding with Plaintiff regarding what materials exist, what materials do not exist, and what materials are not discoverable under the Rules. During this process, Defendants produced extensive materials and are willing to produce even more. The requests, as worded, are largely impermissibly vague and not proportional to the needs of the case, especially when they request documents over a 5-7-year period. For this reason, Defendants lodged objections but continued to engage in meet and confer session with Plaintiffs to work out their differences. Because Defendants have manifested their willingness to cooperate and produce documents, Plaintiffs' Second Motion to Compel should be denied as to the majority of their requests. With respect to their requests for several years' worth

13

of personnel files, internal affairs investigations, criminal investigation materials and use of force reports containing no limitations as to substance or relevance, Plaintiffs' motion should also be denied for the reasons argued above. Defendants submit that in lieu of granting Plaintiff's motion, the Court order the parties to meet and confer in person to discuss the universe of available materials and settle on realistic production goals.

Respectfully submitted,<br>
Sheena Hamilton,<br>
CITY COUNSELOR

By:  /s/ Adriano Martinez #69214

Assistant City Counselor<br>
Catherine Dierker #70025<br>
Assistant City Counselor<br>
1200 Market Street<br>
City Hall Room 314<br>
St. Louis, Missouri 63103<br>
Phone: 314-622-3786<br>
Fax: 314-622-4956<br>
DierkerC@stlouis-mo.gov<br>
MartinezA@stlouis-mo.gov