UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| Derrick Jones et al.<br><br>PLAINTIFFS,<br><br>v.<br><br>City of St. Louis, et al.,<br><br>DEFENDANTS. | Cause No. 4:21-cv-600-HEA |

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFF'S MOTION FOR CLASS CERTIFICATION

COMES NOW Defendants City of St. Louis, Fowlkes, Turner, Alexander, and Borders ("Defendants"), by and through their attorney, Assistant City Counselor Adriano Martinez, and for Defendants' Response to Plaintiffs'' Motion for Class Certification states as follows:

### INTRODUCTION

On May 24, 2021 plaintiffs Jerome Jones, Derrick Jones, and Darnell Rusan filed a complaint against the City of St. Louis and a number of City of St. Louis Corrections employees for alleged violations of plaintiffs' civil rights. Over the course of a year, plaintiffs have amended their compliant twice. Defendants have provided significant discovery. Plaintiffs' second amended complaint moved to include a fourth plaintiff, Marrell Withers, five new counts, including the addition of three class related counts. On March 15, 2022, plaintiffs filed a motion to certify a class in relation to their Second Amended Complaint. (Doc. 71). Plaintiffs Derrick Jones, Darnell Rusan, and Marrell Withers ask this Court to certify them as class representatives in this action. The three class counts seek injunctive relief requesting an order against the City prohibiting the unconstitutional use of chemical agents, prohibiting the unconstitutional use of

1

chemical agents against detainees with disabilities absent of a reasonable accommodation, and prohibiting the unconstitutional practice of water shut-offs as punishment going forward. (Doc 105 after ¶192, ¶208, and ¶230).

The Court should deny Plaintiffs' motion for class certification because Plaintiffs cannot satisfy the requirements for certification under Rule 23(a)(2-4), Plaintiffs proposed class and subclass fails to satisfy all applicable Rule 23(b) requirements, and Plaintiffs lack standing. Plaintiffs' motion for class certification should be denied in its entirety.

## LEGAL STANDARD

A class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700- 701 (1979). Class certification is governed by Federal Rule of Civil Procedure 23. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 2548 (2011). Under Rule 23(a), the party seeking certification must demonstrate, first, that "(1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345, 131 S. Ct. 2541, 2548 (2011). "To be certified as a class, plaintiffs must meet all of the requirements of Rule 23(a) and must satisfy one of the three subsections of Rule 23(b)." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018) (quoting *In re St. Jude Med., Inc.*, 425 F.3d 1116, 1119 (8th Cir. 2005)

The proponent of class certification must also "satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Id*. In cases such as this, where certification is sought under Rule 23(b)(2), the proponent of certification must show a level of class cohesiveness "more

stringent than the predominance and superiority requirements for maintaining a class action under Rule 23(b)(3)." *Ebert v. General Mills, Inc.*, 823 F.3d 472, 480 (8th Cir. 2016). This is "[b]ecause a (b)(2) class is mandatory, [and] the rule provides no opportunity for (b)(2) class members to opt out, and does not oblige the district court to afford them notice of the action." *Id*.

## ARGUMENT

### I. PLAINTIFFS FAIL TO SATISFY THE COMMONALITY, TYPICALITY, AND ADEQUACY REQUIREMENTS OF RULE 23(a)(2-4).

#### A. Commonality

Members of Plaintiffs' putative class have different claims and different injuries, all involving critically different circumstances, and all of which necessitate separate, individualized inquiries and adjudication. Thus, like in the seminal Supreme Court case of *Wal-Mart Stores, Inc. v. Dukes*, Plaintiffs cannot possibly satisfy the commonality, typicality, and adequacy requirements of Rule 23(a)(2-4).

