**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DERRICK JONES, JEROME JONES, MARRELL WITHERS and DARNELL RUSAN )<br><br>)<br>Plaintiffs, )<br><br>)<br>v. )<br><br>)<br>CITY OF ST. LOUIS *et al.*, )<br><br>)<br>Defendants. ) | Cause No. 4:21-cv-600 |

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**
**PLAINTIFFS' THIRD AMENDED COMPLAINT**

Defendants ask this Court to dismiss Plaintiffs' Third Amended Complaint, relying in large part on arguments which have been previously raised and rejected by this Court. Doc. 139, 140. Defendants are wrong in their characterization of the facts and wrong on the law. Plaintiffs allege, and it must be accepted as true, application of unreasonable force with more than *de minimis* injuries and plausibly allege that excessive macing and retaliatory water shut-offs are widespread practices of which Defendants had or should have had notice. In addition, Defendants advance several arguments outside the proper scope of a Motion to Dismiss in asking this Court to find injunctive relief could not be properly administered according to PLRA requirements and raising Rule 23 arguments. For the following reasons, Defendants' Motion to Dismiss should be denied.

**LEGAL STANDARD**

To survive a motion to dismiss for failure to state a claim, a plaintiff's allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim "has facial plausibility when the plaintiff pleads factual content that

allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss, "the court must accept the allegations contained in the complaint as true and draw all reasonable inferences in favor of the nonmoving party." *Coons v. Mineta*, 410 F.3d 1036, 1039 (8th Cir. 2005). A court must "draw on its judicial experience and common sense," and consider the plausibility of the plaintiff's claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.*, 592 F.3d 893, 896 n.4 (8th Cir. 2010) (quoting *Iqbal*, 556 U.S. at 679).

## ARGUMENT

### I. Defendants' Motion to Dismiss raises arguments which this Court has previously rejected

Defendants first filed a Motion to Dismiss on July 14, 2021. Doc. 24. In it, Defendants asserted that Counts One through Three of the amended complaint alleging excessive force by individual officers in violation of the Fourteenth Amendment must be dismissed for failure to state a claim because Plaintiffs have alleged no more than *de minimis* force and injuries, and because they are entitled to qualified immunity on these claims. Defendants also argued that Counts Four and Six of the amended complaint must be dismissed because Plaintiffs have failed to show the existence of a widespread custom or policy condoning use of excessive macing or retaliatory water shut-offs. Doc. 25 at 9. On January 13, 2022, the Court denied each of those arguments. Doc. 52.[1]

Plaintiffs have filed their Third Amended Complaint. Doc. 131. While this Complaint adds class injunctive claims, Counts One through Three were not substantially changed since this Court issued the order denying Defendants previous Motion to Dismiss. Doc. 1; Doc. 131. The Court has

---

[1] In that earlier motion, Defendants also argued the claims against Commissioner Carson and Superintendent Barnes in their official capacities should be dismissed. The Court agreed. Doc. 52. Neither Commissioner Carson nor Glass is named in this current Third Amended Complaint. Doc. 131.

already held that Plaintiffs' allegations of excessive force were sufficient to state a claim, that Defendants were not presently entitled to qualified immunity, and that Plaintiffs have sufficiently pleaded facts alleging the existence of a widespread custom or policy. Yet in Sections I and II of their Motion, Defendants revive these same arguments previously denied by this Court using language quite literally copy pasted from their first Motion. Doc. 25; Doc. 140.[2] For the same reasons this Court decided Defendants' arguments lacked merit before, they lack merit today.

And Defendants also fail to contend the Court made clearly or manifestly erroneous findings of fact or conclusions of law in its January 13, 2022 decision. In fact, Defendants do not cite or acknowledge the Court's previous order at all, let alone explain any deficiencies in its reasoning or incorrect conclusions of law. Even if they had, the arguments Defendants raise for the second time fail to meet the high bar for reconsideration of a prior ruling.

Reconsideration of interlocutory orders is limited to where there is a need to "correct any clearly or manifestly erroneous findings of fact or conclusions of law." *MacCormack v. Adel Wiggins Grp.*, 4:16-CV-414-CEJ, 2017 WL 1426009, at *2 (E.D. Mo. April 21, 2017) (quoting *Bancorp Servs., L.L.C. v. Sun Life Assur. Co. of Canada,* No. 4:00-CV-1073 CEJ, 2011 WL 1599550 (E.D. Mo. Apr. 27, 2011)). "Although the Court has the power to revisit prior decisions of its own . . . [it] should be loathe to do so in the absence of extraordinary circumstances such as where the initial decision was clearly erroneous and would work a manifest injustice." *Evans v. Cont. Callers, Inc.*, No. 4:10CV2358 FRB, 2012 WL 234653, at *2 (E.D. Mo. Jan. 25, 2012). "The Court also has an interest in judicial economy and ensuring respect for the finality of its decisions, values which would be undermined if it were to routinely reconsider its interlocutory orders."

---

[2] Defendants also repeat several arguments raised in their Response in Opposition to Plaintiffs' Motion for Leave to Amend the Complaint, Doc. 90, although as Plaintiffs noted in their Reply it was an improper venue for those arguments. Doc. 97. This Court also granted Plaintiffs leave to amend, thereby again rejecting Defendants' arguments. Doc. 104.

*Trickey v. Kaman Indus. Techs. Corp.*, No. 1:09-CV-00026-SNLJ, 2011 WL 2118578, at *2 (E.D. Mo. May 26, 2011).

As explained in sections II and III, *infra*, Defendants' arguments continue to be legally and factually incorrect. Defendants fail to offer any arguments that demonstrate extraordinary circumstances or to undermine the Court's interest in finality of decision and judicial economy.

As such, this Court should deny Defendants' Points I and II of Defendants' Motion to Dismiss this Court as it constitutes a request to this Court to reconsider an earlier ruling without justification or cause.

