# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | |
|---|---|
| DERRICK JONES, JEROME JONES, MARRELL WITHERS and DARNELL RUSAN, on behalf of themselves and all similarly situated individuals, <br><br> Plaintiffs, <br><br> v. <br><br> CITY OF ST. LOUIS, *et al.*, <br><br> Defendants. | Cause No. 4:21-cv-600 |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS'**
**<u>SEVENTH MOTION TO COMPEL</u>**

Plaintiffs file this Sixth Motion to Compel complete responses to their fifth and sixth set of requests for production. While the parties were able to narrow some of the deficiencies through a good faith meet and confer, Defendants' complete responses remain outstanding.

## I. RELEVANT BACKGROUND

On August 12, 2022, Plaintiffs served a Fifth Set of Requests for Production on Defendants ("5th RFPs," attached hereto as **Exhibit 1**.) On November 10, 2022, Plaintiffs served a Sixth Set of Requests for Production on Defendants ("6th RFPs," attached hereto as **Exhibit 2**.) Both sets of requests were narrowly drafted and, in some instances, referenced specific deposition testimony.

Defendants served untimely objections to the 5th RFPs on November 8, 2022. Those responses are attached hereto as **Exhibit 3**. On December 12, Defendants served objections to Plaintiffs' 6th RFPs. Defendants' responses to the 6th RFPs are attached hereto as **Exhibit 4**.

Counsel for the parties met by telephone on January 12, 2023, to confer regarding Defendants' responses to the 5th and 6th RFPs. During that conversation, Defendants agreed to

produce certain responsive records and reconsider certain objections by Friday, January 20. But, like so many other representations Defendants' counsel have made in this case, they did not honor that agreement. They also refused to produce relevant discovery, including discovery relied on by witnesses in deposition testimony necessitating the filing of this motion to compel.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 26(b)(1), parties may obtain discovery "regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). The standard for discoverability is liberal. *See Bartis v. Biomet, Inc.* 2021 WL 2092785, at *1 (E.D. Mo. May 24, 2021). Relevancy in this context "is to be broadly construed...it encompasses any matter that could bear on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Spring Lake Pork, LLC v. Great Plains Mgmt., LLC*, No. 2:19-CV-18 HEA, 2021 WL 3051902, at *2 (E.D. Mo. July 20, 2021) (citation and quotation omitted). A party may move to compel discovery where another party fails to respond to a discovery request or where the response is evasive or incomplete. FED. R. CIV. P. 37(a)(3)(4).

> The judicial system cannot tolerate litigants who flagrantly refuse to comply with the orders of the court and who refuse to make discovery, for "(d)elay and evasion are added burdens on litigation, causing waste of judicial and legal time, are unfair to the litigants and offend the administration of justice."

*Dependahl v. Falstaff Brewing Corp.*, 84 F.R.D. 416, 419–20 (E.D. Mo. 1979), *aff'd,* 653 F.2d 1208 (8th Cir. 1981) (quoting *Denton v. Mr. Swiss of Missouri, Inc.*, 564 F.2d 236, 241 (8th Cir. 1977)). Aligned with those values, Rule 37 permits a court to impose sanctions where a party does not properly respond to a request under Rule 34. FED. R. CIV. P. 37(d)(1)(A)(ii). In addition to the sanctions set forth in Rule 37(b)(2)(A)(i)-(vi), "the court *must* require the party failing to act, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees,

caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust." FED. R. CIV. P. 37(d)(3) (emphasis added). That the requests are objectionable is not sufficient grounds for failing to comply with the Rules. FED. R. CIV. P. 37(d)(2).

## III. ARGUMENT

### A. Defendants Waived Any Objections to Plaintiffs' 5th RFPs by Not Serving Timely Responses

As an initial matter, Defendants' objections to Plaintiffs' 5th RFPs are waived because their responses were untimely, and Defendants cannot show good cause for their delay.

An objection to a request for production maybe waived if it is not timely raised and good cause for the delay is not shown. *Givens v. St. Louis Cnty.*, No. 4:18-CV-1732-SPM, 2021 WL 6072492, at *3 (E.D. Mo. Dec. 23, 2021) (citing *Parshall v. Menard, Inc.*, No. 4:16-cv-828 CEJ, 2016 WL 7188125, at *1–2 (E.D. Mo. Dec. 16, 2016)).

