# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MISSOURI
# EASTERN DIVISION

| | | |
|---|---|---|
| **DERRICK JONES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21CV600 HEA** |
| | ) | |
| **CITY OF ST. LOUIS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION, MEMORANDUM AND ORDER

Defendants have filed  Motions to Dismiss Plaintiffs' Third Amended

Complaint as to Defendants City of St. Louis, Javan Fowlkes, Aisha Turner,

Dirrell Alexander, Freddie Wills, Douglas Jones, and Bruce Borders [Doc. No.

139] and Defendant Sherry Richards [Doc. No. 167].[1] Plaintiffs oppose the

motions.  For the reasons set forth below, the Motions will be denied.

### Facts and Background

On May 24, 2021, Plaintiffs Derrick Jones, Jerome Jones and Darnell Rusan

initiated this 42 U.S.C. § 1983 action against the City of St. Louis and certain

employees of the St. Louis City Justice Center (CJC). On June 21, 2021, Plaintiffs

---

[1] On July 20, 2022, Plaintiffs filed a Motion for Default Judgment because Defendant Sherry Richard had failed to respond. The next day, counsel for Defendants filed an entry of appearance for Defendant Richards. Defendant Richards then filed her Motion to Dismiss separately due to the response delay, but raises nearly identical arguments as those raised by the other individual Defendants. Therefore, the Court will address both motions.

filed their First Amended Complaint, which Defendants moved to dismiss Counts

One through Four and Count Six for failure to state a claim.

On January 13, 2022, the Court[2] granted in part and denied in part

Defendants' Motion to Dismiss. The Court dismissed Plaintiffs' claims against two

defendants who were sued in their official capacity '

but denied Defendants' Motion in all other respects.

On May 6, 2022, Plaintiffs filed their Second Amended Complaint and

identified Bruce Borders and Sherry Richards, who were previously "Doe

Defendants," and added class-wide causes of action, additional facts, and Douglas

Jones as individual defendants. Plaintiffs also added Marrell Withers as a named

Plaintiff and representative for the putative class and proposed medical subclass.

On June 10, 2022, Plaintiffs filed a Third Amended Complaint, to identify

the "Doe Defendants" as to Plaintiff Withers claims. Plaintiff's Third Amended

Complaint alleges the following 42 U.S.C. § 1983 claims against the individual

defendants in violation of the Fourteenth Amendment: Defendants Sherry Richard

and Javan Fowlkes for spraying Plaintiff Derrick Jones with an excessive amount

of mace (Count I); Defendant Fowlkes for spraying Plaintiff Jerome Jones with an

excessive amount of mace (Count II); Defendants Aihsa Turner, Direll Alexander,

Bruce Borders and Fowlkes for spraying Plaintiff Darnell Rusan with an excessive

---

[2] United States District Judge Jean C. Hamilton initially presided over this case. On March 15, 2022, it was reassigned to this Court.

amount of mace (Count III); Defendants Freddie Willis and Douglas Jones for

spraying Plaintiff Marrell Withers with an excessive amount of mace (Count IV);

and Defendants Fowlkes and John Doe for conditions of confinement amounting to

punishment by shutting off water to Plaintiffs Derrick Jones and Jerome Jones cells

(Count IX).

The *Monell* Claims are alleged in Count VI (Excessive Force/Mace) and

Count X (Conditions of Confinement/Water Deprivation) against Defendant City

of St. Louis.

The remaining counts are against Defendant City of St. Louis for the

following: Class Actions claims under § 1983 (Counts V and XI); Class Action

claim for violation of the Americans with Disabilities Act (ADA) (Count VII); and

Plaintiffs' (Withers and Rusan) claim for damages for ADA violation (Count VIII).

Plaintiffs' Motion to Certify Class is pending before this Court.

Plaintiffs' Third Amended Complaint,[3] in pertinent part, alleges the

following:

Plaintiffs are all pretrial detainees who allege that while held in the CJC,

they were maced without warning or provocation, and for the purpose of inflicting

punishment or pain, rather than for security reasons. Plaintiffs also allege that they

---

[3] For purposes of this Order only, the allegations in the Complaint are taken as true. *McShane Constr. Co., LLC v. Gotham Ins. Co.*, 867 F.3d 923, 927 (8th Cir. 2017). This in no way relieves the parties of the necessary proof thereof in any later proceedings.

were deprived of the means or ability to remove the chemical residue for excessive periods of time.

