**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | | |
|---|---|---|
| **DERRICK JONES, et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 4:21CV600 HEA** |
| | ) | |
| **CITY OF ST. LOUIS, et al.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## OPINION, MEMORANDUM AND ORDER

This matter is before the Court on Plaintiffs' Motion to Certify Class [Doc. No. 71]. Defendants oppose the motion.  Upon careful consideration of the parties' briefs and evidence, for the reasons set forth below, Plaintiffs' Motion will be denied.

### Facts and Background

On May 24, 2021, Plaintiffs Derrick Jones, Jerome Jones and Darnell Rusan initiated this 42 U.S.C. § 1983 action against the City of St. Louis and certain employees of the St. Louis City Justice Center ("CJC"). On June 10, 2022, Plaintiffs filed a Third Amended Complaint ("Complaint"), which alleges the following 42 U.S.C. § 1983 claims against the individual defendants in violation of the Fourteenth Amendment: Defendants Sherry Richard and Javan Fowlkes for spraying Plaintiff Derrick Jones with an excessive amount of mace (Count I);

Defendant Fowlkes for spraying Plaintiff Jerome Jones with an excessive amount of mace (Count II); Defendants Aihsa Turner, Direll Alexander, Bruce Borders and Fowlkes for spraying Plaintiff Darnell Rusan with an excessive amount of mace (Count III); Defendants Freddie Willis and Douglas Jones for spraying Plaintiff Marrell Withers with an excessive amount of mace (Count IV); and Defendants Fowlkes and John Doe for conditions of confinement amounting to punishment by shutting off water to Plaintiffs Derrick Jones and Jerome Jones cells (Count IX). The *Monell* Claims are alleged in Count VI (Excessive Force/Mace) and Count X (Conditions of Confinement/Water Deprivation) against Defendant City of St. Louis. Plaintiffs (Withers and Rusan) also made a claim for damages for violation of the Americans with Disabilities Act (ADA) (Count VIII).

The remaining counts, and most relevant for purposes here, are Class Action claims against Defendant City of St. Louis for violations of § 1983 (Counts V and XI) and the ADA (Count VII).

Plaintiffs' class allegations in the Complaint are brought on "their own behalf and on behalf of all individuals who currently are or will be detained at the St. Louis City Justice Center and who are at risk of being subjected to the systemic practice of excessive force and water shut offs described [in the Complaint]. The Medical Subclass is defined as all qualifying individuals who are or will be

2

detained at CJC and who have a disability that makes them particularly susceptible to serious harm from chemical agents ('disabilities').'

Excessive Force Allegations

According to their Complaint, Plaintiffs are all pretrial detainees who allege that while held in the CJC, they were maced without warning or provocation, and for the purpose of inflicting punishment or pain, rather than for security reasons. Plaintiffs also allege that they were deprived of the means or ability to remove the chemical residue for excessive periods of time.

*Derrick Jones*

On December 14, 2020, Plaintiff Derrick Jones alleges that he asked to transfer cells because his cellmate was exhibiting symptoms of COVID-19. In response, Defendant Lieutenant Sherry Richards told him he would have to stay in the cell with an infected cellmate, and shortly after, maced him in the eyes and face without warning. Then, Defendant Richards and seven other officers kicked and punched him in the head and placed him in handcuffs. While he was still restrained on the floor, he was maced by Defendant Fowlkes, and left in a cell to "marinate" in the chemical spray for approximately twenty minutes. After that, medical staff washed out his eyes, but he was taken to solitary and kept for eight days without a shower, even though the chemicals from the macing were still on his skin and clothing, causing pain and discomfort. Plaintiff Derrick Jones alleges that he was

not acting aggressively and was not threatening staff safety throughout the encounter.

*Jerome Jones*

On February 9, 2021, Plaintiff Jerome Jones alleges that after he refused to move cells, he was handcuffed and placed in a small, mace-filled room for approximately twenty-five minutes while his eyes, face, and body were burning from being soaked in mace. He also alleges that he was denied medical attention, had trouble breathing for weeks due to the incident, and continues to experience respiratory distress that he attributes to the macing. He alleges that he was not physically resisting at any time during the encounter.

