**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| DERRICK JONES, et al., ) | |
| ) | |
| on behalf of themselves and all similarly situated individuals, ) ) | |
| ) | Cause No. 4:21-cv-600 |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| CITY OF ST. LOUIS *et al.*, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION TO EXCLUDE THE OPINIONS, TESTIMONY, AND REPORTS OF DEFENDANT'S PROPOSED EXPERT WITNESS JOSEPH GUNJA**

This Court should exclude the opinions, testimony, and reports of Defendant City of St. Louis' (the "City") expert, Joseph Gunja, because they are inadmissible under Federal Rule of Evidence 702 (hereinafter, "Rule 702"), as well as *Daubert v. Merrell Dow Pharm. Inc.*, 509 U.S. 579, 589 (1993).

This civil rights action brings claims of excessive force, conditions of confinement amounting to punishment, and violation of the Americans with Disabilities Act. Mr. Gunja, who served as a correctional superintendent with Bureau of Prisons around 20 years ago, purports to offer wide ranging opinions on the appropriateness of the individual defendants' actions and the City's systemic practices. Mr. Gunja has tendered his report and has been deposed. His deposition confirms what his inadequate report suggested: that his testimony is inadmissible under Rule 702 and *Daubert*.

1

Joseph Gunja's testimony is inadmissible for many reasons. **First**, Mr. Gunja lacks the relevant specialized knowledge about the use of OC spray at the City Justice Center (CJC). **Second,** he does not appropriately link his opinions to any professional standards or methodologies, and even where he purports to use standards, he does not reliably or accurately apply them. **Third**, his testimony blatantly ignores relevant facts; crucially, for example, he disregards testimony from the Plaintiffs regarding the use of force incidents, and from all detained persons regarding issues with water access and the grievance process. Mr. Gunja picks facts to suit his opinion and makes no attempt to defend why he chooses one narrative over another when there are competing accounts of the same incidents or issues. In so doing, he attempts to opine on the credibility of the parties, which inappropriately invades the province of the jury. **Fourth**, Mr. Gunja opines on the ultimate legal issue by claiming that Defendants did not meet the standard of deliberate indifference and did not violate the rights of the Plaintiffs.

For these reasons, Mr. Gunja's testimony is unduly speculative and untrustworthy, would be of no use to a jury, and should be excluded in its entirety.

## **Legal Standard**

Federal Rule of Evidence 702 governs whether expert testimony is admissible:

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if:
    (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
    (b) the testimony is based on sufficient facts or data;
    (c) the testimony is the product of reliable principles and methods; and,
    (d) the expert has reliably applied the principles and methods to the facts of the case.

FED. R. EVID. 702.

Under *Daubert*, the trial judge is assigned "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." 509 U.S. at 597; *see also*

*United States v. Merrell*, 842 F.3d 577, 582 (8th Cir. 2016). Courts consider several nonexclusive factors, including: whether the expert ruled out alternative explanations for the facts of the case, whether the expert sufficiently connected the facts of the case with their conclusions; and whether the expert uses theories or principles that have been generally accepted or subjected to peer review. *Lauzon v. Senco Prods.*, 270 F.3d 681, 687 (8th Cir. 2001). "Rule 702's screening requirement has been boiled down to a three-part test. First, the testimony must be useful to the finder of fact in deciding the ultimate issue of fact, meaning it must be relevant. Second, the expert must be qualified to assist the finder of fact. Third, the testimony must be reliable or trustworthy in an evidentiary sense." *Amador v. 3M Co. (In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.)*, 9 F.4th 768, 777 (8th Cir. 2021) (internal citations and quotations omitted). The court's gatekeeping obligation requires a flexible, fact-specific inquiry to determine if the expert's testimony is reliable and relevant. *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 149-150 (1999). A court's gatekeeping role is especially important where cases will be tried by a jury, like this instance case, so as "to protect [lay] juries from being swayed by dubious scientific testimony." *In re Zurn Pex Plumbing Prods. Liab. Litig.*, 644 F.3d 604, 613 (8th Cir. 2011).