In *Wal-Mart*, several current and former female employees of Wal-Mart alleged they had been discriminated against in violation of Title VII of the Civil Rights Act of 1964 with respect to pay and promotion decisions. *Wal-Mart*, 564 U.S at 342. The specific circumstances surrounding each woman's employment differed somewhat, but they all generally alleged that Wal-Mart engaged in a pattern and practice of discrimination against women and that, as a result of this pattern and practice, they were denied advancement and discriminated against in violation of Title VII. *Id*. at 344-46. The named plaintiffs did not allege Wal-Mart had any express corporate policy against the advancement of women, and instead alleged that there was a strong and uniform corporate culture permitting bias against women, that the uniform corporate culture resulted in an unlawful disparate impact on female employees, that Wal-Mart was aware of this effect, and refused to remedy it. *Id*. at 345. The named plaintiffs claimed that the discrimination

3

resulting from Wal-Mart's indifference to its pattern and practice was common to all Wal-Mart's female employees, and sought to litigate the Title VII claims of all female employees in a single class action. *Id*. at 345. In an apparent attempt to avoid the procedural protections and stringent requirements of Rule 23(b)(3), which they could not possibly meet, the putative class complaint sought only injunctive and declaratory relief, punitive damages, and backpay, but did not ask for compensatory damages. *Id*. at 345.[1]

The District Court certified a plaintiff class consisting of "[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998 who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." *Id*. at 346. A divided Court of Appeals affirmed class certification, concluding that the named plaintiffs "evidence of commonality was sufficient to 'raise the common question whether Wal-Mart's female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts) that may have worked to unlawfully discriminate against them in violation of Title VII.'" *Id*. at 347 (quoting *Dukes v. Wal-Mart Stores, Inc.*, 603 F.3d 571, 612 (9th Cir. 2010)). The Supreme Court reversed.

In reversing, the Supreme Court held that the commonality requirement of Rule 23(a)(2) was not satisfied. *Id*. at 349. The Court noted that of Rule 23(a)(2) which is "easy to misread" because any competently drafted class complaint raises common questions. *Id*. The Court held that the commonality requirement was not met because, although the named Plaintiffs were all denied advancement in alleged violation of Title VII, the named plaintiffs failed "to demonstrate that the class members 'have suffered the same injury.'" *Id*. at 350 (citing *Gen. Tel. Co. of the Sw. v. Falcon*, 457 U.S. 147, 157 (1982)). Critically, the Court held that "suffering the same

---

[1] Here, Plaintiffs do seek compensatory damages.

4

injury does not mean merely that they have all suffered a violation of the same provision of law." *Id*. at 350. It explained that, "[q]uite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe that all their claims can productively be litigated at once." *Id*. Instead, the commonality prerequisite of Rule 23(a) requires that all of the putative class members' claims "depend on a common contention," the nature of which "is capable of a class-wide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Id*. at 350.

Here, *Wal-Mart* is dispositive of Plaintiffs' plea to litigate hundreds of distinct § 1983 cases, involving different claims, critically different circumstances, and different injuries, in one untenable class action premised only upon Plaintiffs' vague contention that prospective class members are "subjected to the violent and systemic use of excessive chemical agents and water shut-offs" at CJC, to which the proceeding facts vary dramatically. (Doc. 105 at 1). Plaintiffs generally assert that they and "all people who are now or will be detained by Defendants at the City Justice Center in St. Louis, Mo. All, of more that 500 people in this class, are subject to two common customs or practice: a) excessive or indiscriminate use of chemical agents; and b) punitive deprivation of water. (Doc. 71 at 1). However, this is not the case. Plaintiffs make sweeping, conclusionary statements that every detainee of CJC is exposed to mace or has their water turned off for absolutely no reason. This is not true. Plaintiffs provided thirty-eight declarations, each with a different set of facts and actors. The declarations include stories of officers using mace after they are being attacked, using mace to separate fighting detainees, or using mace after detainees are deliberately destroying property or causing flooding. As evident by Plaintiffs' own declarations, each use of mace or each time water is turned off in a cell has a

5

significant factual basis that must be explored independently and would be impossible to resolve with a class wide resolution, as required by the Court's decision in *Wal-Mart*.

"Liability for damages for a federal constitutional tort is personal, so each defendant's conduct must be independently assessed." *Faulk v. Leyshock, et al*, 21-1116, April 6, 2021 (8th Cir. 2021)(citing *Wilson v. Northcutt*, 441 F.3d 586, 591 (8th Cir. 2006) and *Roberts v. City of Omaha*, 723 F.3d 966, 974-75 (8th Cir. 2013)). Additionally, claims of unconstitutionally excessive force and unconstitutional conditions of confinement against individual defendants require an exacting, thorough and fact-specific inquiry. Such need for an independent assessment of each defendant's conduct, along with the need for individualized proof dictated by the pertinent constitutional standards, shows that Plaintiffs' proposed class is untenable and allowing such class will prejudice the individual defendants. A claim of excessive force by pretrial detainees under the Fourteenth Amendment is governed by the same standard governing excessive force claims under the Fourth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015). The analysis employed by the court looks at whether the force used by an officer is unreasonable under the unique circumstances presented:

> "A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. . . A court must also account for the 'legitimate interests that stem from [the government's] need to manage the facility in which the individual is detained,' appropriately deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Id* at 397, quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547, 99 S. Ct. 1861, 60 L. Ed. 2d 447 (1979).