## II. Defendants' Motion to Dismiss Counts I, II, III should be denied because Plaintiffs alleged objectively unreasonable force.

Defendants argue that Counts I, II, and III should be dismissed because the Plaintiffs alleged merely *de minimis* injuries. This is a simply incorrect construction of Plaintiffs allegations and controlling Eighth Circuit caselaw. Moreover, this Court already ruled, correctly, even if *de minimis*, Plaintiffs have sufficiently alleged unreasonable force.

### A. Plaintiffs allege more than *de minimis* injuries.

Defendants argue that Counts I, II, and III should be dismissed because the Plaintiffs alleged merely *de minimis* injuries that are indicative of a *de minimis* use of force. But precisely the opposite is true. Plaintiffs allege the use of chemical agents in prolonged and excessive fashion, describing intense pain, burning of the eyes, face, and skin, subsequently being unable to breathe and lasting symptoms. *See* Doc. 131 ¶¶ 23-72. Plaintiffs allege that Defendants used chemical agents in a manner that causes more than a *de minimis* use of force and injury.

Specifically, Derrick Jones was maced in the eyes and face, taken to the ground and beaten, handcuffed, maced again, and then placed in a holding cell, only to be maced again. Doc. 131 ¶¶

23-26. Derrick struggled to breath, was denied medical treatment, and endured burning from the mace on his skin and clothes for days because he was refused a shower. *Id.* ¶¶ 26-28, 30.

Jerome Jones, while in handcuffs, was left in a mace-filled fully enclosed 3- by 5-foot room for 25 minutes where his eyes, face, and entire body were burning from being soaked in mace—he was denied medical attention and for weeks would wake in the middle of the night in respiratory distress. *Id.* ¶¶ 34-43. He still experiences respiratory issues to this day. *Id.* ¶ 44.

Darnell Rusan was maced by Lt. Turner with a riot sized can of spray less than two feet away. *Id.* ¶¶ 45-51. Following that, he was then accosted by two correctional officers who slammed him into a wall, hit and choked him, and told him, "we'll kill your little ass in here." *Id.* ¶¶ 52-59. Darnell Rusan remained handcuffed, bleeding from his head, as he became dizzy and struggled to catch his breath. *Id.* ¶ 54. On a separate occasion, Darnell was locked in a mace-filled visiting room for **four hours** fully nude—and he was also denied medical assistance after being released from the cell. *Id.* ¶¶ 59-62.

Marrell Withers was also sprayed directly in the face while restrained in handcuffs. *Id.* ¶ 63-72. Marrell informed Defendants Willis and Jones that he had asthma and begged them not to mace him. *Id.* ¶ 68. When Marrell tried to remain calm, Captain Wills yelled that the mace had not worked and instructed CO Jones to mace Marrell a second time. *Id.* ¶ 70.

Defendants rely on *Peterson* to argue that the Eighth Circuit has never deemed pepper spray to inherently cause more than *de minimis* harm. *Peterson v. Kopp*, 754 F.3d 594 (8th Cir. 2014). This is a misunderstanding of *Peterson*, which only states that in 2014, the Eighth Circuit had "not held that the use of pepper spray **necessarily** causes more than de minimis injury." *Id.* at 601. but the court then went on to explicitly acknowledge that, at times, excessive use of mace will result in a more than *de minimis* injury, citing to *Lawrence v. Bowersox,* 297 F.3d 727, 732 (8th

Cir. 2002). *Peterson,* 754 F.3d at 601. In fact, *Peterson* explains that in a prior case, *Chambers v. Pennycook*, the Eighth Circuit has held that "[t]he degree of injury should not be dispositive, because the nature of the force applied cannot be correlated perfectly with the type of injury inflicted." *Id., citing Chambers v. Pennycook*, 641 F.3d at 906. "It is logically possible to prove an excessive use of force that caused only a minor injury, and a rule that forecloses a constitutional claim in that circumstance focuses on the wrong question." *Pennycook*, 641 F.3d at 906.

The facts of *Peterson* are distinguishable as well. In *Peterson,* an arresting police officer sprayed the plaintiff in the open air for two seconds in the face and, at the summary judgment phase, the Eighth Circuit found that the officer was entitled to qualified immunity. *Id.* The Circuit described *Peterson* as a "close case," one where the pepper spraying of Peterson "may have been unreasonable." *Id*. at 601. The *Peterson* court reasoned that while the Plaintiff suffered some pain, it was pertinent that he did not seek medical care for his symptoms. *Id*. By contrast, in *Lawrence,* the court held that the plaintiffs suffered more than *de minimis* injuries when "inmates' faces and bodies were soaked in pepper spray" and "their entire cell was covered with the spray." 297 F.3d at 732. The Court in *Lawrence* cited the lasting and "intense burning" that the plaintiffs experienced after inhaling mace for 10 minutes. *Id. See also Treats v. Morgan*, 308 F.3d 868, 875 (8th Cir. 2002) (noting pepper spray is a "painful substance" and that it would be "a matter of serious concern if correctional officers" believed it "could be used at will").

As such, in the Eighth Circuit, excessive macing can cause more than *de minimis* injuries. As this Court wrote when denying Defendants' identical argument advanced in its last Motion to Dismiss, "even if the injuries alleged were de minimus (and it is by no means clear that they are) it is clearly established that the unreasonableness of the force used, not the nature of the injury is the relevant inquiry." Doc. 52 at 9 (citing *Pennycook*, 641 F.3d at 906).