Plaintiffs served their 5th RFPs on August 12, 2022. Per Rule 34, Defendants' responses were due within 30 days, or by September 12, 2022. Defendants never requested an extension of time and did not serve responses until November 8, 2022—nearly 90 days later. They provided no explanation for this delay, let alone good cause. Therefore, their objections to the 5th RFPs should be deemed waived.

### B. Defendants Continue to Withhold Records They Concede Are Discoverable, Without Good Cause or Explanation for Delay

During the parties' meet and confer, Defendants' counsel promised to produce records responsive to the following requests for production: **6th RFPs: 1, 32, 38, 43, 44; and 5th RFPs: 9.** In making this agreement, Defendants acknowledged that the records sought were relevant and discoverable. To this date, Defendants have not produced these records. They should be compelled to do so.

3

## C. Defendants Refuse to Produce Other Relevant Records, Standing on Unfounded Boilerplate Objections

Defendants stand on boilerplate objections to a number of requests for production that seek records which are relevant and discoverable, and should be produced.

1. <u>Plaintiffs are Entitled to Documents Relating to Investigations into the City Justice Center Jail</u>

> **Requests at Issue:**
> 5th Requests for Production: 3
> 6th Requests for Production: 29, 30

Defendants are improperly withholding records relating to investigations into misconduct at CJC, solely on the basis of boilerplate objections. The records sought are relevant, and responsive to at least three narrowly-tailored requests: (1) documents generated by Correctional Investigators related to the use of OC Spray at CJC from January 1, 2019 through present (**5th RFP, No. 3**); (2) records related to investigations of alleged staff unauthorized and/or excessive force opened from 2019 through present, including records reflecting the outcome of the investigation (**6th RFP, No. 29**); and (3) any communications with state or local authorities, or the United States Government, regarding CJC staff's unauthorized and/or excessive use of force for the past three years (**6th RFP, No. 30**).

There is no question that documents related to any investigation of the City Justice Center jail bearing on issues pled by Plaintiffs are relevant, proportional, and even imperative discovery. That of course includes the use of chemical agents, the practice of shutting off detainees' access to water, and excessive use of force. But it also includes investigations of matters that might have been the cause of increased use of Chemical Agents, like an investigation into broken locks or understaffing at the jail. Such investigations go to notice of the *Monell* policy maker and are also evidence of a pattern and practice, which can establish liability by demonstrating that the City "had notice that its procedures were inadequate and likely to result in a violation of constitutional

4

rights." *Parrish v. Ball*, 594 F.3d 993, 998 (8th Cir. 2010). It can also establish liability due to Defendants' failure to investigate similar misconduct.

Indeed, courts have explicitly noted that investigative records like these are directly relevant to Monell claims. *See, e.g., Hicks-Fields v. Harris Cnty., Texas*, 860 F.3d 803, 809–10 (5th Cir. 2017) (discussing admissibility of DOJ report regarding conditions at subject jail); *Daniel v. Cook Cnty.*, 833 F.3d 728, 742 (7th Cir. 2016) (same). The Seventh Circuit offered an insightful analysis of not just the relevance of such records, but the significant evidentiary weight they deserve:

> There is a close fit between the factual and legal issues in a *Monell* claim based on a jail or prison's health care failings and this [DOJ] Report. As noted above, a plaintiff cannot ultimately prove a *Monell* claim at trial based on only his own case or even a handful of others. He must show systemic failings that reflect official deliberate indifference to the serious health needs of inmates. That is intended to be a demanding standard, and it is difficult, time-consuming, and expensive for most private plaintiffs to meet. Yet such systemic failings are exactly what the Department of Justice experts were looking for and found in Cook County. Compared to other forms of evidence of the overall quality of the jail's health care system, the Department of Justice Report seems likely to deserve considerable weight.