On December 14, 2020, Plaintiff Derrick Jones alleges that he asked to transfer cells because his cellmate was exhibiting symptoms of COVID-19. In response, Defendant Lieutenant Sherry Richards told him he would have to stay in the cell with an infected cellmate, and shortly after, maced him in the eyes and face without warning. Then, Defendant Richards and seven other officers kicked and punched him in the head and placed him in handcuffs. While he was still restrained on the floor, he was maced by Defendant Fowlkes, and left in a cell to "marinate" in the chemical spray for approximately twenty minutes. After that, medical staff washed out his eyes, but he was taken to solitary and kept for eight days without a shower, even though the chemicals from the macing were still on his skin and clothing, causing pain and discomfort. Plaintiff Derrick Jones alleges that he was not acting aggressively and was not threatening staff safety throughout the encounter.

On February 9, 2021, Plaintiff Jerome Jones alleges that after he refused to move cells, he was handcuffed and placed in a small, mace-filled room for approximately twenty-five minutes while his eyes, face, and body were burning from being soaked in mace. He also alleges that he was denied medical attention, had trouble breathing for weeks due to the incident, and continues to experience

respiratory distress that he attributes to the macing. He alleges that he was not physically resisting at any time during the encounter.

Plaintiff Darnell Rusan, who is prone to epileptic seizures, alleges he was maced excessively three times without warning. Two of the macings occurred on December 19, 2020, after CJC staff told him that he had a bad attitude. The third macing occurred on February 3, 2021 with no warning, and afterwards, he was locked in a mace-filled visiting room for hours while fully nude.

On January 7, 2022, Plaintiff Marrell Withers, who has asthma, alleges he was maced twice after not wanting to be transferred, expressing fear of being exposed to COVID-19. During the macing, he alleges he was in handcuffs and not physically resisting. Afterwards, he was taken to the medical unit, but not given a shower or change of clothes.

Plaintiffs allege in Count Six, a *Monell* claim, that the instances explained above are part of a widespread pattern and practice in the CJC that employees use mace to inflict pain and suffering on detainees without cause or warning, often on detainees who are passive, restrained, or confined.

Plaintiffs also allege a *Monell* claim in Count Ten that Defendant City of St. Louis has unconstitutional policies or customs of depriving inmates of water in the CJC. Plaintiffs allege this practice of depriving detainees of water to their cells occurs for hours or sometimes days at a time in order to punish and harm detainees for infractions such as talking back, banging on cell doors, or having an "attitude"

with staff. Plaintiffs allege that they were subjected to regular deprivations of drinking water and water for toilets when there was no valid security justification for doing so. For instance, on February 6, 2021, after a detainee uprising to protest inhumane conditions, CJC employees moved several detainees, including Plaintiff Jerome Jones, to the fifth floor and cut off the water supply to all the cells on that level. Plaintiffs claim that that the detainees had not intentionally flooded their cells or threatened to do so and were without water to drink or to flush toilets for several days, during which time they were also denied meals or other liquids to drink. Because of the inability to flush, several toilets on that floor overflowed, leaving the floors of the level covered with excrement and urine for at least three days. The water shut-offs led to dehydration, headaches, stress, anxiety, and stomach discomfort. Similar water shut-offs occurred periodically after the February 2021 incident, including in March, April, and May of 2021. Plaintiffs allege that this incident, and similar water shut-offs, were not the result of any equipment failure, plumbing issue, or maintenance related reason, but were done to punish detainees.

Plaintiffs class action allegations bring this suit on their own behalf and on behalf of all individuals who currently are or will be detained at the St. Louis City Justice Center and who are at risk of being subjected to the widespread practice of excessive force and water shut offs described above. The Medical Subclass, for the alleged violation of the ADA, is defined as all qualifying individuals who are or

will be detained at CJC and who have a disability that makes them particularly susceptible to serious harm from chemical agents. Plaintiffs Withers and Rusan also bring a claim for damages for the ADA violations.

Plaintiffs request compensatory damages, costs and attorneys' fees, punitive damages against each of the Individual Defendants in their individual capacities, and further additional relief as this Court may deem just and appropriate.