*Darnell Rusan*

Plaintiff Darnell Rusan, who is prone to epileptic seizures, alleges he was maced excessively (three times) without warning. Two of the macings occurred on December 19, 2020, after CJC staff told him that he had a bad attitude. The third macing occurred on February 3, 2021 with no warning, and afterwards, he was locked in a mace-filled visiting room for hours while fully nude.

*Marrell Withers*

On January 7, 2022, Plaintiff Marrell Withers, who has asthma, alleges he was maced twice after not wanting to be transferred, expressing fear of being exposed to COVID-19. During the macing, he alleges he was in handcuffs and not

4

physically resisting. Afterwards, he was taken to the medical unit, but not allowed a shower or change of clothes.

Plaintiffs allege the instances explained above are part of a widespread pattern and practice in the CJC that employees use mace to inflict pain and suffering on detainees without cause or warning, often on detainees who are passive, restrained, or confined.

<u>Water Deprivation</u>

Plaintiffs also allege that Defendant City of St. Louis has unconstitutional policies or customs of depriving inmates of water in the CJC. Plaintiffs allege this practice of depriving detainees of water to their cells are for hours or sometimes days at a time in order to punish and harm detainees for infractions such as talking back, banging on cell doors, or having an "attitude" with staff. Plaintiffs allege that they were subjected to regular deprivations of drinking water and water for toilets when there was no valid security justification for doing so. For instance, on February 6, 2021, after a detainee uprising to protest inhumane conditions, CJC employees moved several detainees, including Plaintiff Jerome Jones, to the fifth floor and cut off the water supply to all the cells on that level. Plaintiffs claim that the detainees had not intentionally flooded their cells or threatened to do so and were without water to drink or to flush toilets for several days, during which time they were also denied meals or other liquids to drink. Because of the inability to

flush, several toilets on that floor overflowed, leaving the floors of the level covered with excrement and urine for at least three days. The water shut-offs led to dehydration, headaches, stress, anxiety, and stomach discomfort. Similar water shut-offs occurred periodically after the February 2021 incident, including in March, April, and May of 2021. Plaintiffs allege that this incident, and similar water shut-offs, were not the result of any equipment failure, plumbing issue, or maintenance related reason, but were done to punish detainees.

    <u>Class Action Allegations</u>

    Plaintiffs bring the class action allegations on their own behalf and on behalf of all individuals who currently are or will be detained at the St. Louis City Justice Center and who are at risk of being subjected to the widespread practice of excessive force and water shut offs described above. The Medical Subclass, for the alleged violation of the ADA, is defined as all qualifying individuals who are or will be detained at CJC and who have a disability that makes them particularly susceptible to serious harm from chemical agents.

    Plaintiffs now seek class certification under Federal Rule of Civil Procedure 23. In addition to the Complaint, Plaintiffs provided thirty-eight declarations in support of the instant motion. They ask the Court to certify the following class: "all individuals who currently are or will be detained at the St. Louis City Justice Center [CJC]." Plaintiffs further seek to certify a medical subclass described as "all

members of the CJC Class who have a disability that makes them particularly susceptible to serious harm from chemical agents."

## Legal Standard

<u>Rule 23(a)</u>

To be certified as a class, Plaintiffs must meet all of the requirements of Rule 23(a) of the Federal Rules of Civil Procedure. Under Rule 23(a), a party seeking class certification must demonstrate: (1) the class is so numerous joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class. *See Wal-Mart Stores, Inc. v. Dukes,* 564 U.S. 338, 360 (2011) (moving party must "affirmatively demonstrate his compliance with the Rule").

<u>Rule 23(b)</u>

The party seeking certification also must show one of the subsections in Rule 23(b) is met. *In re St. Jude Medical, Inc.,* 425 F.3d 1116, 1118 (8th Cir. 2005). "The movant must, among other things, satisfy through evidentiary proof at least one of the provisions of Rule 23(b)." *Hudock v. LG Electronics*, 12 F.4th 773, 775–76 (8th Cir. 2021) (internal citation omitted).