## Argument

**I.     Mr. Gunja's Testimony Should Be Excluded Under Rule 702(a) Because He Does Not Have Specialized Knowledge Relevant to the Use of OC Spray at CJC**

An expert must have specialized knowledge that would help the trier of fact. FED. R. EVID. 702. If an expert reaches conclusions based on insufficient facts or opines on a subject in which they do not have sufficient expertise, then those conclusions, and any that follow must be excluded. *UnitedHealth Grp., Inc. v. Exec. Risk Specialty Ins. Co.*, 870 F.3d 856, 865 (8th Cir. 2017) (excluding an expert because he could not opine on the relative value of one suit, since he was barred from opining on the value of the compared suit).

While Mr. Gunja has experience with other types of force used in correctional settings, by his own admission he has no experience or expertise relevant to OC spray or factors specific to its use. *See* May 5, 2023 Deposition of J. Gunja, attached hereto as **Exhibit 1** ("Gunja Dep."), at 42:22-23. In his deposition, Mr. Gunja confirmed the following: he did not carry an OC canister as a correctional officer; he has never trained anyone on the proper use of OC spray; it was only directly before his retirement that correctional officers who began to carry or use OC spray. Gunja Dep., Ex. 1, 22:2-8, 23:2-12. Indeed, Mr. Gunja went so far as to state in his deposition that he is "**not an expert on OC**." Gunja Dep., Ex. 1, 42:22-23.

Despite this, Mr. Gunja offers a variety of opinions specifically about the use of OC spray: each use of chemical agents against the named Plaintiffs (as opposed to lesser amounts of force) was justified; OC "allows inmates the least amount of harm" compared with physical confrontations; "medical attention and follow-up, and decontamination process with those is very quick." *See* Expert Report of J. Gunja, attached hereto as **Exhibit 2** ("Gunja Report"), 17. This assertion is not based on any personal or professional experience, and he does not indicate any substantiated route by which he could have reached it.

Notably, Mr. Gunja fails to make any effort to explain how his experiences with other types of force lead to his conclusions about the use of OC spray, and his purported opinions go far beyond any discussion of the general appropriateness of force. For example, Mr. Gunja claims that one of the reasons that officers can use OC spray anywhere in the facility is that all places within the CJC have adequate ventilation, as compared to a closed vehicle, which has inadequate ventilation to use OC spray. Gunja Dep., Ex. 1, 78:15-25. But Mr. Gunja also confirmed that he no specific expertise in how OC spray interacts with closed air environments, and indeed has no familiarity with the layout of or the ventilation in CJC. *Id.* at 80:15-22. Mr. Gunja also offers the

4

opinion that it "may be necessary to use the MK-9 device"—a large can of OC spray that is typically referred to as "riot sized"—on detainees confined to a locked cell. Gunja Dep., Ex. 1, 99:13-16, 100:5-12. But he offers no training, experience, or background as to why he would be qualified to offer an opinion as to when appropriate to use different amounts of OC spray; thus, he cannot opine on whether the use of MK-9 against Derrick Jones or other detainees was appropriate. Gunja Report, Ex. 2, 15.

Courts have excluded experts where they have knowledge about a general topic but lack any experience or specialty in the specific subfield at issue. *See UnitedHealth Grp.*, 870 F.3d at 865 (excluding testimony where the expert did not have relevant expertise on the specific subject matter); *Robertson v. Norton Co.*, 148 F.3d 905, 907 (8th Cir. 1998) ("Firestone was undoubtedly qualified to testify about a manufacturing defect in an exploding ceramic grinding wheel, that did not qualify him as an expert on grinding wheel warnings."); *Jaurequi v. Carter Mfg. Co.*, 173 F.3d 1076, 1083 (8th Cir. 1999) (excluding engineering expert proffering opinions on the design of warnings when expert had a general engineering background but no expertise in designing the item at issue).

Mr. Gunja does not have enough experience with OC spray to draw conclusions, and he fails to make any effort to explain how his experiences with other types of force lead to his conclusions about the use of OC spray here.