The excessive force inquiry is particularly fact intensive:

Considerations such as the following may bear on the reasonableness or unreasonableness of the force used: the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was

actively resisting. We do not consider this list to be exclusive. We mention these factors only to illustrate the types of objective circumstances potentially relevant to a determination of excessive force. *Kingsley v. Hendrickson*, 576 U.S. 389, 397 (2015)(citing *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

Each and every one of Plaintiffs' claims must be analyzed under this standard. Additionally, each and every one of Plaintiffs' putative class member's experience of alleged excessive force must be analyzed under this standard (making this case particularly unsuitable for a class action). A review of relevant cases involving the use of pepper spray in a correctional facility reveals the sort of fact-intensive review that must be undergone in determining the constitutionality of the use of force as well as the question of whether an officer is entitled to qualified immunity. *See e.g., Martz v. Barnes*, 787 Fed. Appx. 356 (8th Cir. 2019); *Ward v. Smith*, #15-2583, 844 F.3d 717 (8th Cir. 2016); *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014); *Santiago v. Blair*, 707 F.3d 984 (8th Cir. 2013); *Johnson v. Blaukat*, 453 F.3d 1108 (8th Cir. 2006); *Henderson v. Munn*, 439 F.3d 497 (8th Cir. 2006); *Treats v. Morgan*, 308 F.3d 868 (8th Cir. 2002); *Lawrence v. Bowersox*, 297 F.3d 727 (8th Cir. 2002); *Foulk v. Charrier*, 262 F.3d 687 (8th Cir. 2001) ; *Jones v. Shields*, 207 F.3d 491 (8th Cir. 2000); *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996). As the constitutional standard for excessive force against a pretrial detainee requires the most exacting, specific and individualized inquiry, and the *Monell* claims depend on the existence of an underlying constitutional inquiry, Plaintiffs' claims for class-wide relief on excessive force claims are unsuitable for class-wide relief.

The claims regarding water deprivation also require individualized proof. Because pretrial detainees are entitled to at least as great protection as that afforded convicted prisoners under the Eighth Amendment, *Pietrafeso v. Lawrence County*, 452 F.3d 978, 982 (8th Cir. 2006); *Crow v. Montgomery*, 403 F.3d 598, 601 (8th Cir. 2005)(citations omitted), the relevant constitutional standard on the water deprivation claims is deliberate indifference, specifically

7

whether (1) the conditions of confinement posed a substantial risk of serious harm, and (2) the defendants actually knew of but disregarded, or were deliberately indifferent to, the plaintiffs' health or safety." *Beaulieu v. Ludeman*, 690 F.3d 1017, 1045 (8th Cir. 2012)(internal citations omitted). "To define deliberate indifference for these purposes, the Supreme Court has adopted the criminal law subjective standard of recklessness - the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Moore v. Briggs*, 381 F.3d 771, 773-74 (8th Cir. 2004), quoting *Farmer v. Brennan*, 511 U.S. 825, 837. Additionally, in such claims, the totality of the circumstances is examined when analyzing the conditions of confinement. *Morris v. Zefferi*, 601 F.3d 805, 810 (8th Cir. 2012)(citation omitted).

Like the claims regarding excessive force, Plaintiffs' claims regarding water shut-offs are subject to a highly individualized inquiry. Such individualized inquiry is even more fact intensive because it involves a subjective component: the individually named corrections officer defendants must have possessed a specific intent to deprive Plaintiffs of water, knowing that this presented a grave risk to their health and safety. Plaintiffs' class-wide claims for relief from supposed unconstitutional water deprivations requires establishing an unconstitutional condition of confinement in the form of water deprivation requires individualized proof. The need for such individualized proof on each and every claim of water deprivation is incongruous with the requirements of Rule 23 governing actions for class-wide relief. The need for individualized proof additionally cuts against any argument that the claims as alleged in the proposed Second Amended Complaint are properly joined.