Specifically, in the present case, Plaintiffs were covered in mace and placed in mace-filled rooms for even longer periods of time. Plaintiffs Derrick Jones and Darnell Rusan were maced repeatedly. The no-contact visiting room where Plaintiff Jerome Jones was held was so suffused with noxious air that he fell to the ground to access fresh air. Doc. 131 ¶¶ 35-37. All three individual Plaintiffs were left with mace on their bodies for an extended period of time without being allowed to shower for hours or even days. As in *Lawrence*, the exposure to chemical agents was excessive and intended to cause pain—Defendant Fowlkes, having locked Derrick Jones in a holding cell, said "let him marinate" after macing Jones for the third time in a matter of hours. *Id.* ¶ 29. Plaintiffs have made sufficient allegations to demonstrate they endured more than *de minimis* injuries and that unreasonable force was exerted against them.

Defendants' reliance on the Fourth Circuit's decision in *Williams* and on *White v. Jackson* is misguided. *Williams v. Benjamin*, 77 F.3d 756 (4th Cir. 1996); *White v. Jackson*, 865 F.3d 1064 (8th Cir. 2017). In *Williams*, the Fourth Circuit considered the use of mace in "small quantities" and when remarking that mace may be "more humane" explained this was based on a "prompt washing of the maced area of the body" to provide relief from the pain. *Williams*, 77 F.3d at 763. Here, the pain suffered by Plaintiffs was the result of the use of large amounts of mace and the Defendants preventing Plaintiffs from washing mace off their bodies for extended periods of time.

The court in *White* concluded the section of an arrest where an officer placed a knee in an arrestee's back was not an unreasonable use of force within the context of an arrest. *Id.* at 1080 (quoting *Graham v. Connor*, 490 U.S. 386, 396). However, the *White* court **reversed** the lower court's grant of qualified immunity with respect to the use of pepper spray (as well as other physical assaults on a restrained individual), holding there was a genuine issue of material fact as to whether these actions constituted gratuitous, unnecessary force against a subdued individual

which was not objectively reasonable. *Id.* Plaintiffs here present similar allegations of gratuitous, unnecessary force. *See* Doc. 131 ¶¶ 73-86.

Plaintiffs have presented clear allegations as to the state of their injuries, and to the extent there is a genuine dispute of material fact as to the severity of the injuries endured, that issue cannot be resolved here.

**B. Plaintiffs' allegations are sufficient to demonstrate unreasonable force.**

The proper question is one of the objective reasonableness of Defendants' actions. *Peterson*, 754 F.3d at 601.[3] A detainee can prove an excessive force claim under the Fourteenth Amendment by showing the force used was objectively unreasonable. Courts must consider the following factors in evaluating such a claim: (1) the relationship between the need for the use of force and the amount of force used; (2) the extent of the plaintiff's injury; (3) any effort made by the officer to temper or to limit the amount of force; (4) the severity of the security problem at issue; (5) the threat reasonably perceived by the officer; and (6) whether the plaintiff was actively resisting. *Kingsley v. Hendrickson,* 576 U.S. 389, 397 (2015).

---

[3] Defendants here ask this Court to find them entitled to qualified immunity. The qualified immunity analysis has two prongs: (1) whether the facts alleged, viewed in the light most favorable to the plaintiff, show that the defendant violated a constitutional or statutory right, and (2) whether the right at issue was clearly established at the time of the offending conduct. *Bonenberger v. St. Louis Metro. Police Dep't*, 956 F. Supp. 2d 1059 (E.D. Mo. 2013) (citing *Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir.2009)). Notably, Defendants only raise arguments regarding the first prong, and do not argue that the rights at issue were not clearly established. Nor could they. In *Lawrence*, the Eighth Circuit held that, "orchestrating an unnecessary pepper spray shower violated clearly established rights of which a reasonable person should have known." *Lawrence*, 297 F.3d at 733. Likewise, in this Court's order denying Defendants' last Motion to Dismiss, this Court cited a plethora of cases, including *Johnson v. Carroll*, 658 F.3d 819, 828 (8th Cir. 2011), *Treats v. Morgan*, 308 F.3d 868, 872-73 (8th Cir. 2002), *Bauer v. Norris*, 713 F.2d 408, 42 (8th Cir. 1983), and *Krout v. Goemmer*, 83 F.3d 557, 566 (8th Cir. 2009), noting that, "[t]aken together these cases show that Plaintiffs' right to be free from excessive force in the alleged circumstances was clearly established." Doc. 52 at 10.

Defendants presumably focus only on the extent of injury factor—which, as discussed *supra*, Plaintiffs dispute—because all the other factors weigh decisively in Plaintiffs' favor. The Eighth Circuit has repeatedly found that macings almost identical to the facts alleged here can be objectively unreasonable. In *Tatum v. Robinson*, the Eighth Circuit found that the use of pepper spray for one second against the plaintiff was unjustified because a reasonable officer would not have viewed the plaintiff as resisting, as an immediate threat, or engaged in a severe crime; the court held that even a short burst of mace was objectively unreasonable. 858 F.3d 544, 546 (8th Cir. 2017). In *Henderson v. Munn*, 439 F.3d 497 (8th Cir. 2006), the Eighth Circuit affirmed a decision denying an arresting officer qualified immunity because a reasonable jury could find that an officer used excessive force in pepper spraying a man in the face who was handcuffed and lying in the ground. *Id*. at 502.

In the Eighth Amendment context, the Eighth Circuit has also held that the use of pepper spray in response to a non-recalcitrant incarcerated person constitutes excessive use of force, whether the macing causes only *de minimis* injuries notwithstanding. In *Treats v. Morgan*, the circuit court considered whether a plaintiff who had been maced without warning for disputing an officer's order could sustain an excessive force claim at the summary judgment phase. *Treats*, 308 F.3d at 872-73. The court rejected a similar argument to the one set forth by Defendants here - that pepper spray causes only *de minimis* injury if "an inmate has disobeyed an order and received medical attention after being sprayed." *Id.* at 871. Instead, the court concluded that because the plaintiff could not at the summary judgment phase "be said to have been recalcitrant or threatening" there were genuine issues for trial regarding the plaintiff being pepper sprayed. *Id*. at 873; *see also Foulk v. Charrier*, 262 F.3d 687, 702 (8th Cir. 2001) (holding a reasonable jury could

find an officer engaged in a malicious and sadistic use of force when he enticed an incarcerated person to a screened window and sprayed pepper spray into the plaintiff's face).