833 F.3d at 742.

Further, these requests are proportionate to the needs of the case. In addition to their likely significant evidentiary value, the requests are limited to a reasonable and relatively short timeframe of less than five years. Because of the importance of these records and in light of the narrow framing of the requests, Defendants should be compelled to produce records responsive to **Requests No. 3 (5th RFP)** and **29-30 (6th RFPs).**

2. <u>Plaintiffs are Entitled to Documents Relating to Jail Operations to Help Assess What Led to the Increased Use of OC Spray at the City Justice Center Jail</u>

> **Requests at Issue:**
> 5th Requests for Production: 4
> 6th Requests for Production: 9-28, 33

Plaintiffs are still attempting to get basic records regarding the use of OC spray at CJC, including IJMS entries on dates when staff were known to have deployed OC spray on detainees. **Plaintiffs' 5th RFP, Request No. 4,** specifically asked for these IJMS entries from four specific dates: December 14, 2020; December 18, 2020; February 3, 2021; and February 9, 2021. *See* Exh. 3. During depositions conducted in this case, and in the press, the City has often cited to staffing issues in defense of the conditions of confinement at CJC. Indeed, Defendants cite this in support of some of their discovery objections. *See, e.g., id*. at Request No. 3. Since staffing and capacity issues appear to be part of the defenses raised in this case, Plaintiffs are permitted to conduct discovery into these issues, and what connection (if any) they have to the use of OC spray at the jail. These factors are what many of Plaintiffs' 6th RFPs focus on—and specifically, **Nos. 9-28 and 33 (6th RFPs).** *See* Exh. 4. Because these records are relevant to the claims and defenses at issue in this case, they are discoverable.

Defendants respond to Requests Nos. 9-28 and 33 with the same boilerplate objection: "request is vague, ambiguous, and unduly burdensome." *See id*. Defendants do not identify what terms or phrases are ambiguous, and were not able to provide any additional specificity or clarification regarding these objections at the parties' meet and confer. Nor have Defendants specified what about producing records such as post orders, employment vacancies during discrete years, or admission and length of stay data, would impose an undue burden. Plaintiffs suspect these objections are without merit. But, in any event, they are insufficient as stated, and Defendants should be compelled to provide full responses to **Requests Nos. 9-28 and 33 (6th RFPs)**. *See SI03,*

6

*Inc. v. Musclegen Rsch., Inc.*, 1:16-CV-274 RLW, 2020 WL 6544261, at *3 (E.D. Mo. Nov. 6, 2020) (boilerplate objections are not proper); *Vallejo v. Amgen, Inc*., 903 F.3d 733, 743 (8th Cir. 2018) (citation omitted) ("A party claiming requests are unduly burdensome cannot make conclusory allegations, but must provide some evidence regarding the time or expense required.").

Similarly, Defendants should be compelled to produce IJMS entries from four specific dates: December 14, 2020; December 18, 2020; February 3, 2021; and February 9, 2021. **Request No. 4 (5th RFP).** Defendants have refused to produce these records, claiming that Request No. 4 is objectionable on these bases:

> unduly burdensome, vague, ambiguous, does not request topics of entries and a blatant fishing expedition with no purpose other than abuse the discovery process. Defendants have provided all IJMS entries that relate to the named Plaintiffs. The information that they are requesting would encompass every detainee in the entire facility on those dates and serves no purpose other than to harass Defendants.

Exh. 3 at 2. These objections are without merit.

*First*, this Request is not vague or ambiguous. It references four specific dates in time, and asks for journal entries in Defendants' IJMS system. There is no mystery what IJMS is; multiple witnesses have testified regarding notations in the IJMS system. The City's 30(b)(6) designee described IJMS thusly:

> It's the database recordkeeping, record management system for the Division of Corrections that through which information relating to the detainees, their healthcare, incidents and events of various kinds are recorded, and now the use of force reporting as specified under the policies and procedures is entered into for recordkeeping purposes.

Roth Dec. 20, 2022 Depo, attached hereto as **Exhibit 5**, at 39:10-18. Given the specificity of Plaintiffs' Request No. 4, Defendants cannot in good faith claim it is vague or ambiguous.

7

*Second*, this Request is not unduly burdensome, nor is it a "fishing expedition." The four dates enumerated in Request No. 4 are dates on which Plaintiffs allege Defendants deployed excessive force against the named plaintiffs or other people detained at the jail:

- On **December 14, 2020**, Derrick Jones was needlessly maced in the face. *See* Third Amd. Compl. (Doc. 131) at ¶ 2.

- On **February 3, 2021**, Darnell Rusan was maced again by CJC staff, and left fully nude in a small visiting room, with an excessive amount of mace, for hours. *Id*. at ¶ 58-62.