Plaintiffs also pray this Court enter judgment in their favor against the City of St. Louis and enter an order against Defendant City of St. Louis, prohibiting the unconstitutional use of chemical agents and practice of water shut-offs and deprivation as punishment going forward, and for such further additional relief as this Court may deem just and appropriate.

Defendants move to dismiss Plaintiffs' Third Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).

## Legal Standard

Federal Rule of Civil Procedure 8(a) requires that a pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R .Civ. P. 8(a)(2). If a pleading fails to state a claim upon which relief can be granted, an opposing party may move to dismiss it. *See* Fed. R. Civ. P. 12(b)(6). The purpose of a Rule 12(b)(6) motion to dismiss for failure to state a claim is to test the legal sufficiency of a complaint to eliminate those actions "which are fatally flawed in their legal premises and deigned to fail, thereby sparing the

litigants the burden of unnecessary pretrial and trial activity." *Young v. City of St. Charles*, 244 F.3d 623, 627 (8th Cir. 2001).

To survive a motion to dismiss for failure to state a claim, Plaintiffs' allegations must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This Court "grants all reasonable inferences to the non-moving party." *Park Irmat Drug Corp. v. Express Scripts Holding Co*., 911 F.3d 505, 512 (8th Cir. 2018) (citations omitted). A claim is facially plausible when "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly*, 550 U.S. at 555, quoting *Iqbal,* 556 U.S. at 662. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft*, 566 U.S. at 678, quoting *Twombly*, 550 U.S. at 556. A court must "draw on its judicial experience and common sense," and consider the plausibility of Plaintiffs' claim as a whole, not the plausibility of each individual allegation. *Zoltek Corp. v. Structural Polymer Grp.,* 592 F.3d 893, 896 n.4 (8th Cir. 2010), quoting *Iqbal*, 556 U.S. at 679.

## Discussion

Excessive Force Claims

8

Defendants assert that Counts One through Four of the Third Amended Complaint, alleging excessive force by individual officers in violation of the Fourteenth Amendment, must be dismissed for failure to state a claim because Plaintiffs have alleged no more than *de minimus* force and injuries, and because they are entitled to qualified immunity on these claims. As to Count One through Three, the Court already concluded in its January 13, 2022 Order that these excessive force claims are sufficient to state a claim. *See* Doc. No. 52 at 7. Although Plaintiffs have filed a Third Amended Complaint since that Order, the underlying factual basis remains, and Defendants' arguments are virtually the same. Therefore, the Court will not re-address Counts One through Three. As to Count Four, the Court concludes this excessive force claim is sufficient to state a claim for the reasons set forth below.

The Due Process Clause protects pretrial detainees from the use of excessive force amounting to punishment. *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2473 (2015); *See also, Bell v. Wolfish*, 441 U.S. 520, 535 (1979) (stating that "under the Due Process Clause, a detainee may not be punished prior to an adjudication of guilt in accordance with due process of law"); and *Smith v. Conway Cty., Ark.,* 759 F.3d 853, 858 (8th Cir. 2014) (stating that "the Due Process Clause prohibits any punishment of a pretrial detainee, be that punishment cruel-and-unusual or not"). Analysis of excessive force claims under the Due Process Clause focuses on whether the defendant's purpose in using force was "to injure, punish, or discipline

the detainee." *Edwards v. Byrd*, 750 F.3d 728, 732 (8th Cir. 2014). The Fourteenth Amendment gives state pretrial detainees "rights which are at least as great as the Eighth Amendment protections available to a convicted prisoner." *Walton v. Dawson*, 752 F.3d 1109, 1117 (8th Cir. 2014). Indeed, pretrial detainees are afforded greater protection than convicted inmates in the sense that the Due Process Clause prohibits the detainee from being punished. *Id.*

Count Four of the Third Amended Complaint alleges that Plaintiff Withers expressed his fear of being transferred due to COVID-19, and Defendant Wills instructed Defendant Douglas Jones to mace him. Plaintiff Withers begged them not to mace him because has asthma. Defendant Douglas Jones proceeded to mace him in the face, then Defendant Wills yelled that the mace had not worked and instructed to mace him again. Plaintiff Withers was then maced a second time. Plaintiff Withers alleges he was in handcuffs and not physically resisting during the macings. Afterwards, he was taken to the medical unit, but not given a shower or change of clothes.