Certification under Rule 23(b)(1) may be maintained if prosecuting separate

actions would create a risk of:

> (A)   inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the opposing class; or
>
> (B)   adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1)

Rule 23(b)(1) classes are "mandatory," such that class members are not permitted to opt out and the court is not even required to provide class members notice of the action. See *Dukes*, 564 U.S. at 363. As such, class actions predominantly for individual monetary damages are not appropriate for certification under Rule 23(b)(1); the "absence of notice and opt out violates due process" in such cases. *Id.*, citing *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985).

"Rule 23(b)(2) provides that a class action may be maintained if the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." *Ahmad v. City of St. Louis*, 995 F.3d 635, 643 (8th Cir. 2021). Because Rule 23(b)(2) classes seek only prospective relief, the notice requirements and preclusive effects of damages class actions are avoided. *See Dukes*, 564 U.S. at 362 ("The Rule provides no opportunity for ...

8

(b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action."). Rule 23(b)(2) class certification may be proper when the primary relief sought is declaratory or injunctive. *See Avritt v. Reliastar Life Ins. Co.*, 615 F.3d 1023, 1035 (8th Cir. 2010). Because unnamed class members are bound without an opportunity to opt out, a Rule 23(b)(2) class requires even greater cohesiveness than a Rule 23(b)(3) class seeking damages:

> Injuries remedied through (b)(2) actions are really group, as opposed to individual injuries. The members of a (b)(2) class are generally bound together through preexisting or continuing legal relationships or by some significant common trait such as race or gender.

*St. Jude*, 425 F.3d at 1122 (quotation omitted).

Thus, when named plaintiffs attempt "'to aggregate a plethora of discrete claims ... into one super-claim'" against a government agency, without demonstrating "that the class members have been harmed in essentially the same way," the proposed Rule 23(b)(2) class is deficient. *M.D. ex. rel. Stukenberg v. Perry*, 675 F.3d 832, 848 (5th Cir. 2012) (cleaned up). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class. It does not authorize class certification when each individual class member would be entitled to a different injunction or declaratory judgment." *Dukes*, 564 U.S. at 360. When liability does not apply uniformly to the entire class, the relief sought becomes highly individualized, and "the cohesiveness necessary

9

to proceed as a class under [Rule 23](b)(2) is lacking." *Ebert v. General Mills, Inc*., 823 F.3d 472, 480 (8th Cir. 2016).

Certification

"District courts must engage in a 'rigorous analysis' to determine whether the requirements of Rule 23 have been satisfied." *Postawko v. Mo. Dep't of Corr.*, 910 F.3d 1030, 1036 (8th Cir. 2018), quoting *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982). "Plaintiffs carry the burden of showing that they have met those requirements." *Id.*, citing *Luiken v. Domino's Pizza, LLC*, 705 F.3d 370, 372 (8th Cir. 2013).

"[A] decision to certify a class is far from a conclusive judgment on the merits of the case." *Id.* at 1037, quoting *In re Zurn Pex Plumbing Prod. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011). "For that reason, 'Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage.'" *Id.*, quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 466 (2013). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.*, quoting *Amgen Inc.*, 568 U.S. at 466. Thus, in addressing a motion for class certification, the Court's "primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Id.*, citing *In re Zurn*

*Pex Plumbing Prod. Liab. Litig*., 644 F.3d at 613.

District courts have broad discretion to determine whether to certify a class. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 630 (1997) ("The law gives broad leeway to district courts in making class certification decisions"); *Gilbert v. City of Little Rock, Ark*., 722 F.2d 1390, 1399 (8th Cir. 1983) ("A district court has broad discretion in determining whether to certify a class, and its determination will not be overturned absent a showing that it abused its discretion."); *In re Zurn Pex Plumbing Prod. Liab. Litig.,* 644 F.3d at 616 ("We ordinarily afford the district court "broad discretion in determining whether to certify a class…").

## Discussion

Defendants argue Plaintiffs' Motion for Class Certification should be denied because Plaintiffs cannot satisfy all of the requirements for certification under Rule 23(a), Plaintiffs proposed class and subclass fails to satisfy all applicable Rule 23(b) requirements, and Plaintiffs lack standing.