**II.     Mr. Gunja's Testimony Should Be Excluded Under Rule 702(c) Because He Does Rely on Reliable Principles or Methods**

To satisfy the reliability requirement, the proponent of the expert testimony must show by a preponderance of the evidence both that the expert is qualified to render the opinion and that the methodology underlying his conclusions is scientifically valid. *Daubert,* 509 U.S. at 589–90. However, a court should not admit opinion evidence that "is connected to existing data only by

5

the *ipse dixit* of the expert." *Gen. Elec. Co. v. Joiner,* 522 U.S. 136, 146 (1997); *Marmo v. Tyson Fresh Meats, Inc.,* 457 F.3d 748, 758 (8th Cir. 2006) (excluding expert opinion where the toxicologist did not follow standard methodology, including taking medical history and using a causation standard); *Fireman's Fund Ins. Co. v. Canon U.S.A., Inc.*, 394 F.3d 1054, 1057-1060 (8th Cir. 2005) (excluding expert for failing to follow purported standards).

Mr. Gunja's report does not reference any documents from the Bureau of Prisons, the American Correctional Association, the American Jail Association, or any other national organization that sets standards for jails and prisons. Indeed, Mr. Gunja fails to cite *any* independent, national standard to support his opinions. Gunja Report, Ex. 2, 1. Despite this, he claims, without explanation, that CJC policies include "all relevant national and federal standards." Gunja Report, Ex. 2, 19.

When questioned as to what standards he was referring to, Mr. Gunja referenced a "one-paragraph statement" that he claimed has been "the same as it's been for 30 years." Gunja Dep., Ex. 1, 31:17-34:13. It is unclear to what this "one-paragraph statement" refers, given that Mr. Gunja neither cites any source for it nor explains what it is. In his deposition, he occasionally referenced his memory of a Bureau of Prisons Policy, but he does so inaccurately[1] and does not rely on it. Gunja Dep., Ex. 1, 128:12-23. Even if Mr. Gunja has experience with these Bureau of Prisons policies generally, he could not state any specific policies he recalled or how those policies support his conclusions here. Gunja Dep., Ex. 1, 37:17-38:1.

---

[1] Mr. Gunja claimed that chemical agents may be used whenever a detainee is actively resisting, which he defined as any continued non-compliance with a verbal command. Gunja Dep., Ex. 1, 67:11-15. ("The officer made a verbal command to tell an inmate to do something. He did not comply with the verbal command. At that point he has moved into active resistance mode."). But Mr. Gunja's definition of justified force is at odds with the Bureau of Prison's policy, which states that "The Warden may authorize the use of less-than-lethal weapons, including those containing chemical agents, only when the situation is such that the inmate: (1) Is armed and/or barricaded; or (2) Cannot be approached without danger to self or others; and (3) It is determined that a delay in bringing the situation under control would constitute a serious hazard to the inmate or others, or would result in a major disturbance or serious property damage." 28 C.F.R. § 552.25.

6

Mr. Gunja does claim that he relies on the St. Louis Division of Corrections' own policy to come to his conclusions. Gunja Dep., Ex. 1, 117:22-25. Mr. Gunja provides no evidence that the internal policy of the St. Louis City Division of Corrections is in accord with industry best practices, national standards, or otherwise is valid. Gunja Report, Ex. 2, 19.

Not only that, but Mr. Gunja in his deposition advanced an inaccurate understanding of City policy. Notably, Mr. Gunja claimed that chemical agents may be used whenever a detainee is actively resisting, which he defined as any continued non-compliance with a verbal command. Gunja Dep., Ex. 1, 67:11-15. ("The officer made a verbal command to tell an inmate to do something. He did not comply with the verbal command. At that point he has moved into active resistance mode."). Gunja Report, Ex. 2, 9. But City policy defines that exact scenario as 'passive resistance," or "non-physical confrontational resistance of an order in which inmates verbally states what they will or will not do." City of St. Louis Department of Public Safety / Division of Corrections, POLICY & PROCEDURES, Ch. 3.1.21, *Use of Force*, CITY_004354-55, attached hereto as **Exhibit 3**.[2] When confronted with this at his deposition, Mr. Gunja stated his opinion is in contrast to the policy and that he considers *any* refusal to comply with an order at any point in any way to be "active resistance." Gunja Dep., Ex. 1, 68: 12-15. ("You ask the inmate to do something. He doesn't do it. He has moved from non-compliance to actively resisting.").