Claims for excessive force, unconstitutional conditions of confinement in the form of sporadic water shut-offs, and failure to make a reasonable accommodation under the ADA

during a legitimate use of force on an inmate, as alleged in the Second Amended Complaint are unsuitable for class-action adjudication and cannot satisfy the threshold requirements of Rule 23. Defendants again refer the Court to Judge Fleissig's opinion on the challenging issue the requirements of commonality (23(a)(2)) and predominance (23(b)(3)) in a similar context. Judge Fleissig writes that inquiries into these issues consider "'whether the common, aggregation-enabling, issues in the case are more prevalent or important than the non-common, aggregation-defeating, individual issues. An individual question is one where members of a proposed class will need to present evidence that varies from member to member, while a common question is one where the same evidence will suffice for each member to make a prima facie showing or the issue is susceptible to generalized, class-wide proof." *Cody,* No. 4:17-CV-2707 AGF, 2021 U.S. Dist. LEXIS 195674, at *(citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453, 136 S. Ct. 1036, 194 L. Ed. 2d 124 (2016) (quoting 2 W. Rubenstein, Newberg on Class Actions § 4:49, pp. 195-96 (5th ed. 2012)); *Johannessohn v. Polaris Indus. Inc.*, 9 F.4th 981, 984-85 (8th Cir. 2021) (internal quotation marks omitted). The standard for constitutionally excessive force and deliberate indifference make clear that in the contexts framed by Plaintiffs' allegations, individual questions are more prevalent than common issues. One need only compare and contrast the allegations of Derrick Jones, Darnell Rusan and Marrell Withers to see the obvious diversity of circumstances presented by each and every plaintiff and putative class member's experiences. Such diversity of circumstances subject to the individualized review Defendants are entitled to shows that the putative class allegations cannot satisfy the commonality requirement of Rule 23

    **B.**    **Typicality**

In order to be certified, Plaintiffs must show that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. Pro. 23(a)(3). "The commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence." *Falcon*, 457 U.S. at 157 n.13.

Plaintiffs in this case cannot show that any of their claims or defenses are typical of each other or members of the proposed class, and they have failed to identify a single question that is common to all four named Plaintiffs. Plaintiffs state that they satisfy typicality by, "the named Plaintiffs, like all members of the proposed class, are incarcerated at CJC. The named Plaintiffs, like all members of the proposed class, are subject to Defendants same pattern and practice of using excessive force through deployment of chemical agents without sufficient warning or justification and punitive water shut-offs." (Doc 72-1 at 15). Plaintiffs' complaint alleges that mace was used on the three proposed class members, however they casually omit the facts and circumstances surrounding the mace. Plaintiffs would have the Court believe that they were maced without provocation or warning and not afforded access to water, however, the video evidence collected, showing three of the four incidents alleged by Plaintiffs, show completely different stories.

To determine whether common questions predominate, a court must conduct a limited preliminary inquiry, looking behind the pleadings. *Blades v. Monsanto Co.,* 400 F.3d 562, 566 (8th Cir. 2005) *General Tel.* Co. of Southwest v. Falcon, 457 U.S. 147, 160, 72 L. Ed. 2d 740, 102 S. Ct. 2364 (1982). Defendants have participated in significant discovery prior to Plaintiffs'

10

filing their Motion for Class Certification. Defendants provided a surveillance video showing the alleged incident on December 14, 2020 involving Derrick Jones. Derrick Jones was instructed to return to his cell multiple times, crossed behind the correctional officer's podium in a restricted area, and correctional officers attempted to negotiate with Derrick Jones for multiple minutes to have him return to his cell. In that time, the entire housing unit was "locked down" while correctional officers attempted to resolve Mr. Jones' refusal to follow directives in the maximum security facility. Seven additional correctional officers can be seen in the video, responded to assist, and only after that time did a correctional officer finally resort to the minimum use of force of deploying mace. Immediately after Derrick Jones was maced he attacked Sherry Richards, punching her in the head and taking her to the ground. (Exhibit A). It was Mr. Jones' attack that necessitated additional uses of mace and officers attempt to physically retrain Mr. Jones. After Mr. Jones is restrained he is taken to medical to be evaluated.