The extent and nature of macing used by the Defendants violated Defendants' own written policies; Plaintiffs were left with their eyes, face, and skin burning for hours if not days (Doc. 131, ¶¶ 28, 40, 52); none of the Plaintiffs posed immediate security risks (*Id.* ¶¶ 26; 39; 54-56); Plaintiffs were placed in mace-filled rooms where they could pose no threat (*Id.* ¶¶ 29; 36; 56); Plaintiffs were not actively resisting when they were maced (*Id.* ¶¶ 25-26; 33; 54).

Here, this Court has already and correctly found in denying Defendants' identical arguments advanced earlier that "Plaintiffs' excessive force claims in Counts One, Two, and Three are sufficient to state a claim." Doc. 52 at 7. As to Derrick Jones, this Court wrote, "correctional officers used excessive force on him without reason or provocation. There is no indication that the force used was in an attempt to maintain or restore discipline, particularly as he was handcuffed during much of the encounter." *Id*. at 8. For Jerome Jones, the Court pointed out his allegations he was handcuffed and placed in a small, mace-filled room for approximately 25 minutes despite not physically resisting at any time. *Id*. As to Darnell Rusan, the Court noted his allegations that he was maced followed by a physical assault, and that he was on a separate day left in a room filled with mace for hours. *Id.* For the same reasons this Court previously denied Defendants attempt to dismiss Counts I-III, the Court should deny those here.

Plaintiff Marrell Withers' allegations are similar in every important respect. He alleges that he was handcuffed, not physically resisting, and was maced directly in the face despite having notified the correctional officers of his asthma. Doc. 131 ¶¶ 69-72. This Circuit has been clear that this is unreasonable and excessive force. *Krout v. Goemmer*, 83 F.3d 557, 566 (8th Cir. 2009)

("The use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable.").

For these reasons, Plaintiffs have sufficiently stated a claim for excessive force for Counts I-IV and Defendants are not entitled to qualified immunity.

**III.** **Plaintiffs have plausibly alleged that excessive macing and retaliatory water shut-offs are widespread practices of which Defendants had or should have had notice.**

Defendants contend that Counts V and VI should be dismissed because Plaintiffs have failed to demonstrate the existence of widespread customs of unconstitutional misconduct. However, Plaintiffs have alleged numerous instances of excessive macing and water deprivation, such that there is a widespread custom at the St. Louis City Justice Center ("CJC") of using both as forms of punishment. Indeed, this Court has already determined that Plaintiffs have pled facts "sufficient to raise a reasonable expectation that discovery will reveal evidence to support their claim of municipal liability under § 1983, which is all that is required at this early stage in the proceedings." Doc. 52 at 11-12

Under *Monell,* municipal liability involves two requirements: "(1) a policy, practice, or custom must be attributable to the City through actual or constructive knowledge; and (2) the policy, practice, or custom must directly cause constitutional injury." *Gatlin ex rel. Estate of Gatlin v. Green*, 362 F.3d 1089 (8th Cir. 2004) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978)). Municipal liability under § 1983 will lie where a municipal policy, custom, or practice, maintained with deliberate indifference to the known or "obvious" risk of constitutional violations, causes a plaintiff's constitutional rights to be violated. *City of Canton v. Harris*, 489 U.S. 378, 388-89 n. 10 (1989). Plaintiffs in this case allege months of routine, and obvious, uses of excessive force and water deprivation intended to inflict pain and suffering upon detainees in violation of the Fourteenth Amendment. The Complaint outlines a pattern of the use of excessive mace against

specific detainees in specific contexts and retaliatory water shut-offs in specific pods of the CJC on particular dates. Doc. 131 ¶¶ 98-105, 118. The facts outlined establish a pattern of punitive practices that more than supports a reasonable inference of *Monell* liability.

The allegations in the complaint more than meet the standard in the Eighth Circuit to demonstrate the existence of a widespread custom. In *Watson v. Boyd*, the court concluded that ten to fifteen complaints over fourteen months constituted "sufficient evidence of a custom in support of *Monell* claim to withstand Defendants' Motion for Summary Judgment." 447 F. Supp. 3d 924, 950 (E.D. Mo. 2020); *cf. Valentino v. Vill. of S. Chicago Heights*, 575 F.3d 664, 675 (7th Cir. 2009) (noting that "[i]f the same problem has arisen many times and the municipality has acquiesced in the outcome, it is possible (though not necessary) to infer there is a policy at work" and reversing the district court's grant of summary judgment against the plaintiff) (citation omitted).

In the present case, Plaintiffs plainly allege repeated instances over months in which CJC staff violated the Fourteenth Amendment, and plainly allege the City was on notice of these claims. The Complaint lists multiple examples of when excessive macing or water deprivation were used to punish detainees. Doc. 131 ¶¶ 77, 118. Plaintiffs detail a pattern of incidents that undergird these claims, with numerous factually similar incidents that occurred over a period of months. Doc. 131 ¶¶ 73-79, 118. Plaintiffs allege that multiple allegations of excessive force have not been investigated because their attempts to file grievances have been obstructed or ignored. *Id.* ¶ 129-150. Plaintiffs also allege CJC staff have regularly engaged in water shut-offs on a weekly basis in response to alleged detainee misconduct, and describe with specificity the repeated use of water deprivation in response to minor alleged detainee misconduct. *Id.* ¶¶ 116-124. Here, Plaintiffs set forth more than enough facts describing a prolific pattern of brutality, to obviousness of which put

the Defendant City on actual or constructive notice. *See Connick v. Thompson*, 563 U.S. 51, 59, (2011). Defendants' cites do not hold otherwise. *Mettler v. Whitledge* in fact emphasizes that "Evidence that a [government] has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment." 165 F.3d 1197, 1205 (8th Cir. 1999). Plaintiffs' claims should proceed to discovery so that evidence can be provided to support the facts of the recurrent practices that should have put Defendants on notice.