- On **February 9, 2021**, Jerome Jones was placed in a small, secure visiting room. Without warning, jail staff sprayed the room with copious amounts of mace. They left Jerome in the mace-filled room, asking for help and shouting that he could not breathe, for nearly half an hour. *Id*. at ¶ 2.

In one instance, Plaintiffs sought IJMS entries for the day prior to Defendants' assault on Plaintiff Darnell Rusan, with the goal of collecting relevant evidence of events leading up to the deployment of OC Spray on him. Third Amd. Compl. at ¶ 47.

This Request simply asks for journal entries on these four specific dates. It is aimed at gathering evidence relevant to Defendants' use of force on these dates. Defendants have not offered any evidence regarding the purported burden it would take to pull these journal entries. Indeed, they have produced IJMS entries (or portions thereof) previously in this litigation. There is no reason they cannot produce those records here, and they should be compelled to do so.

3. Plaintiffs are Entitled to Relevant *Monell* Documents Relating to Non-Defendants Officers' Use of Force and Discipline

**Requests at Issue:**
5th Requests for Production: 10,11
6th Requests for Production: 2, 5

Defendants also refuse to produce certain responsive records related to the discipline of non-defendant officers. These materials should be compelled because they are relevant to Plaintiffs' *Monell* claims.

8

Plaintiffs specifically allege that, "supervisory staff, including Superintendent Barnes and Commissioner of Corrections Clemons-Abdullah are aware of these unconstitutional practices and violations of written policy, but are deliberately indifferent to these unconstitutional practices and have not taken adequate steps to reprimand, discipline, or train staff who are responsible for the violations described" in the Complaint. Third Amd. Compl. (Doc. 131) at ¶ 90-95. Plaintiffs further allege that, "In the exceedingly rare instance that a supervisor notes issues with the force used, it does not result in any consequences for the officers." *Id*. at ¶ 94. Depositions in this case have bolstered these allegations or, worse, evidenced a culture of cover-up in instances of staff misconduct.

To be clear, Plaintiffs are not requesting personnel files for every officer involved in a use of force incident at CJC. To the contrary, Plaintiffs' requests are more narrowly tailored, and seek specific disciplinary records related to the use of OC Spray over a finite period of time:

- **5th RFP, No. 10:** "All documents (including communications) related to the demotion of Tonya Harry from Major to Captain."

- **5th RFP, No. 11:** "All documents (including communications) regarding Defendant Fowlkes' claim that Tonya harry "tried to generate a false narrative" in his 2021 performance evaluation (see Fowlkes Depo at 258:16-261:9).

- **6th RFP, No. 2:** "Any and all Employee Action Reports[1] for the past three years that have to do with the use of OC Spray." EARs are a form of official discipline against a CJC employee, and can only be issued by the Commissioner or Deputy Commissioner of Corrections.

- **6th RFP, No. 5:** "Any and all records related to the disciplinary proceedings associated with Adrian Barnes from 2020 through the present date."

Each of these categories of records relates to the Defendants' failure to properly supervise or discipline employees for excessive use of force at CJC. Responsive records are directly relevant

---

[1] Adrian Barnes described Employee Action Reports (EARs) at his 10/12/2022 deposition. A copy of this relevant testimony was attached to Plaintiffs' 6th RFPs.

to Plaintiffs' Monell claims regarding the use of OC spray at the jail. *See* Third Amd. Compl. (Doc. 131) at ¶¶ 90-94, 158(h), 192.