The allegations in Count Four are sufficient at this stage to state a claim that Defendants violated Plaintiff Wither's right to be free from excessive force, but the inquiry does not end there. To overcome qualified immunity, Plaintiff Withers must present facts to show not only (1) that the officer[s'] conduct violated a constitutional right, but (2) that the right was clearly established at the time of the alleged violation. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

Defendants argue that some minimum level of injury is required to establish the violation of a constitutional right. Defendants assert that Plaintiff Withers did not suffer a *de minimus* injury, which precludes a claim of excessive force. However, it is clearly established that the unreasonableness of the force used, not the nature of the injury, is the relevant inquiry. *Chambers v. Pennycock*, 641 F.3d 989, 906 (8th Cir. 2011).

The Eighth Circuit has repeatedly found that excessive macing can be objectively unreasonable even when only *de minimus* injury occurred. "Even when officers are justified in using some force, they violate [the] suspects' Fourth Amendment rights if they use unreasonable amounts of force." *Tatum v. Robinson*, 858 F.3d 544, 550 (8th Cir. 2017) (finding use of pepper spray unreasonable, even when Plaintiff was actively arguing with officer when he deployed the pepper spray, because a reasonable officer would not have viewed Plaintiff as an immediate threat); *See also, Treats v. Morgan,* 308 F.3d 868, 872-73 (8th Cir. 2002) (holding use of pepper spray in response to a non-recalcitrant incarcerated person constitutes an excessive use of force, whether or not the macing caused only *de minimus* injury); *Bauer v. Norris*, 713 F.2d 408, 42 (8th Cir. 1983) ("The use of force by officers simply because a suspect is argumentative, contentious, or vituperative is not to be condoned."); and, *Krout v. Goemmer*, 83 F.3d 557, 566 (8th Cir. 2009) ("The use of . . . gratuitous force against a suspect who is handcuffed, not resisting, and fully subdued is objectively unreasonable.").

The Court finds that Plaintiff Wither's right to be free from excessive force in the alleged circumstances was clearly established, and Defendants are not presently entitled to qualified immunity on the excessive force claim.

Widespread Custom or Policy

Defendants next attack, for a second time, Plaintiffs' *Monell* claims (Counts Six and Ten) alleging that the City has unconstitutional policies or customs of depriving inmates of water in the St. Louis City Justice Center and spraying excessive mace on compliant inmates without warning. Defendants argue Counts Six and Ten should be dismissed because Plaintiffs have failed to show the existence of a widespread custom or policy condoning use of excessive force or deprivation of water and inhumane housing conditions.

As noted by the Court's Order, dated January 13, 2022, addressing Defendants' previous Motion to Dismiss on the same arguments:

> The amended complaint alleges numerous instances of excessive macing and water deprivation, and clearly alleges that the practices are widespread and customarily used as forms of punishment at the Justice Center. Plaintiffs allege months of routine uses of excessive force and water deprivation intended to inflict suffering on detainees in violation of the Fourteenth Amendment. The Court finds that Plaintiffs have pleaded facts claim of municipal liability under § 1983, which is all that is required at this early stage in the proceedings. See *Fant v. The City of Ferguson*, No. 4:15-cv-00253-AGF, 2016 WL 6696065, at *6 (E.D. Mo. Nov. 15, 2016) (citing *Johnson v. City of Philadelphia*, No. 13-cv-02963, 2013 WL 4014565, at *3 (E.D. Pa. Aug. 7, 2013) (city's policies and procedures, or lack thereof, are fact-sensitive issues that can be addressed in later proceedings)).

Doc. No. 52 at 11-12.

Plaintiffs may have amended their complaint since the Court's previous Order, but the underlying factual basis remains. This argument has already been decided, and Defendants' motion to dismiss will be denied as to Counts Six and Ten.

Injunctive Relief

Defendants argue Counts Five through Seven and Nine through Eleven fail to state a claim for injunctive relief and ask the Court to dismiss such relief. Plaintiffs request the Court enter judgment in their favor against Defendant City of St. Louis and enter an order against it, prohibiting the unconstitutional use of chemical agents and practice of water shut-offs and deprivation as punishment going forward, and for such further additional relief as this Court may deem just and appropriate. Defendants do not provide any case law to support their request and only cite to the Court's obligations under the Prisoner Ligation Reform Act (PLRA).