Ascertainability

In addition to the Rule 23(a) prerequisites to class certification, "[i]t is elementary that in order to maintain a class action, the class sought to be represented must be adequately defined and clearly ascertainable." *Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc.,* 821 F.3d 992, 996 (8th Cir. 2016). The Eighth Circuit has not addressed whether ascertainability is a "separate,

preliminary requirement" of class certification, but it has confirmed that

ascertainability is at least an implicit requirement that must be enforced as

part of the "rigorous analysis" of Rule 23's requirements. *Id.* at 996. "A class may

be ascertainable when its members may be identified by reference to objective

criteria." *McKeage v. TMBC, LLC*, 847 F.3d 992, 998 (8th Cir. 2017), citing

*Sandusky*, 821 F.3d at 997-98. Plaintiff adequately defined the CJC Class and

Medical Subclass in the instant motion, and Defendant does not challenge

ascertainability. Because there is no dispute regarding the method for identifying

class members, an independent discussion of ascertainability is not warranted. *Id.*

at 998.

<u>Rule 23(a) Requirements</u>

*Numerosity*

Rule 23(a)(1) requires that the members of a class be so numerous as to

make joinder impractical. Defendant does not challenge Plaintiffs' assertion that

the members of this class number in the hundreds. This criterion is satisfied.

*Commonality*

Defendants argue Plaintiffs cannot prove commonality because members of

Plaintiffs' putative class have different claims and injuries, all involving critically

different circumstances, and all of which necessitate separate, individualized

inquiries and adjudication.

Rule 23(a)(2) requires that the members of a class be united by a common question of law or fact. Commonality does not have to exist for every question raised in a class action, but a common question linking class members substantially related to the resolution of the litigation must be present. *DeBoer v. Mellon Mortg. Co*., 64 F.3d 1171, 1174 (8th Cir. 1995). Commonality requires a showing that class members have suffered the same injury and that a class action has the capacity to generate common answers to resolve the litigation. *Powers v. Credit Mgmt. Servs., Inc*., 776 F.3d 567, 571 (8th Cir. 2015). This means determination of the truth or falsity of the common question will "resolve an issue that is central to the validity of each one of the claims in one stroke." *Sandusky,* 821 F.3d at 998.

Here, Plaintiffs have not demonstrated the proposed class or proposed subclass presents common issues capable of classwide resolution. Plaintiffs assert the common questions of fact and law linking all proposed class members are whether Defendants have a pattern and practice of using excessive force through deployment of chemical agents without justification or warning, and in unreasonable amounts, and water shut-offs as a form of punishment. Plaintiffs maintain they have alleged practices with respect to the use of chemical agents and water shut-offs that create a substantial risk of harm for all class members. The Court finds the class is too broad. Instead, Plaintiffs' claims present individual instances of alleged excessive force or conditions-of-confinement violations, not

classwide issues capable of common resolution. As to the proposed subclass, without support as to either, Plaintiffs make a sweeping conclusion that every member with a disability could have susceptibility to harm from chemical agents. The subclass is also too broad and cannot be resolved by a single classwide answer.

As Defendants correctly argue, the Supreme Court's holding in *Dukes* is instructive in demonstrating the overbreadth of Plaintiffs' proposed class and subclass. *Dukes*, 564 U.S. at 338. In *Dukes*, the United States Supreme Court was "presented with one of the most expansive class actions ever." *Id*. at 342. The class that the plaintiffs sought to certify included "about one and a half million plaintiffs, current and former female employees of petitioner Wal-Mart who allege[d] that the discretion exercised by their local supervisors over pay and promotion matters violate[d] Title VII by discriminating against women." *Id*. The Supreme Court considered "whether the certification of the plaintiff class was consistent with Federal Rules of Civil Procedure 23(a) and (b)(2)." *Id.* It concluded that certification was not warranted, in part because Plaintiffs had not demonstrated commonality under Rule 23(a). Plaintiffs claimed that "their local managers' discretion over pay and promotions is exercised disproportionately in favor of men, leading to an unlawful disparate impact on female employees." *Id.* "The basic theory of their case [was] that a strong and uniform 'corporate culture' permit[ted]

bias against women to infect, perhaps subconsciously, the discretionary decision making of each one of Wal-Mart's thousands of managers—thereby making every woman at the company the victim of one common discriminatory practice." *Id.* at 345. Plaintiffs "therefore wish[ed] to litigate the Title VII claims of all female employees at Wal-Mart's stores in a nationwide class action." *Id.* Plaintiffs "moved the District Court to certify a plaintiff class consisting of '[a]ll women employed at any Wal-Mart domestic retail store at any time since December 26, 1998, who have been or may be subjected to Wal-Mart's challenged pay and management track promotions policies and practices." *Id.* at 346 (internal quotation marks omitted).

The Supreme Court stated, "The crux of this case is commonality—the rule requiring a plaintiff to show that 'there are questions of law or fact common to the class.'" *Id.* at 349 (citing Fed. R. Civ. P. 23(a)(2)). The Court noted that the rule "is easy to misread, since *'[a]ny competently crafted class complaint literally raises common 'questions.'"* *Id*. at 349 (emphasis added). "Reciting [common] questions is not sufficient to obtain class certification. Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury[.]" *Id.* at 349-50 (internal quotation omitted). "Their claims must depend upon a common contention...." *Id*. at 350. The Court continued:

> What matters to class certification ... is not the raising of common 'questions'—even in droves—but rather, the capacity of a class-wide

proceeding to generate common answers apt to drive the resolution of the litigation. *Dissimilarities within the proposed class are what have the potential to impede the generation of common answers.*

*Id.* (emphasis added).

The Court concluded that Plaintiffs had not raised such common questions capable of resolution by common answers. *Id.* at 359. The same is true here.

Plaintiffs claim they identified two primary questions of law and fact common to all members of the CJC Class: (1) whether Defendants have a pattern and practice of using excessive force through deployment of chemical agents without justification or warning, and in unreasonable amounts; and (2) whether Defendants have a pattern and practice of using water shut-offs as a form of punishment. Plaintiffs argue that a single judgment declaring Defendants' practices and policies regarding the use of chemical agents and water shut-offs unconstitutional, and an injunction prohibiting both practices, would cure each class member's constitutional injury "in one stroke" consistent with *Dukes* because all people detained at CJC would no longer be subjected daily to a substantial risk of having their constitutional rights violated by Defendants' use of excessive force and conditions-of-confinements.

Plaintiffs cite to *Postawko* when the Eighth Circuit certified a prison healthcare-related class, but one much narrower in scope than the class Plaintiffs propose here. *Postawko*, 910 F.3d at 1030. In *Postawko*, Plaintiffs "sought class

certification for their claims alleging that the Missouri Department of Corrections ('MDOC') and various related defendants violated the Eighth Amendment and Title II of the Americans with Disabilities Act ('ADA') by providing inadequate medical screening and care for chronic Hepatitis C ('HCV') viral infections." *Id.* at 1033. "As a highly communicable disease, HCV often spreads among the incarcerated population" but is easily treated with direct-acting antiviral ("DAA") drugs which cure over 90% of patients. *Id.* at 1034-35. Despite this, "[t]he MDOC ... provided DAA medications to less than one-half of one percent of inmates in their custody with a known HCV infection." *Id.* at 1035.

Plaintiffs sought to certify the following class of inmates:

> All those individuals in the custody of MDOC, now or in the future, who have been, or will be, diagnosed with chronic HCV, as that term is defined medically, but who are not provided treatment with direct acting antiviral drugs.

*Id.* at 1036.

The Eighth Circuit noted that at the class-certification stage, the Court's "primary task is not to determine the final disposition of a plaintiff's claims, but instead to examine whether those claims are appropriate for class resolution." *Id.* at 1037 (citing *In re Zurn Pex Plumbing Prod. Liab. Litig.,* 644 F.3d at 613). Regarding the commonality requirement, "[t]he Defendants argue[d] that the unique medical condition of each member of the class" would require resolution involving "a 'highly individualized' inquiry." *Id.* at 1038. In finding the

17

commonality requirement met, the district court noted that "[a]ll class members share the common question of whether the Defendants' policy or custom of withholding treatment with DAA drugs from individuals who have been or will be diagnosed with chronic HCV constitutes deliberate indifference to a serious medical need" under the Eighth Amendment. *Id.* While "the physical symptoms eventually suffered by each class member may vary, ... the question asked by each class member is susceptible to common resolution." *Id.* at 1038-39. Thus, the court concluded that commonality was met, and the class was properly certified under Rule 23(a). *Id.* at 1039.

While Plaintiffs argue *Postawko* supports their position,  the class there was based on a single disease and a single policy of non-treatment for that disease. Plaintiffs here seek to certify a class whose members were in different situations at different times under different circumstances; each that will have to be addressed by the facts of their different situation and different time under different circumstance allegations. Further, Plaintiffs make conclusionary statements that every detainee of the City Justice Center is or will be exposed to mace or have their water turned off for no reason because of Defendants practices and policies.

Plaintiffs also cite to cases in other circuits where class certification was granted when the issue could be narrowed down to a single issue, like *Yates v. Collier*, 868 F.3d 354 (5th Cir. 2017). In *Yates*, Plaintiffs were inmates at a Texas

Case: 4:21-cv-00600-HEA   Doc. #: 280   Filed: 03/13/23   Page: 19 of 21 PageID #: 4170

facility who alleged violations of the Eighth Amendment, ADA, and the Rehabilitation Act "due to high temperatures in the prison housing areas." *Id.* at 358. Plaintiffs sought to certify a class consisting of "[a]ll inmates who currently are, or in the future will be, incarcerated at the [facility], and who are subjected to [the corrections department]'s policy and practice of failing to regulate high indoor heat index temperatures in the housing areas," as well as subclasses for those at increased risk and those with disabilities. *Id.* at 359. In upholding the district court's decision to certify the general class, the Fifth Circuit noted that all inmates were exposed to the same high temperatures and "every inmate ... is at a substantial risk of serious harm due to the heat." *Id.* at 362. The district court noted that while "[n]o two individuals have the exact same risk" due to variations in age and health conditions, the extreme heat nevertheless posed the common question of "the adequacy of [the department]'s mitigation measures—as applied in practice—in reducing the heat risk for all the inmates." *Id*. at 363 (alteration and emphasis in original). The Fifth Circuit agreed that the "[p]laintiffs have demonstrated the presence of a "question[ ] of law or fact common to the class." " *Id.* at 365, quoting Fed. R. Civ. P. 23(a)(2). As *Postawko* presented a single health issue, *Yates* presented the single question of high temperatures placing prisoners at risk, which have the capacity of a classwide proceeding to generate common answers likely to drive the resolution of the litigation. In contrast, Plaintiffs do not show that all

inmates who are, or will be, detained at CJC are exposed to the use of excessive force or alleged conditions-of-confinements. Instead, Plaintiffs' proposed class purports to encompass a variety individual instances of alleged excessive force or conditions-of-confinement that affect inmates in disparate ways and are thus incapable of common resolution. "Dissimilarities within the proposed class are what have the potential to impede the generation of common answers" necessary to resolve a classwide litigation. *Dukes*, 564 U.S. at 350. Similarly, Plaintiffs proposed medical subclass do not focus on a single disability, or even a few disabilities, nor does it identify a similar reaction or harm to chemical agents. In fact, the disabilities or potential harm are not distinguished at all; the subclass proposed is any member who has any disability that makes them particularly susceptible to serious harm in any way from chemical agents. Plaintiffs' vastly broader class and subclass does not present common issues capable of common resolution like that in *Postawko*. Accordingly, Plaintiffs' proposed class and subclass fails to meet the requirement of commonality and will not be certified.

## Conclusion

Based upon the foregoing analysis, the Court finds Plaintiffs fail to satisfy Rule 23(a)(2) regarding commonality and have not demonstrated the proposed

class or proposed subclass presents common issues capable of classwide resolution. Therefore, Plaintiffs' Motion to Certify Class will be denied.

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion to Certify Class [Doc. No. 71] is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiffs' Motion to Extend Class Discovery Deadline if Class Certification is Granted [Doc. No. 211] is **DENIED** as moot.

Dated this 13th day of March, 2023.

_____
HENRY EDWARD AUTREY
UNITED STATES DISTRICT JUDGE