In so doing, Mr. Gunja blatantly ignores the definitions of active resistance from the St. Louis City policy and the Bureau of Prisons policy. Mr. Gunja's inaccurate definition of active resistance is fundamental to his analysis of the uses of force against the named Plaintiffs. As such,

---

[2] By contrast, the City policy defines active resistance as "Any physical or confrontational act by an inmate that resists the order or directive of staff while inmate engages in combative stance, or refuses to surrender object that could be used as weapon, attempting to strike, or struggle with officers, fighting with other inmates; or any such behavior that will lead to injury." City of St. Louis Department of Public Safety / Division of Corrections, POLICY & PROCEDURES, Ch. 3.1.21, Use of Force, CITY_004354-55

7

his conclusions about use of force have no basis in either national standards or the City's own policies. Gunja Dep., Ex. 1, 62:13-17, 65:1-6. Mr. Gunja's opinions cannot be of use to the jury. *Cole,* 599 F.3d at 865 ("But where, as here, the expert's analysis is unsupported by the record, exclusion of that analysis is proper, as it can offer no assistance to the jury.").

He finally claims in his deposition that he relied on his own experiences. But he makes no effort to connect his experiences to any conclusions or to provide any insight into his methodology. *See* Gunja Dep., Ex. 1, 59:18-21, 114:24-25. This is substantially similar to expert opinions that courts have excluded in the past for lacking any coherent methodology. *See*, *e.g.*, *Cox v. Glanz,* No. 11-CV-457-JED-FHM, 2014 WL 916644, at *6 (N.D. Okla. Mar. 10, 2014) (excluding expert because the report provided "no summary of any principles or methods he applied," and "does not explain how he arrived at his conclusions, other than that he reviewed documents and determined the staff did nothing wrong" and does not "contain any explanation of how his experience applies to arrive at his conclusions").

Indeed, a court in the Eastern District of Missouri has excluded Mr. Gunja's testimony in part for an identical issue in *Cody v. City of St. Louis* just last year. In the *Cody* case, Mr. Gunja was excluded from opining on whether Medium Security Institution (MSI) jail complied with national professional standards, because, as he has done in this case, Mr. Gunja claimed that the facility followed nationally recognized standards, but failed to identify any actual standards or to explain how those standards were met. *Cody v. City of St. Louis,* 2022 WL 2315473, No. 4:17-CV-2707 AGF, at *7 (E.D. Mo. June 28, 2022). Despite a clear instruction from a court in this district, one year later Mr. Gunja is again "asking a jury to accept [his] conclusions in this regard based solely on [his] say-so." *Id.*

Mr. Gunja's testimony should be excluded because his opinions are unreliable and his methodology completely lacking.

### III. Mr. Gunja's Testimony Should Be Excluded Under Rule 702(b) Because He Does Not Base His Testimony on Sufficient Facts

An expert must consider all the specific facts of a case when forming their opinion, and testimony that ignores relevant facts must be excluded. *Neb. Plastics, Inc. v. Holland Colors Ams., Inc.*, 408 F.3d 410, 413 (8th Cir. 2005) (finding exclusion is appropriate where the expert's calculations failed to take into account a plethora of specific facts.); *Concord Boat Corp. v. Brunswick Corp.*, 207 F.3d 1039, 1056 (8th Cir. 2000) ("Even a theory that might meet certain Daubert factors, such as peer review and publication, testing, known or potential error rate, and general acceptance should not be admitted if it does not apply to the specific facts of the case.").

#### A. By Relying Exclusively on the Defendants' Evidence, Gunja's Testimony on Use of Force is Fundamentally Unsupported and Cannot Assist the Jury

Mr. Gunja indicates in his report, and clarifies in his deposition, that he relied only on the Defendants' statements in use of force reports and the videos (for the incidents for which there are videos) to come to his conclusions regarding use of force. Gunja Report, Ex. 2, 20; Gunja Dep., Ex. 1, 130:22-131:5. While Mr. Gunja reviewed the complaint and Plaintiffs' depositions, he did not use this information to reach his conclusions. He does not even mention where defendants' statements in use of force reports are contradicted by the Plaintiffs' statements and/or video of the events. He does not attempt to justify his reliance on only one side's perspective.

His report is riddled with these omissions. When analyzing the use of force by Lt. Richard on Derrick Jones, Mr. Gunja literally copy and pasted Lt. Richards' summary of the incident, and totally fails to consider Derrick's account of this incident (Gunja Report, Ex. 2, 15); analyzes the use of force report regarding Jerome Jones by copying and pasted Lt. Fowlkes' summary of the

9

incident, and without reference to Jerome's conflicting testimony (Gunja Report, Ex. 2, 16); copy and pasted an explanation from Captain Wills as to the use of force against Marrell Withers without considering the testimony from Marrell (Gunja Report, Ex. 2, 16-17); and, fourth and finally, once again copy and pasted the narrative from Lt. Turner's use of force report on Darnell Rusan without citing to any testimony from Darnell (Gunja Report, Ex. 2, 16), which is made even more inappropriate by focusing mainly on events that took place *after* the use of force by Lt. Turner. *Id.* At no point does Mr. Gunja cite to or account for the statements of Jerome Jones, Darnell Rusan, Marrell Withers Derrick Jones. See generally, Gunja Report, Exhibit 2. In fact, he explicitly confirmed in his deposition that he **only** analyzed the situations from the officers' point of view. Gunja Dep., Ex. 1, 109:3-21.

Likewise, Mr. Gunja not only ignored Mr. Withers' testimony, but also failed to mention that a supervisor at the CJC, then-Major Tonya Harry, determined that this use of force did not comply with policy. Gunja Report, Ex. 2, 16-17; Gunja Dep., Ex. 1, 118:18-25; See Doc. 342, *Plaintiffs' Statement Of Additional Material Facts Making Summary Judgment Improper* ("Pltfs SAMF") ¶ 54 (1/6/2022, M.W. UoF Report, Exh. 9, at City_004057; Harry Depo, Exh. 10, 150:17-151:1). He also failed to mention that Mr. Withers was in handcuffs at the time of the incident, and that officers are specifically prohibited from using OC spray on detainees in restraints. See Doc. 342, *Pltfs SAMF*, ¶ 58 (citing City of St. Louis Department of Public Safety / Division of Corrections, POLICY & PROCEDURES, Ch. 3.2.15, *Use of Chemical Agents*, CITY_004485). Mr. Gunja, furthermore, did not mention that Mr. Withers had informed the officers that he had asthma prior to being maced. Doc. 342, *Pltfs SAMF*, ¶ 28, 39 (citing 1/6/2022 M.W. Video, at, 8:38-8:43, 8:48-59).

10

This Court should not allow Mr. Gunja to testify that Defendants' version of the evidence is more credible than the Plaintiffs' when he is in no better position to do so than the jury and his testimony would therefore be speculative. *Watkins v. Schriver* 52 F.3d 769, 771-772 (8th Cir. 1995). Mr. Gunja has no specific expertise or knowledge that could lead him to conclude that the officer's use of force reports or the CJC's corporate representative's report are more accurate than Plaintiffs' testimonies; he is no more able than a jury to determine this question of credibility. Since Mr. Gunja's conclusions are based entirely on the unexamined assumption that Defendants' narratives are accurate, they cannot be presented to the jury because he unjustifiably assumes the answer to a credibility question that must be left to the jury. *See* Gunja Dep., Ex. 1, 106:11-15; Gunja Report, Ex. 2, 20. It simply is neither appropriate nor helpful for Mr. Gunja to offer a blanket opinion that the uses of force are acceptable based only on his complete acceptance of the Defendants statements as true. *In re Acceptance Ins. Companies Securities Litigation,* 423 F.3d 899, 905 (8th Cir. 2005) ("When the expert opinions are little more than legal conclusions, a district court should not be held to have abused its discretion by excluding such statements.").

Finally, Mr. Gunja's report also offers a sweeping opinion that "staff did not violate the rights of the plaintiffs (or others) in the uses of force, as cited in the Third Amended Complaint." Mr. Gunja did not review all the uses of force against the Plaintiffs which are outlined in the Third Amended Complaint—he completely failed to address in any way multiple uses of force against both Derrick Jones and Darnell Rusan. Gunja Dep., Ex. 1, 110:9-20, 113:18-23. Mr. Gunja therefore cannot reasonably assert *all* uses of force were appropriate. In view of this unexplained omission, Mr. Gunja's claim amounts to pure speculation. Gunja Report, Ex. 2, 20; *Cole v. Homier Distributing Co., Inc,* 599 F.3d 856, 866 (8th Cir. 2010) ("[T]he district court properly excluded Dr. Basi's report because his report failed to rise above the level of speculation.").

11

### B. Mr. Gunja's Opinion on Water Access Interruptions Ignore Contradictory Information

Mr. Gunja ignores relevant information when it suits his views. For example, Mr. Gunja states that water access interruptions are de minimis, by relying solely on the City's 30(b)(6) testimony, which claims that detainees are "moved to a cell or area to which water supply has not been interrupted" and that water restrictions to deal with detainees flooding cells never last longer than 8 hours, and always involve the water being regularly turned on. Gunja Report, Ex. 2, 13. This testimony conflicts with other evidence in the record that Mr. Gunja conveniently ignores.

Mr. Gunja testified that he did not review any testimony from detained people about water access, and he claimed not to recall Plaintiff testimony regarding water shutoffs. Gunja Dep., Ex. 1, 103:1-12. The named Plaintiffs' testimony regarding water access is in direct conflict with Gunja's Report, stating that water was sometimes turned off for up to twelve hours at a time. *See* Doc. 342, *Pltfs SAMF*, ¶ 61 (citing Deposition of M. Withers at 72:7-17, 73:14-76:24); ¶ 86 (citing Deposition of J. Jones at 35:13-36:25); ¶ 118 (citing Deposition of D. Jones 64:8-19, at 65:10-13, 70:2-71:18); See *generally Id.*, ¶¶ 324-341. Mr. Gunja failed to take any firsthand accounts about water access into consideration, and instead relied exclusively on the report of the city's designee.

By choosing what information to include, Mr. Gunja crafted a biased version of events while failing to state any reason his narrative, which baselessly assumes there is minimal issue with water access, is more accurate than alternative views. *Lauzon,* 270 F.3d at 694 ("After discounting obvious alternatives through scientific testing, such as the manufacturing defect, Kelsey need only be able to explain why other conceivable causes are excludable."). Mr. Gunja's testimony on the conditions of confinement, specifically the issues of water access and access to the grievance process must be excluded because his opinion is based exclusively on the report of

12

the corporate representative and the inmate handbook and fails to consider all other sources of evidence regarding these issues. Gunja Dep., Ex. 1, 95:15-96:9.

### C. Mr. Gunja has No Basis for His Opinions on Systemic Practices

Mr. Gunja did not review any material regarding individuals other than the four named Plaintiffs, so he has no basis for any testimony or conclusions regarding the greater pattern of OC spray use at CJC. He did not review the myriad of available use of force reports, grievances, and videos related to unnamed Plaintiffs, he did not visit the CJC, and he did not speak to any detainees. Gunja Dep., Ex. 1, 121:18-22, 52:15-23. Any statements related to Plaintiffs' *Monell* claim for systemic issues with excessive force are, therefore, purely speculative. *Cole*, 599 F.3d at 866.

Mr. Gunja also lacks sufficient basis to evaluate CJC's use of force training. In his Report, Mr. Gunja states that there is an "extensive program to train staff." Gunja Report, Ex. 2, 6. This assertion is premised entirely on a review of the St. Louis DOC Use of Force Policy and one PowerPoint presentation that is used in training. Gunja Dep., Ex. 1, 55:4-8. He determines that staff are effectively trained in the Use of Force Policy solely because officers are supposed to receive four hours of training per year. Gunja Dep., Ex. 1, 130:7-17. Yet the City's own witness, Officer Alexander, observed that the City has not consistently provided the pertinent training. **Exhibit 4,** Deposition of D. Alexander, 78:21-23. In addition, Mr. Alexander, who conducted use of force training, testified that the training he offered did not align with the policy. *Id.* at 135:23-136:10. For example, Mr. Gunja's Report references the policy requirement that pepper spray should be used two to eight feet from the inmate, but Mr. Alexander explained that he did not train officers to do this. *Id*. at 128:5-8. Mr. Gunja assumed, without verification, that the Use of Force policy and PowerPoint reflected the actual training that officers received, and he failed to consider evidence to the contrary.

13

Mr. Gunja's conclusions are based on incomplete information, and thus must be excluded. In *Neb. Plastics Inc.*, a damages expert was excluded because he assumed, for his calculations, that all colored fencing sold would be subject to a warranty claim, even though there was significant evidence to the contrary. *Neb. Plastics, Inc.,* 408 F.3d at 416. Because the expert's final calculations were based on unverified assumptions derived from inconsistent information, the court excluded his conclusions. *Id.* Similarly, this Court should keep out Mr. Gunja's conclusions about the cited use of force incidents, the OC spray practices, and the training on use of force because he based his speculative opinions on unverified, inconsistent, or incomplete information.

### IV. Mr. Gunja's Testimony Should Be Excluded Because it Inappropriately Opines on the Ultimate Legal Issue in the Case

Mr. Gunja improperly advances opinions on the ultimate legal issue. In his report, Mr. Gunja concludes that the staff did not "meet any deliberate indifference standards or claims" and "did not violate the rights of the plaintiffs (or others)." Gunja Report, Ex. 2, 20. Indeed, Mr. Gunja stated explicitly in his deposition that he intended to offer a conclusion as to whether the incidents met the legal definition of deliberate indifference. Gunja Dep., Ex. 1, 131: 18-132:10. Mr. Gunja may not offer legal opinions. *S. Pine Helicopters, Inc. v. Phx. Aviation Managers*, *Inc*., 320 F.3d 838, 841 (8th Cir. 2003) ("[E]xpert testimony on legal matters is not admissible. Matters of law are for the trial judge, and it is the judge's job to instruct the jury on them.") (internal citations omitted); *Peterson v. City of Plymouth*, 60 F.3d 469, 475 (8th Cir. 1995) ("To that end, his testimony was not a fact-based opinion, but a statement of legal conclusion. The legal conclusions were for the court to make.") (internal citations omitted).

This court has previously excluded Mr. Gunja from opining on whether defendants acted with deliberate indifference, because opinions on this matter were "unsupported and unhelpful."

14

*Cody,* 2022 WL 2315473 at *7. ("Their conclusory opinions in this regard will not assist the jury. Rather, the Court will instruct the jury as to the legal elements of Plaintiffs' claims."). Mr. Gunja is still not permitted to draw legal conclusions, and his conclusory opinions will be of no use to a jury. *Id.*

## Conclusion

For the foregoing reasons, Mr. Gunja failed in his testimony and report to satisfy the parameters of the Federal Rules and the law governing the admissibility of expert opinions. His reports, opinions, and testimony are, therefore, inadmissible at any stage of this litigation, including dispositive motions, class certification, and trial. This Court should thus grant Plaintiffs' motion.

Dated: December 19, 2023          Respectfully submitted,

RODERICK & SOLANGE MACARTHUR
JUSTICE CENTER

 */s/ Shubra Ohri (w/ consent)*
Amy E. Breihan (MBE #65499MO)
Shubra Ohri (E.D. Mo. Bar No. 63098241L)
3115 S. Grand Blvd., Suite 300
Saint Louis, MO 63118
(314) 254-8540
(314) 254-8547 (fax)
amy.breihan@macarthurjustice.org
shubra.ohri@macarthurjustice.org

ARCHCITY DEFENDERS, INC.

 */s/Maureen Hanlon*
Blake A. Strode (MBE #68422MO)
Jacki Langum (MBE #58881MO)
Maureen Hanlon (MBE #70990MO)
Nathaniel R. Carroll (MBE #67988MO)
440 N. 4th Street, Suite 390

Saint Louis, MO 63102
855-724-2489
314-925-1307 (fax)
bstrode@archcitydefenders.org
jlangum@archcitydefenders.org
mhanlon@archcitydefenders.org
ncarroll@archcitydefenders.org

SAINT LOUIS UNIVERSITY SCHOOL OF LAW LEGAL CLINICS

*/s/Lauren Bartlett (w/ consent)*
Brendan Roediger (E.D. Mo. Bar No. #6287213IL)
Lauren Bartlett (MBE #71698MO)
100 N. Tucker Blvd.
Saint Louis, MO 63101-1930
314-977-2778
brendan.roediger@slu.edu
lauren.bartlett@slu.edu

RIGHTS BEHIND BARS

*/s/Oren Nimni (w/ consent)*
Oren Nimni *admitted pro hac vice*
416 Florida Avenue, NW #26152
Washington, D.C. 20001
(206) 200-9088
oren@rightsbehindbars.org

*Attorneys for the Plaintiffs*