Similarly, Defendants provided video surveillance of Darnell Rusan's assault of Aisha Turner and Michelle Lewis. Darnell Rusan was out of his cell when he was not permitted to be out of his cell, on video it is clearly audible that he was instructed to lock down approximately nine times, and only after threatening Lt. Turner was mace used. After mace was initially used, Mr. Rusan used multiple chairs to strike Lt. Turner and CO Lewis and then savagely beat CO Lewis. (Exhibit B). Plaintiffs have amended their complaint to completely omit these facts and dismiss CO Lewis as a defendant after being provided definitive proof that their initial complaint was factually incorrect. Darnell Rusan is currently awaiting trial in relation to his assault on Lt. Turner and CO Lewis. Cause No. 2122-CR00762-01 (22nd Cir. Mo.).

The facts and evidence show that Marrell Wither's claim are also not typical of the proposed class claims. Plaintiffs allege that Mr. Withers was simply protesting being moved to a

11

unit for individuals who had either tested positive for Covid-19 or were showing symptoms of the virus and because of his protest he was maced. That is again inconsistent with the video evidence provided to the Plaintiffs. The video shows Mr. Withers threatening to destroy property and yelling at corrections officers. The surveillance video also clearly refutes that Mr. Withers "begged them not to mace him," as stated in Plaintiffs' Complaint. (Doc. 105 ¶68). Instead, Mr. Withers clearly states that he is not going anywhere and that officers will have to "spray him." After the first spray has little to no effect, Mr. Withers can be clearly heard saying, "spray it again, I ain't going nowhere." (Exhibit C). After Mr. Withers is sprayed a second time he is escorted to medical and is promptly seen by medical staff. The evidence clearly refutes Plaintiffs contention that their experiences are typical of Plaintiffs' class claims. Instead, the evidence supports that each incident requires its own fact intensive inquiry. Therefore, Plaintiffs fail to show that their claims are typical of their proposed class claim.

      **C.**    **Adequacy**

Adequacy of representation also cannot be satisfied due to the uniqueness of each individual claim of excessive force alleged by the putative class representatives: Marrell Withers, Darnell Rusan and Derrick Jones. Each one of these individuals alleges he experienced a use of force and/or water shut-off which must be subject to an exacting, individualized, and circumstantial constitutional review. Two of these putative class representatives struck female corrections officers in the course of the alleged unconstitutional use of force, and one is being criminally prosecuted for his conduct during the allegedly unconstitutional use of force. *See* Ex. A, Ex. B., Cause no. 2122-CR00762-01 (22nd Cir. Mo.). Defendants anticipate that this pending criminal proceeding will complicate discovery surrounding Darnell Rusan's claims, and it is apparent that both his and Derrick Jones' claims of constitutional violation will be extremely

12

difficult to prove. Additionally, Plaintiffs have already invoked their Fifth Amendment right against self-incrimination in Defendants' First Set of Interrogatories. (See Exhibit D). Plaintiffs' refusal to answer basic questions, relevant to their time at CJC and the allegations that they have made, have impaired Defendants ability to defend themselves. These individuals are not adequate representatives for a class action, as they cannot fairly and adequately protect the interests of the class. Rule 23(a)(4); *see also Amchem Prods. v. Windsor*, 521 U.S. 591, 613 (1997). Plaintiffs will protect their interest in their criminal cases over the interests of the proposed class.

## II.  PLAINTIFFS' PROPOSED CLASS AND SUBCLASS FAILS TO SATISFY ALL APPLICABLE RULE 23(b) REQUIREMENTS.

### A. Plaintiffs' fail to satisfy Rule 23(b)(1)(a)

Rule 23(b)(1)(A) states, "A class action may be maintained if Rule 23(a) is satisfied and if: (1) prosecuting separate actions by or against individual class members would create a risk of: (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Plaintiffs fail to show any reason how adjudicating individual claims would create incompatible standards of conduct on Defendant. Instead, they make a conclusionary statement that, "litigating the class members' claims individually would present a risk of varying outcomes in what standards of conduct should apply when deploying chemical agents against detainees at CJC…" (Doc. 72-1 at 23).

Plaintiffs have provided no evidence that this Court can rely upon to support their statement. In fact, evidence provided to this Court by Defendants show that each and every circumstance alleged by Plaintiffs is factually different from their co-plaintiffs and are atypical

13

of their proposed class members. It would be impossible that "determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke" as required by the Court in *Wal-Mart*. *Wal-Mart*, 564 U.S at 350.

**B. Plaintiffs' class is insufficiently cohesive to be certified under Rule 23(b)(2).**

Plaintiffs fail to show, "Defendants acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). Instead, Plaintiffs make conclusionary statements that Defendants use excessive mace and water shut-offs without anything to support their claims. Plaintiffs have been provided fourteen videos related to their named Plaintiffs but clearly they do not wish to show the Court that the evidence clearly supports a different story than their complaint.

"Although a Rule 23(b)(2) class need not meet the additional predominance and superiority requirements of Rule 23(b)(3), 'it is well established that the class claims must be cohesive.'" *Ebert*, 823 F.3d at 480 (quoting *Barnes v. Am. Tobacco Co.*, 161 F.3d 127, 143 (3d Cir. 1998)). "In fact, cohesiveness is the touchstone of a (b)(2) class, as a (b)(2) class 'share[s] the most traditional justification[] for class treatment,' in that the 'relief sought must perforce affect the entire class at once.'" *Id.* (quoting *Dukes*, 564 U.S. at 361-62 (alterations and emphasis added by *Ebert*). Accordingly, "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment against the defendant." *Dukes*, 564 U.S. at 361. Each and every member of the proposed class should be required to adjudicate the individual facts and circumstances surrounding their claims seperately.

**III.     THE CLAIMS FOR CLASS-WIDE RELIEF LACK STANDING.**

The class-action claims seek prospective relief in the form of injunctions prohibiting unconstitutional conduct and requiring, pursuant to the Americans with Disabilities Act, that the jail make reasonable accommodations for inmates struggling with respiratory conditions who would otherwise be subject to the reasonable use of pepper spray. Plaintiffs cannot establish standing for prospective relief in that this would require them to show that they are likely to be pepper sprayed under the same circumstances in the future.

Judge Fleissig recently addressed the issue of standing in a putative class action claim seeking injunctive relief regarding the conditions of confinement at St. Louis' Medium Security Institution. In finding that the plaintiffs did not satisfy the requirement of standing, Judge Fleissig articulated the following:

The Supreme Court has made clear that "[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." *O'Shea v. Littleton*, 414 U.S. 488, 495-96, 94 S. Ct. 669, 38 L. Ed. 2d 674 (1974). In *O'Shea*, like here, the named plaintiffs in a putative class action claiming illegal bond-setting and sentencing practices claimed imminent injury for standing purposes based on the likelihood that they would "again be arrested for and charged with violations of the criminal law and will again be subjected to bond proceedings, trial, or sentencing." *Id*. at 496. In other words, the named plaintiffs proposed that "that if [they] proceed to violate an unchallenged law and if they are charged, held to answer, and tried in any proceedings before petitioners, they will be subjected to the discriminatory practices that petitioners are alleged to have followed." *Id*. at 497. The Supreme Court rejected that proposition, holding that "attempting to anticipate whether and when these respondents will be

15

charged with crime and will be made to appear before either petitioner takes us into the area of speculation and conjecture." *Id*. at 488. *Cody v. City of St. Louis*, No. 4:17-CV-2707 AGF, 2021 U.S. Dist. LEXIS 195674, at *10-11 (E.D. Mo. Oct. 12, 2021).

Pertinent to this case, any attempt to anticipate whether the named Plaintiffs and putative class members will be subject to not just the use of pepper spray or the shutting off of their water, but the use of pepper spray amounting to unconstitutionally excessive force and the shutting off of water constituting unlawful conditions of confinement manifested by deliberate indifference, "takes us into the area of speculation and conjecture." *Id.*

## CONCLUSION

For all the foregoing reasons, the Court should deny Plaintiffs' Motion for Class Certification, and grant Defendant any such other and further relief the Court deems fair and appropriate.

Respectfully submitted,
SHEENA HAMILTON,
CITY COUNSELOR

By:    */s/Adriano Martinez*
Adriano Martinez #69214
Assistant City Counselor
Lawrence Pratt #
Associate City Counselor
1200 Market Street
City Hall Room 314
St. Louis, Missouri 63103
Phone: 314-622-4651
Fax: 314-622-4956
martineza@stlouis-mo.gov
prattl@stlouis-mo.gov

16