These patterns are united in similarity by the use of water deprivation and excessive use of force as means of punishing detainees for minor misconduct (assuming there was misconduct at all). To establish a *Monell* claim, "isolated incidents do not suffice" but "evidence of 'many' incidents does establish liability." *Burbridge v. City of St. Louis, Missouri*, 430 F. Supp. 3d 595, 620 (E.D. Mo. 2019), *aff'd*, 2 F.4th 774 (8th Cir. 2021). On both counts, Plaintiffs' allegations show many similar incidents that violate the constitutional rights of the detainees at the CJC. This is not a matter of one incident, or even a handful of incidents, which could have gone unnoticed by Defendant City. At the very least, the obviousness of these violations at the City Justice Center gave Defendants constructive notice of a pattern of excessive macing and water shut off.

As this Court wrote in denying Defendants' Motion to Sever and Bifurcate, Plaintiffs' allegations all "encompass at least two Justice Center employees who acted or were continuing to act together as a part of the alleged custom or widespread practice of using excessive force or deprivation of water, which would inevitably deprive inmates of their constitutional rights." Doc. 112 at 5. Given this Court's acknowledgment that Plaintiffs' allegations clearly lay out a widespread custom and practice, this Court should not dismiss Plaintiffs' *Monell* claim.

Defendants also dispute whether the allegations regarding water deprivation sufficiently show notice to the municipality and its officials. The Complaint clearly alleges such notice. *See* Doc. 131 ¶ 223. First, the allegations show employees commonly and routinely announcing their punitive intentions and shutting off water to whole pods—actions the City and Defendants Barnes and Glass *should* have been aware of. *Id.* ¶¶ 116-120. Moreover, after a three-day water shut-off at CJC, advocates wrote to City officials and received a response regarding the deprivation of water. *Id.* ¶¶ 114-115. While Plaintiffs dispute the City's position regarding why water is routinely shut off at the CJC, the City's response demonstrates that City officials were aware of the practice. *Id.* ¶ 115. Moreover, the acquisition of more detailed facts with respect to instances of water deprivation is the purpose of discovery and this claim should not be dismissed at this stage of proceedings.

Finally, Defendants argue that given Plaintiffs' argument they were unable to utilize the grievance process means that, "the jail administration almost certainly did not have notice of the plaintiffs' grievances." Doc. 140 at 17. Plaintiffs' precise allegations are that because CJC staff deliberately thwarted detainees' attempts to use the grievance process and the grievances did not reach the officials they ought to have reached under CJC policy. In their complaint, Plaintiffs describe their attempts to use the grievance process and either receiving no reply—in violation of CJC policies—or being threatened with mace for attempting to file an informal resolution request (IRR). Doc. 131 ¶¶ 129-150. Plaintiffs contend that when detainees file grievances regarding instances of used force, staff disregard and refuse to submit or deliver those grievances. *Id.* ¶¶ 195-198. "The right to access the prison grievance process" is a protected constitutional right. *Spencer v. Jackson Cty. Mo.*, 738 F.3d 907, 913 (8th Cir. 2013). CJC staff make the grievance process practically inaccessible—it is a broken system designed to fail. To the extent the City of St. Louis

uses this to claim policymakers were not on notice, it was Defendants' own employees who obstructed detainees' only method to provide such notice.

More practically, the grievance process is not the only means by which Defendants would be given notice. Plaintiffs include numerous allegations concerning how mace is used in CJC that would provide actual or constructive notice to all Defendants. Doc. 131 ¶¶ 80-83. Plaintiffs allege mace is often deployed by or in the presence of jail supervisors; that "visiting booths often have tangible smell and residue from mace that is openly detectable for hours or days after a macing incident"; and that the City has purchased ever escalating number of chemical agents. *Id.*

Finally, Defendants miss the mark in suggesting that because some use of force incidents are reflected in the monthly reports that it follows that all uses of force are investigated. Plaintiffs properly allege that detainees have been injured by the excessive use of mace at the CJC and the absence of reports is indicative of deliberate indifference. Defendants are liable for their deliberate indifference to a widespread custom and not just for the uses of force CJC staff selectively reports.

The City of St. Louis is well aware that mace and retaliatory water shut-offs are used regularly at the CJC, has provided specific guidelines for its use, and is or should be on notice when it is being used excessively and in violation of their policy, for the purpose of inflicting pain and suffering. As this Court found in denying Defendants identical argument previously raised, "The Court finds that Plaintiffs have pleaded facts sufficient to raise a reasonable expectation that discovery will reveal evidence to support their claim of municipal liability under § 1983, which is all that is required at this early stage in the proceedings." Doc. 52 at 11-12.

**IV.    Plaintiffs have successfully alleged a need for injunctive relief, and it is premature to argue that possible relief would violate the PLRA.**

Defendants prematurely assert that Counts V, VI, VII, IX, X, and XI should be dismissed because the requested relief is overly broad under the PLRA. 18 USC §3626(a)(1)(A). However,

Plaintiffs' requested relief is narrowly tailored to address two specific unconstitutional practices: correctional officers' excessive use of chemical agents, particularly against restrained individuals where those individuals do not present a threat; and a water-deprivation practice used to punish detainees. Doc. 131, Count V and XI. Defendants mischaracterize Plaintiffs' requested relief and inappropriately challenge it when parties have barely begun to develop the record.

Plaintiffs have not requested nor briefed any specific scope for injunctive relief, there is no proposed remedial plan, and indeed, the parties have barely begun to develop the record. Defendants misunderstand the role of the PLRA at this stage. The restrictions that the PLRA imposes are not triggered until the Court sets its hand to fashioning appropriate relief. *Yates v. Collier*, 868 F.3d. 354, 370 (citing *Williams v. Edwards*, 87 F.3d 126, 133 (5th Cir. 1996)). At the appropriate time, this Court is more than capable of crafting a permanent injunction with a precise scope that will provide the narrowly tailored relief required by the PLRA. *See Langford v. City of St. Louis, Missouri*, 443 F.3d 962, 993 (E.D. Mo. 2020), overruled on other grounds by *Langford v. City of St. Louis, Missouri*, 3 F.4th 1054 (8th Cir. 2021) (limiting scope of requested permanent injunction to narrowly tailor relief following summary judgment briefing). At this stage, the PLRA "provides no independent basis" for dismissing this claim. *Johnson v. McCowan*, 549 F.Supp.3d 469, 479 (W.D.Va. 2021) (holding Plaintiffs' request to "permanently enjoin and estop" policies permitting and condoning canine attacks did not fail for being overbroad because the Defendant's argument was premature at the motion to dismiss stage). If this Court grants permanent injunctive relief, this Court will itself evaluate when the relief has successfully caused Defendants to come into compliance with the constitution and terminate accordingly. *See Skinner*, 457 F.Supp.2d at 1279. Defendants offer no reason to doubt the Court will act in full compliance with the statutory requirements to only intervene as necessary.

First, Defendants' claim that Plaintiffs' request for injunctive relief prohibiting unconstitutional use of chemical agents is overly broad because the Court has "no method for determining 'constitutionality'" and would be forced to issue "a complete ban on the use" of chemical agents by CJC. Doc. 140 at 20. This assertion is absurd and warrants minimal consideration. Plaintiffs have raised well-pleaded allegations of a discrete practice of unconstitutional punishment through the excessive deployment of chemical agents against individuals without warning and against those who pose no imminent danger. Defendants cite no applicable cases to support the contention that excessive and punitive use of chemical agents cannot be remedied through injunctive relief compliant with the requirements of the PLRA. Defendants' further contention that injunctive relief against the ongoing and inhumane practice of water shut-offs is "vague", is unsupported by case law and premature at this stage.

Plaintiffs agree this Court has a statutory duty to ensure that prospective relief is narrowly drawn and intrudes only as necessary to correct the violation of the Federal right under the PLRA. 18 U.S.C. § 3626(a)(1)(A). Accordingly, Plaintiffs' requested relief is limited to specific types of widespread constitutional violations of the kind that courts have found suitable for permanent injunctive relief under the PLRA. This is like *Graves v. Arpaio*, where the Ninth Circuit upheld injunctive relief requiring Defendants to remediate heat issues and inadequate nutrition after Plaintiffs proved two specific practices caused unconstitutional conditions. 623 F.3d 1043, 1049-1051 (9th Cir. 2010). *See also Skinner v. Lampert*, 457 F.Supp.2d 1269, 1283 (D. Wyo. 2006) (finding injunctive relief requiring changes to the entire system of documenting and investigating uses of force to be narrowly tailored under the PLRA); *Hawkins v. Comparet-Cassani*, 251 F.3d 1230 (9th Cir. 2001) (granting preliminary injunction banning the use of stun belts but narrowly allowing the use for courtroom security). Plaintiffs' requested relief is targeted just to the

unconstitutional use of chemical agents and water shut-offs as punishment. Doc. 131, Count V and XI. Relief here would only implicate the employees involved in the challenged conduct and would not bring federal court intervention to other aspects of CJC.

Defendants next argue that it would be impractical for them to comply with prospective relief under Count VII, which seeks to protect a Medical Subclass of Plaintiffs under the ADA. Defendants' dismissal of *any* medical condition checks of any kind as "impractical if not impossible" is unsupported, especially when Plaintiffs have not requested a specific policy change. For example, in *Harvard v. Inch,* 411 F.Supp.3d 1220 (N.D. Fla. 2019), the court found that Plaintiffs had sufficiently pled discrimination based on disability due to Defendants' failure to modify several policies regarding discipline and isolation of Plaintiffs with disabilities. It also contradicts other cases where Courts have successfully fashioned narrow injunctive relief for accommodations. *See Thomas v. McNeil*, 614 F.3d 1288 (11th Cir. 2010) (granting injunctive relief requiring DOC officials to consult with mental health professionals before non-spontaneous macing of Plaintiffs). Plaintiffs' requests for reasonable accommodations under the ADA are viable and Defendants' arguments are inappropriate at this stage.

Plaintiffs' Third Amended Complaint clearly seeks permissible relief that is well within this Court's authority to provide.

## V.     Defendants Improperly Raise Rule 23 arguments in Their Motion to Dismiss.

As a threshold issue, a Motion to Dismiss is not the appropriate vehicle for addressing Rule 23 arguments. Defendants' challenges to the capacity of class-wide relief and the adequacy of class representatives ignore settled Eighth Circuit precedent, which warns that "[t]he propriety of class action status can seldom be determined on the basis of the pleadings alone." *See Walker v. World Tire Corp.*, 563 F.2d 918, 921 (8th Cir. 1977). Instead, the district court "must have before it

'sufficient material … to determine the nature of the allegations, and rule on compliance with the Rule's requirements …'" *Id.* (internal citation omitted); *see also Nobles v. State Farm Mut. Auto. Ins. Co.*, No. 10-04175-CV-C-NKL, 2012 WL 4090347, at *n.1 (W.D. Mo. Sept. 17, 2012) ("[T]he weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism."). Plaintiffs have filed a separate motion for Rule 23 class certification, which is where Plaintiffs' class claims would be properly considered. Docs. 71, 72 and 132-1.

Even if the Court were to consider whether Plaintiffs' class claims were properly pleaded, Plaintiffs have alleged facts sufficient to satisfy the requirements of Rule 23. Defendants raise specific challenges in their Motion to Dismiss to the commonality and adequacy of representation requirements of Rule 23(a)(2) and (a)(4). MTD at 21- 23. Their arguments are untethered from the established tests to survive class certification under the Federal Rules of Civil Procedure and should be dismissed as improper and untimely.

### A. Plaintiffs allege sufficient facts that, taken as true, present common questions capable of class-wide resolution because all class members are subject to the same challenged policies and procedures.

Defendants' challenges to Rule 23(a)(2) commonality again misunderstands that the putative class only seeks prospective injunctive and declarative relief. While concerns related to individual assessment may have some merit if the putative class was seeking damages, here they are not seeking damages, but rather allege widespread policies that injure all class members by exposing them to the same substantial risk of serious harm. "Rule 23(b)(2) applies…when a single injunction or declaratory judgment would provide relief to each member of the class." *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 360 (2011). Injunctive relief here would resolve all of the class members' claims "in one stroke." *See id.*; *see also Fant v. City of Ferguson, Missouri*,

No. 4:15-CV-00253-AGF, 2022 WL 2072647, at *21 (E.D. Mo. June 9, 2022) ( ". . .the relief sought here is applicable to all class members as it seeks to declare the City's policies and practices . . . unconstitutional and seeks to enjoin the City from enforcing such policies and practices.").

With respect to commonality, each member of the putative class shares two common questions: 1) Whether Defendants have a pattern and practice of using excessive force through deployment of chemical agents without justification or warning, and in unreasonable amounts; and 2) Whether Defendants have a pattern and practice of using water shut-offs as a form of punishment. *See* Doc. 75 at 10. Answering these two common questions will resolve the claims of each class member simultaneously. Courts have regularly determined that the 23(a)(2) requirement is satisfied in excessive force class claims, where plaintiffs are challenging unconstitutional policies and practices. *See Fant v. City of Ferguson, Missouri*, No. 4:15-CV-00253-AGF, 2022 WL 2072647 (E.D. Mo. June 9, 2022) (class certified of prisoners alleging excessive force policies because plaintiffs did not challenge "particular instances" of force, but rather alleged that "the conditions applied to them in substantially uniform ways . . ."); *Anderson v. Garner*, 22 F. Supp. 2d 1379, 1387 (N.D. Ga. 1997) (class certified of prisoners challenging excessive force, in part because "the practices and conduct alleged by Plaintiffs, if proven, apply generally to all members of the proposed class."); *Ingles v. City of New York*, No. 01 CIV. 8279(DC), 2003 WL 402565, at *9 (S.D.N.Y. Feb. 20, 2003) (class of prisoners certified because "Plaintiffs contend that a policy of excessive force existed at DOC facilities, and inmates will suffer irreparable harm . . . so long as the policy exists").

**B. Plaintiffs allege sufficient facts that, taken as true, demonstrate that the named representatives share common interests with the class and that the representatives will vigorously prosecute those interests.**

Defendants baselessly challenge the adequacy of Plaintiffs' named representatives through the same faulty argument with which they challenge commonality. Defendants argue that this action will devolve into hundreds of mini trials, and because of this, Plaintiffs' named representatives cannot fairly and adequately protect the interests of the class. This drastically misconstrues Eighth Circuit precedent in 23(a)(4) determinations and entirely misses the requirements of 23(a)(4). The proper focus of the 23(a)(4) requirement is whether: "(1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." *Paxton v. Union Nat'l Bank*, 688 F.2d 552, 562-63 (8th Cir. 1982).[4]

Here, the representatives' interests are aligned with class interests. Each representative "possess[es] the same interest and suffer[ed] the same injury" as the class members. *See Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). As people incarcerated in the same facility as the class, the representatives and the class share the common interest of ending unconstitutional CJC policies and practices. Doc. 69-1 ¶¶ 8-11; *see generally Anderson v. Garner*, 22 F. Supp. 2d 1379 (N.D. Ga. 1997) (finding alignment of interest because "the named Plaintiffs and the proposed members share a common interest in eliminating allegedly unconstitutional practices employed by Defendants"). The representatives also suffered the same injury as all members of the class because each of them was exposed to the same substantial risk of serious harm from the policies and procedures at CJC. Plaintiffs Withers and Rusan additionally allege that their medical conditions place them at an additional risk of unlawful treatment, like other medically vulnerable detainees at CJC. Doc. 72-1 at 21. The requested injunctive relief will grant relief for all class

---

[4] Though Defendants' specific 23(a)(4) challenge is unclear, they do not seem to challenge the ability of class counsel. Therefore, only the adequacy of the named representatives will be discussed.

members equally, including Plaintiffs, who can therefore adequately represent the class.

Courts have found plaintiffs to be inadequate class representatives in instances where, for example: (1) the purported representative is not a member of the class because they have not suffered the same injury as the rest of the class, *Walker v. World Tire Corp.*, 563 F.2d 918 (8th Cir. 1977); (2) different sub-classes have pecuniary interests that are directly contradictory to each other, *Amchem Prods., Inc.*, 521 U.S. at 626; and (3) the purported representative was suing the defendant in a separate individual damages claim, at the same time as the class claims, *Duffek v. iMedia Brands, Inc.*, No. 21CV01413ECTBRT, 2022 WL 2384171, at *3 (D. Minn. July 1, 2022).

None of these circumstances are present here. Nor do Defendants frame their adequacy challenge with any adherence to the Eighth Circuit standard. Plaintiffs have alleged facts sufficient to fulfill the requirements of 23(a)(4) and Defendants' vague challenge to the adequacy of named representatives should be dismissed.

## VI. Plaintiffs Properly Plead Violations to their Rights under the ADA in Counts VII and VIII.

Defendants focus their challenge to Plaintiffs' ADA claims on whether Plaintiffs were denied benefits of programs, services, or activities at CJC, the second element of Plaintiffs' ADA claim. Doc. 140 at 23-24. Defendants do not explain their position and instead urge this Court to adopt what can only be construed as an overly simplistic definition of "programs, services or activities" without any support in the law.

Plaintiffs properly pled that their rights under the ADA were violated by pleading that they were "1) … qualified individual[s] with a disability[ies]; 2) … excluded from participation in or denied the benefits of a public entity's services, programs, or activities, or was otherwise discriminated against by the entity; and 3) that such exclusion, denial of benefits, or other discrimination, was by reason of … [their ] disability." *Layton v. Elder*, 143 F.3d 469, 472 (8th

Cir.1998) (citing to the 42 U.S.C. § 12132); *see also Randolph v. Rodgers*, 170 F.3d 850, 858 (8th Cir. 1999). Title II of the ADA extends to jails and prisons. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 210 (1998).

While the ADA does not explicitly define "services, programs, or activities" the Rehabilitation Act, which uses the same "basic standards and definitions" making "cases interpreting either… interchangeable," *Allison v. Dep't of Corr.*, 94 F.3d 494, 497 (8th Cir.1996), defines "program or activity" as "all operations" of a state instrumentality. 29 U.S.C. §794(b)(1)(A). The Eighth Circuit has concluded that "programs, services, or activities," within the meaning of Title II, includes all operations of a public entity. *Gorman v. Bartch*, 152 F.3d 907, 911–12 (8th Cir. 1998). And the Third, Sixth and Ninth Circuits all agree that "services, programs, or activities" under the ADA encompass "virtually everything a public entity does." *Anderson v. City of Blue Ash*, 798 F.3d 338, 356 (6th Cir. 2015); *Furgess v. PA. Dep't of Corr*. 933 F.3d 285, 289 (3d. Cir. 2019); *City of Los Angeles v. AECOM Services, Inc.*, 854 F.3d 1149, 1153-54 (9th Cir. 2017).

"Everything a public entity does" includes using force or denying water to detainees, thus depriving Plaintiffs of a safe and lawful detention. Courts nationwide have found that the ADA and the Rehabilitation Act applies to officers' use of force while interacting with disabled individuals in their ordinary line of work. *See Wilson v. City of Southlake*, 936 F.3d 326 (5th Cir. 2019) (finding the ADA claim against a city responsible for training a School Resource Officer who berated and handcuffed a disruptive disabled student should survive summary judgment); *Spencer v. Dawson*, No. 04 C 5048, 2006 WL 3253574, at *11 (N.D. Ill. Nov. 7, 2006) (Rehabilitation Act applied to defendant officer's on-the-street response where he was alleged to have arrested and pepper sprayed plaintiff); *see also Gorman v. Bartch*, 152 F.3d 907 (8th Cir.

1998) (arrestee transportation was "program" or "service" of police department and "benefit" plaintiff sought was "to be handled and transported in a safe and appropriate manner consistent with his disability"); *Waller ex rel. Estate of Hunt v. Danville, VA*, 556 F.3d 171, 175–76 (4th Cir. 2009) (assuming for purpose of argument that duty of reasonable accommodation under ADA applies in police standoff situation but finding that ADA did not apply in specific circumstances at issue because of exigent circumstances); *Sheehan v. City & Cnty. of San Francisco,* 743 F.3d 1211 (9th Cir. 2014), *rev'd in part, City & Cnty. of San Francisco, Calif. v. Sheehan*, 575 U.S. 600, (2015) (Finding that "services, programs, or activities" under the ADA includes arrests). The same reasoning must also apply to correctional officers using force and other forms of punishment against detainees.

Additionally, the consequences of macings and water shut-offs on disabled individuals like Plaintiffs without accommodation exposes them to discrimination and denies them the benefits of services within the City Justice Center as they are unable to live like other able-bodied detainees. *Cf. Owens v. Chester County*., No. CIV. A. 97-1344, 2000 WL 116069 (E.D. Pa. Jan. 31, 2000) (denying summary judgment on ADA claim where jail officials denied plaintiff use of crutch or wheelchair, depriving plaintiff of the ability to utilize many of the benefits that the Prison provides to its detainees, including use of the phone, use of the general library, participating in the yard activities, etc.). Plaintiffs plausibly plead that their rights under the ADA were violated when Defendants used force against them while detained. Defendants' motion to dismiss claims VII and VIII should be denied.

## Conclusion

For the forgoing reasons Defendants' motion to dismiss should be denied.


Dated: July 21, 2022                                    Respectfully submitted,

ARCHCITY DEFENDERS, INC.

By: */s/* Maureen Hanlon
Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
John M. Waldron (MBE #70401MO)
Maureen Hanlon (MBE #70990MO)
Nathaniel R. Carroll (MBE #67988MO)
Brittney Watkins (MBE #73992MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
jwaldron@archcitydefenders.org
mhanlon@archcitydefenders.org
ncarroll@archcitydefenders.org
bwatkins@archcitydefenders.org

RODERICK & SOLANGE MACARTHUR JUSTICE CENTER

By: */s/* Amy E. Breihan
Amy E. Breihan (MBE #65499MO)
William Patrick Mobley (MBE #63636MO)
Shubra Ohri (E.D. Mo. Bar No. 63098241L)
3115 S. Grand Blvd., Suite 300
Saint Louis, MO 63118
(314) 254-8540
(314) 254-8547 (fax)
amy.breihan@macarthurjustice.org
pat.mobley@macarthurjustice.org

SAINT LOUIS UNIVERSITY SCHOOL OF LAW LEGAL CLINICS

By: */s/* Lauren Bartlett
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778
brendan.roediger@slu.edu
lauren.bartlett@slu.edu

RIGHTS BEHIND BARS

By: */s/* Oren Nimni
Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(206) 200-9088
oren@rightsbehindbars.org

*Attorneys for the Plaintiffs*