Without dispute, these records are relevant given the systemic nature of Plaintiffs' claims and the pervasive use of OC spray by staff at CJC. Employment Action Reports relating to the excessive use of OC Spray, or the lack of such Reports, are relevant to whether Defendant City received meritorious complaints of similar misconduct and had a practice of ignoring those similar complaints, in order to establish *Monell* liability. *Webb v. City of Waterloo*, No. 17-CV-2001-CJW-MAR, 2020 WL 1159755, at *11 (N.D. Iowa Mar. 10, 2020); *see also Whitley v. McClain*, 4:13–CV–994 (CEJ), 2014 WL 1400178, at *3 (E.D. Mo. Apr. 10, 2014) (ordering production of disciplinary records and personnel files for police officers to the extent the records related to misconduct similar to that alleged in the complaint); *Noce v. City of Webster Groves*, 4:10-cv-2363, 2013 WL 4620662, at *3 (E.D. Mo. Aug. 29, 2013) (ordering the production of a personnel file of a Defendant officer in a civil rights suit); *Schweppe v. City of Pine Lawn*, 2018 WL 623595 (E.D. Mo. Jan. 30, 2018) (ordering the production of the entire personnel file from Defendant officer's prior police employer); *see also* FED. R. EVID. 404(b). Evidence of previous misconduct similar to the kind pled by Plaintiffs is evidence of a widespread and persistent unconstitutional misconduct. *See Ware v. Jackson Cty., Mo.*, 150 F.3d 873, 880 (8th Cir. 1998); *see also Leonard v. St. Charles County*, 4:19-CV-927-RLW, 2020 WL 3605625, at *3 (E.D. Mo. July 2, 2020) (ordering St. Charles County to produce information "related to any claims of unreasonable physical force, pepper spray, turning off cameras, failure to timely take inmates for their initial appearance before a judge, improper medical screening, failure to communicate medical conditions to other staff, failure to allow inmates to make their telephone call" for the previous five years). This potential evidence of other similar misconduct is discoverable.

Similarly, any disciplinary proceedings to which Officer Barnes or Harry were subject are relevant because they illustrate the City's willingness (or lack thereof) to investigate, supervise, and discipline officers for use of force misconduct. This is especially the case for Officer Barnes, who was allegedly disciplined for attempting to put an officer on leave for repeatedly punching a detainee in the halls of the City Justice Center. A failure to investigate and discipline previous officer misconduct relating to the use of excessive force is one way to support a *Monell* custom claim in part because it establishes that Defendant City allowed systemic abuse to occur. *Mettler v. Whitledge*, 165 F.3d 1197, 1205 (8th Cir. 1999) ("Evidence that a police department has failed to investigate previous incidents similar to the incident in question may support a finding that a municipal custom exists, and that such a custom encourages or allows officers to use excessive force without concern for punishment."); *see also Whitley*, 2014 WL 1400178 at *3 ("discipline for misconduct similar to that alleged in this instant complaint…are relevant to that claim)

Defendants object to disclosure of these records on the basis that they are closed records per City Ordinance 61952 and Administrative Regulation 145. Exh. 3 at 3. Those authorities govern the public's access to governmental records under Missouri's Sunshine law. They do not govern the scope of permissible discovery, which is, by definition, broader. Rule 26 permits discovery into any non-privileged matter relevant to the claims or defenses in the case and proportional to the needs of the case. FED. R. CIV. P. 26(b)(1). These records are discoverable. Indeed, this Court and the Eighth Circuit have both held that record such as those requested here (**5th RFP, Requests 10-11; 6th RFP, Requests 2 and 5**) are relevant to *Monell* claims. *See supra*. This objection does not justify Defendants withholding responsive records.

Nor does Defendants' objection that Tonya Harry is not a party to this matter. As discussed throughout this motion, Plaintiffs' claims are systemic in nature. Plaintiffs allege that OC Spray is

used in an unconstitutional manner not just by the named defendants, but as a matter of practice and custom throughout CJC. These allegations implicate all jail staff. Furthermore, at their core, Requests 10-11 go to allegations of misconduct by a named defendant, Fowlkes. Request 11 seeks records related to a "false" performance evaluation by Harry in which she criticized Fowlkes (**and has either been withheld or destroyed**), and Request 10 seeks records related to her subsequent demotion from Major to Captain. These records relate to Fowlkes' misconduct, and Defendants' failure to supervise or discipline staff for misconduct. Indeed, the records go to Defendants' willingness to **protect** officers who engage in misconduct. Defendants should be compelled to produce all records responsive to **5th RFP, Requests 10-11, and 6th RFP, Requests 2 and 5**.

4. <u>Plaintiffs Are Entitled to Documents Relating Correctional Response to Medical Concerns about the use of Chemical Agents</u>

| **Requests at Issue:** |
|---|
| 6th Requests for Production: 7-8 |

Defendants also should be compelled to produce agendas, meeting minutes, and notes from leadership meetings that were conducted at CJC over the past three years. These records are requested in Plaintiffs' **6th RFP, Nos. 7-8**, and specifically refer to Barnes' deposition testimony where he discussed Monthly Custody Supervisors' meetings and "MAC meetings." Defendants object that these requests are vague, ambiguous, and unduly burdensome. *See* Exh. 4.

Requests 7 and 8 are not vague or ambiguous. They use exact terminology borrowed from CJC staff testimony, and even include citations to specific pages of deposition testimony where MAC and Monthly Custody Supervisors' meetings are discussed. These requests are not unduly burdensome. They seek meeting agendas, minutes, and notes for two specific kinds of leadership meetings over only a three-year time period.

On balance, the records sought are well within the scope of permissible discovery given the needs of the case, including that Plaintiffs have asserted class-wide and *Monell* claims. Barnes

12

testified that concerns about detainees' medical conditions would be shared at the MAC meetings, and that security-related issues are discussed at Monthly Custody Supervisors' meetings. These are leadership meetings. Responsive records will address key questions such as: who in leadership knew what, when, and what remedial steps did they take? Therefore, the records requested in Plaintiffs' 6th RFP, Nos. 7-8 are relevant and discoverable.

> 5. <u>Plaintiffs Are Entitled to Documents About Jail Specificities that Would Help Inform the Harm Suffered by Individual Defendants and Putative Class Members</u>

**Requests at Issue:**
5th Requests for Production: 12, 13, 14

Lastly, Defendants should be compelled to produce records regarding three physical spaces where OC Spray is often used at CJC: visiting booths (5th RFP, No. 12), cells (No. 13), and housing units (No. 14). Defendants object that these requests are vague, and have not produced any responsive records. *See* Exh. 3.

At the parties' meet and confer, Plaintiffs' counsel explained the importance of understanding the size and dimensions of places where Plaintiffs and putative class members were subject to attacks by OC spray. This information could be obtained through an inspection of CJC, but Defendants refuse to permit Plaintiffs to inspect the jail and the Request to Inspect remains the subject of a motion to compel (Doc. 233). In the spirit of compromise, Plaintiffs' counsel asked Defendants to produce plans of these general areas, and indicated they would agree to an attorneys' eyes only designation for those schematics. Defendants still have not produced these records, despite acknowledging their relevance.

In assessing the risk presented to people detained at CJC when they are exposed to OC Spray, it is important to consider the amount deployed against the person detained, the duration of exposure, and the physical space in which OC Spray was deployed (especially the presence or lack of ventilation). Many spaces in CJC are small, secure, and poorly ventilated. Ascertaining the

13

dimensions of spaces where OC Spray is deployed is an important part of Plaintiffs' case. These records are especially important for Plaintiffs' expert(s) to consider, who must produce written reports by February 6, 2023. Defendants should be compelled to produce these relevant and responsive records.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Court enter an order:

(1) Deeming Defendants' objections to Plaintiffs' Fifth Set of Requests for Production untimely and therefore waived;

(2) Compelling Defendants to produce all records in their possession, custody, or control which are responsive to the following requests, within 14 days:

    a. Plaintiffs' Fifth Set of Requests for Production, Requests Nos. 3, 4, and 10-14;

    b. Plaintiffs' Sixth Set of Requests for Production, Requests Nos. 1, 2, 5, 7-9, 28-30, 32, 33, 38, 43, and 44;

(3) Granting Plaintiffs' reasonable attorneys' fees incurred in bringing this motion; and

(4) Granting such other relief as is just and appropriate under the circumstances.

Dated: January 27, 2023

Respectfully submitted,

By: */s/ Amy E. Breihan*
Amy E. Breihan (MBE #65499MO)
W. Patrick Mobley (MBE #63636MO)
Shubra Ohri (E.D. Mo. Bar No. 63098241L)
906 Olive Street, Suite 420
Saint Louis, Missouri 63101
RODERICK & SOLANGE MACARTHUR JUSTICE CENTER

*/s/Maureen Hanlon (w/ consent)*
Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
Maureen Hanlon (MBE #70990MO)
Brittney Watkins (MBE #73992MO)

Nathaniel R. Carroll (MBE #67988MO)
440 N. 4th Street, Suite 390
Saint Louis, MO 63102
ARCHCITY DEFENDERS, INC.

*/s/Brendan Roediger (w/ consent)*
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
SAINT LOUIS UNIVERSITY SCHOOL OF LAW
LEGAL CLINICS

*/s/Oren Nimni (w/consent)*
Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
RIGHTS BEHIND BARS

*Attorneys for the Plaintiffs*