The PLRA states:

> Prospective relief in any civil action with respect to prison conditions shall extend no further than necessary to correct the violation of the Federal right of a particular plaintiff or plaintiffs. The court shall not grant or approve any prospective relief unless the court finds that such relief is narrowly drawn, extends no further than necessary to correct the violation of the Federal right, and is the least intrusive means necessary to correct the violation of the Federal right. The court shall give substantive weight to any adverse impact on public safety or the operation of a criminal justice system caused by the relief.

18 U.S.C. § 3626(a)(1)(A).

The Court is aware of its duty under the PLRA and further finds Defendants request to be premature and inappropriate at this stage of this case.

Class Certification

Defendants argue that Plaintiffs fail to state a claim in Counts Five and Seven for class certification.

"[T]he propriety of class action status can seldom be determined on the basis of the pleadings alone." *Walker v. World Tire Corp.,* 563 F.2d 918, 921 (8th Cir. 1977). Instead, the district court "must have before it "sufficient material ... to determine the nature of the allegations, and rule on compliance with the Rule's requirements ..." *Id.* (internal citation omitted); *See also*, *Nobles v. State Farm Mut. Auto. Ins. Co.*, 2012 WL 4090347, at *n.1 (W.D. Mo. Sept. 17, 2012) ("While the Eighth Circuit has not yet set the standard explicitly, the weight of authority indicates that courts should meet motions to dismiss class allegations at the 12(b)(6) stage with a great deal of skepticism.").

Defendants attack on these class action claims is premature and largely based on arguments pursuant to Federal Rule of Civil Procedure 23, not Rule 12(b)(6). Plaintiffs' Motion to Certify Class is pending before this Court. Defendants have filed their response in opposition. The Court will address the issue of Class Certification in a separate Order.

<u>Americans With Disabilities Act Claim</u>

Lastly, Defendants argue that Plaintiffs fail to state a claim in Counts Seven and Eight for violations of the ADA because Plaintiffs do not plead that "the exercise of force, excessive or otherwise, or the punitive shutting off of water constitutes a service, program, or activity of the City Justice Center under the ADA." Defendants do not provide any authority for their argument.

Congress enacted the ADA to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b). Congress noted that "discrimination against individuals with disabilities persists in such critical areas as ... transportation ... institutionalization ... and access to public services" and that disabled individuals face the discriminatory effects of "failure to make modifications to existing facilities and practices." *Id.* § 12101(a). Title II of the ADA prohibits discrimination in the services of public entities. 42 U.S.C. § 12132. "[N]o qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." *Id.* The statute defines the term "qualified individual with a disability" to include anyone with a disability "who, with or without reasonable modifications to rules, policies, or practices, the removal of architectural, communication, or transportation barriers, or the provision of auxiliary aids and services, meets the essential eligibility requirements

for the receipt of services or the participation in programs or activities provided by a public entity." *Id.* § 12131(2). State prisons and prisoners are included within the coverage of Title II. *Pa. Dep't of Corr. v. Yeskey*, 524 U.S. 206, 209–10 (1998). To state a claim under Title II, an inmate must allege that he is a qualified individual with a disability and that because of his disability, he was excluded from participation in or denied benefits of the prison's services, programs, or activities. *Rinehart v. Weitzell*, 964 F.3d 684, 688 (8th Cir. 2020). Covered programs or services do not need to be voluntary, for "the words [of the statute] do not connote voluntariness." *Yeskey*, 524 U.S. at 211.

Plaintiffs allege Defendant City of St. Louis has a widespread practice of macing detainees without warning or provocation, and for the purpose of inflicting punishment or pain. Plaintiffs also allege that Defendant City of St. Louis failed to provide reasonable accommodation to detainees, including Plaintiffs Withers and Rusan, with known disabilities, such as asthma and epilepsy, that make them particularly susceptible to serious harm from its use of force practice involving chemical agents/macing. Failure to make modifications for qualified individuals with a disability to existing facilities and practices is a violation of the ADA. *See Gorman v. Bartch, 152* F.3d 907, 913 (8th Cir. 1998). Plaintiffs plausibly plead that their rights under the ADA were violated when Defendant City of St. Louis used force against them while detained.  These allegations are sufficient to state a claim under Title II.

16

**Conclusion**

Based upon the foregoing analysis, Defendants' Motions to Dismiss will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Defendants' Motions to Dismiss [Doc. No. 139 and Doc. No. 167] are **DENIED**.

Dated this 13th  day of February, 2023.

_____

HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE