# United States Court of Appeals
### *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 27, 2026

Adriano Alfonso Martinez
CITY COUNSELOR'S OFFICE
MO
314 City Hall
1200 Market Street
Saint Louis, MO  63103-0000

    RE:  24-1912  Derrick Jones, et al v. City of St. Louis, Missouri, et al

Dear Counsel:

    The court has issued an opinion in this case. Judgment has been entered in accordance with the opinion.

    Please review Federal Rules of Appellate Procedure and the Eighth Circuit Rules on post-submission procedure to ensure that any contemplated filing is timely and in compliance with the rules. Note particularly that petitions for rehearing and petitions for rehearing en banc <u>must</u> be received in the clerk's office within 14 days of the date of the entry of judgment. Counsel-filed petitions must be filed electronically in CM/ECF. Paper copies are not required. Except as provided by Rule 25(a)(2)(iii) of the Federal Rules of Appellate Procedure, no grace period for mailing is allowed. Any petition for rehearing or petition for rehearing en banc which is not received within the 14 day period for filing permitted by FRAP 40 may be denied as untimely.

    Susan E. Bindler
    Clerk of Court

NDG

Enclosure(s)

cc:    Lauren Bartlett
     Clerk, U.S. District Court, Eastern District of Missouri
    Maureen Hanlon
    Jacki Janelle Langum
    Lawrence L. Pratt
    Brendan D. Roediger
    Stephen Michael Ryals

    District Court/Agency Case Number(s):  4:21-cv-00600-HEA

# United States Court of Appeals
## *For The Eighth Circuit*
Thomas F. Eagleton U.S. Courthouse
111 South 10th Street, Room 24.329
### St. Louis, Missouri 63102

**Susan E. Bindler**
*Clerk of Court*

**VOICE (314) 244-2400**
**FAX (314) 244-2780**
**www.ca8.uscourts.gov**

July 27, 2026

West Publishing
Opinions Clerk
610 Opperman Drive
Building D D4-40
Eagan, MN 55123-0000

  RE:  24-1912  Derrick Jones, et al v. City of St. Louis, Missouri, et al

Dear Sir or Madam:

  A published opinion was filed today in the above case.

  Counsel who presented argument on behalf of the appellant and appeared on the brief was Abby Joe Duncan, of Saint Louis, MO.

  Counsel who presented argument on behalf of the appellee and appeared on the brief was Maureen Hanlon, of Saint Louis, MO. The following attorneys also appeared on the appellee brief;  Amy Briehan, of Saint Louis, MO.,  Shubra Ohri, of Saint Louis, MO., and Lauren Bartlett, of Saint Louis, MO.

  The judge who heard the case in the district court was Honorable Henry Edward Autrey.

  If you have any questions concerning this case, please call this office.

      Susan E. Bindler
      Clerk of Court

NDG

Enclosure(s)

cc:  MO Lawyers Weekly

  District Court/Agency Case Number(s):  4:21-cv-00600-HEA

# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 24-1912

———————————————

Derrick Jones; Jerome Jones; Darnell Rusan; Marrell Withers

*Plaintiffs - Appellees*

v.

City of St. Louis, Missouri; Lieutenant Javan Fowlkes, in his individual capacity; Correctional Officer Aisha Turner, in her individual capacity; Correctional Officer Direll Alexander, in his individual capacity; Lieutenant Sherry Richard, in her individual capacity; Correctional Officer Bruce Borders, in his individual capacity; Captain Freddie Wills, in his individual capacity; Correctional Officer Douglas Jones, in his individual capacity; Correctional Officer John Doe, in his individual capacity

*Defendants - Appellants*

———————————

Appeal from United States District Court
for the Eastern District of Missouri

———————————

Submitted: April 16, 2025
Filed: July 27, 2026

———————————

Before LOKEN, GRUENDER, and GRASZ, Circuit Judges.

———————————

GRASZ, Circuit Judge.

Marrell Withers, Jerome Jones, Darnell Rusan, and Derrick Jones were pretrial detainees housed at a correctional facility in St. Louis, Missouri. They sued various correctional officers, including Lieutenant Sherry Richard, Lieutenant Javan Fowlkes, Lieutenant Aisha Turner, Officer Direll Alexander, Officer Bruce Borders, Captain Freddie Wills, and Officer Douglas Jones (collectively, the officers) under 42 U.S.C. § 1983 for excessive use of force in violation of their Fourteenth Amendment due process rights. Specifically, the detainees allege the officers acted unreasonably by spraying them with mace on various occasions. The detainees also sued the City of St. Louis under § 1983 and brought *Monell*[1] claims for excessive force and unlawful conditions of confinement against the City for excessive use of mace and deprivation of water. Two of the detainees, Withers and Rusan, also brought a claim under the Americans with Disabilities Act (ADA) against the City. The officers and the City moved for summary judgment on all the detainees' claims based on qualified immunity. The district court denied their motions, and they appeal. We affirm in part, reverse and remand in part, and dismiss in part for lack of jurisdiction.

## I.  Analysis

We discuss each claim against the officers and the City in turn, incorporating the relevant facts as to each incident in the analysis below.

### A.  Claims Against the Officers

We review a district court's denial of summary judgment based on qualified immunity de novo. *Sterling v. Bd. of Trs. of the Univ. of Ark.*, 42 F.4th 901, 904 (8th Cir. 2022). "A district court's grant of '[s]ummary judgment is only appropriate when there is no genuine dispute as to any material fact and the moving party is

---

[1]*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978).

entitled to judgment as a matter of law.'"  *White v. Jackson*, 865 F.3d 1064, 1074 (8th Cir. 2017) (alteration in original) (quoting *Nichols v. Tri-Nat'l Logistics, Inc.*, 809 F.3d 981, 985 (8th Cir. 2016)).  We generally lack jurisdiction to hear an interlocutory appeal from a district court's order denying a summary judgment motion based on qualified immunity because it is not a final decision.  *Langford v. Norris*, 614 F.3d 445, 455 (8th Cir. 2010).  However, we do have limited jurisdiction to review abstract issues of law.  *Id.*

We address the constitutional claims against the individual officers first.  A government official is entitled to qualified immunity unless (1) he violated a plaintiff's constitutional right and (2) that right was clearly established at the time of the violation.  *Pearson v. Callahan*, 555 U.S. 223, 232 (2009).

A pretrial detainee's rights arise under the Fourteenth Amendment's Due Process Clause.  *Glover v. Paul*, 78 F.4th 1019, 1021 (8th Cir. 2023).  To determine whether an officer's use of force was excessive, we ask whether the force used against the detainee was "objectively unreasonable."  *Id.*  When answering this inquiry, "we may consider whether the actions of a governmental officer are 'rationally related to a legitimate nonpunitive governmental purpose,' and whether the actions 'appear excessive in relation to that purpose.'"  *Id.*  (quoting *Kingsley v. Hendrickson*, 576 U.S. 389, 398 (2015)).  While not exclusive, the Supreme Court has outlined some specific considerations that "may bear on the reasonableness or unreasonableness of the force used" here, such as:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

*Ryan v. Armstrong*, 850 F.3d 419, 427 (8th Cir. 2017) (quoting *Kingsley*, 576 U.S. at 397–98).  This standard leaves room for the government's legitimate interests in "'need[ing] to manage the facility in which the individual is detained,' appropriately

-3-

deferring to 'policies and practices that in th[e] judgment' of jail officials 'are needed to preserve internal order and discipline and to maintain institutional security.'" *Kingsley*, 576 U.S. at 397 (quoting *Bell v. Wolfish*, 441 U.S. 520, 540, 547 (1979)).

The constitutional violation must also be clearly established. *Glover*, 78 F.4th at 1021. "A constitutional right is clearly established if 'a reasonable official would understand that what he is doing violates that right.'" *Id.* (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). "A plaintiff need not identify 'a case directly on point,' but controlling authority or a robust consensus of persuasive authority must put the constitutional question 'beyond debate.'" *Id.* (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)). We have held, "Not every instance of inmate resistance justifies the use of force, and use of pepper spray will not be justified every time an inmate questions orders or seeks redress for an officer's actions." *Treats v. Morgan*, 308 F.3d 868, 872–73 (8th Cir. 2002) (internal citation omitted). While individualized analysis is required, it is clearly established that "[t]he use of a pepper spray gun for non-compliance with an order is excessive force when an inmate does not pose a real threat to others or raise security concerns." *Bolin v. Wilkins*, 174 F.4th 1085, 1091 (8th Cir. 2026).

A pretrial detainee's rights are at least as strong as the protections afforded to convicted prisoners under the Eighth Amendment. *Glover*, 78 F.4th at 1021. Because an action that violates the Eighth Amendment necessarily violates the Fourteenth Amendment, force determined to be excessive under the Eighth Amendment is sufficient to put officials on notice that it also violates the Fourteenth Amendment. *Id.* at 1022.

Before analyzing whether each of the specific instances of force alleged violated the Fourteenth Amendment, we must address whether the district court conducted a proper qualified immunity analysis. A person "may be held personally liable for a constitutional violation only if his own conduct violated a clearly established constitutional right." *Baribeau v. City of Minneapolis*, 596 F.3d 465, 482 (8th Cir. 2010). Qualified immunity thus requires an individualized analysis as

-4-

to each officer.  *Roberts v. City of Omaha*, 723 F.3d 966, 974 & n. 2 (8th Cir. 2013). While an exhaustive written analysis of the claims against each defendant is not required, the district court must analyze "each officer's alleged conduct to determine whether the factual allegations against each individual officer were sufficient to overcome qualified immunity."  *Id.* at 974.  The analysis must set forth findings of fact and conclusions of law "sufficient to permit meaningful appellate review." *Walton v. Dawson*, 752 F.3d 1109, 1116 (8th Cir. 2014).

In *Roberts*, "the district court *did not conduct* an individualized analysis of each officer's alleged conduct" in denying defendant officers qualified immunity from the plaintiff's Fourth Amendment excessive force claims.  723 F.3d at 974 (emphasis added).  We therefore held the qualified immunity analysis inadequate, conducted our own individualized analyses using the district court's evidence-based factual findings, and reversed the denial of qualified immunity for many but not all the defendants.  *Id.* at 974–75.  Here, the district court's order provided some brief background about most of the uses of force alleged but failed to mention one use of force and cursorily stated that the evidence was sufficient as to those "particular instances" of force, referring to all the detainees, officers, and uses of force collectively.  While each use of force involved an officer using mace against a detainee, each incident was independent and involved unique circumstances, including the specific officers and detainees, the surrounding events, and the detainee conduct that prompted the use of mace.  In these circumstances, the district court failed to perform a proper individualized qualified immunity analysis.  *See id.*

Ordinarily, we would remand so the district court could conduct the proper analysis in the first instance.  *See Robbins v. Becker*, 715 F.3d 691, 694 (8th Cir. 2013).  But several of these incidents were caught on video, and the detainees and officers testified extensively during depositions regarding the others, so we will do the required analysis ourselves.  *See Manning v. Cotton*, 862 F.3d 663, 668 (8th Cir. 2017); *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (stressing "the importance of resolving immunity questions at the earliest possible stage in litigation").

-5-

In considering the specific instances of force alleged, "we accept as true the district court's findings of fact to the extent they are not 'blatantly contradicted by the record.'" *Walton*, 752 F.3d at 1116 (quoting *Scott v. Harris*, 550 U.S. 372, 380 (2007)). And where the district court fails "to make a factual finding on an issue relevant to our purely legal review, we 'determine what facts the district court, in the light most favorable to the nonmoving party, *likely* assumed.'" *Id.* (quoting *Johnson v. Jones*, 515 U.S. 304, 319 (1995)). When courts grant or deny qualified immunity at summary judgment, they, of course, can only rule on the record before them. *See United States ex rel. Onnen v. Sioux Falls Indep. Sch. Dist. No. 49-5*, 688 F.3d 410, 413 (8th Cir. 2012). So "[a] qualified immunity defense, although unsuccessful on a motion for summary judgment, may be renewed at trial." *Ellison v. Lesher*, 796 F.3d 910, 918 (8th Cir. 2015); *accord Treats*, 308 F.3d at 875.

### 1.  Withers's claims against Officer Jones and Captain Wills

Viewing the video in the light most favorable to Withers, the incident occurred while the correctional facility was relocating Withers to a COVID-positive area of the jail, after medical staff became concerned he had COVID-19. The video evidence shows that Withers paced around the medical unit for several minutes while handcuffed and then sat down in a chair a few feet away from the officer station. He then began arguing with the correctional officer about being transferred to an isolation unit. Shortly thereafter, backup officers, including Officer Jones and Captain Wills, arrived to assist with Withers's transfer to the isolation unit. The officers ordered Withers to get up from his chair, but he verbally refused and remained seated. While handcuffed, Withers threatened to "break the computer" that was located at the officer station several feet away from him. The officers warned Withers they would spray him with mace if he did not comply with directives to move to his isolation unit, and Withers stated that they should not spray him because he has asthma. However, he still refused to comply with the officers' orders. So while Withers was still sitting down and handcuffed, Officer Jones sprayed Withers in the face with a short burst of mace. Withers then stood up and turned toward the wall, but he continued resisting the officers' efforts to escort him to the

-6-

isolation unit.  Officer Jones therefore sprayed Withers again for less than one second.  Withers then finally complied with the officers' directives, and he was escorted to the isolation unit.  The officers did not provide Withers with a change of clothes or allow him to shower after the macings, which caused his skin to burn for a couple days and resulted in difficulty breathing.

Viewing the available evidence in Withers's favor, Officer Jones is not entitled to qualified immunity.  The video provides little evidence that Withers posed an "immediate threat," either "to himself or others" or to jail "security and order" when Officer Jones sprayed him with mace.  *Peterson v. Heinen*, 89 F.4th 628, 639–40 (8th Cir. 2023).  To be sure, officers were concerned that Withers had COVID-19 and that, a few minutes earlier, he had threatened to "break the computer," but at the time Officer Jones deployed mace, Withers was seated, handcuffed, wearing a sanitary mask, and surrounded by five officers.  At summary judgment, Withers's version of the facts supports a clearly established violation of his Fourteenth Amendment rights because he did "not pos[e] a real threat to other persons or rais[e] security concerns."  *Treats*, 308 F.3d at 872–73 (denying qualified immunity where an officer sprayed an inmate for refusal to take a copy of a form).

As to Withers's claim that he was not allowed to change clothes or shower after being sprayed, there is no allegation or evidence in the record that Officer Jones or Captain Wills were still overseeing Withers once he was transferred to the isolation unit or were otherwise involved in preventing Withers from removing the mace.  Therefore, even assuming that refusing to allow Withers to change clothes or shower would have violated his constitutional rights, neither Officer Jones nor Captain Wills are liable.  *See Baribeau*, 596 F.3d at 482 (explaining that an officer can only be held personally liable for his own conduct).  For these reasons, we reverse the denial of qualified immunity as to Officer Jones and Captain Wills.

-7-

### 2.  Rusan's claim against Lieutenant Turner

While sitting at a phone booth in a common area with other detainees, Rusan began arguing with Lieutenant Turner and Officer Lewis.  Officer Lewis asked Rusan to sit at a different booth after Rusan repeatedly interjected into the officers' conversation and made Lieutenant Turner feel "unsafe."  Lieutenant Turner had entered the unit because Officer Lewis reported she smelled smoke in the unit.  Lieutenant Turner believed the detainees had been smoking and that Rusan was under the influence of drugs.  Rusan began arguing with Lieutenant Turner and became increasingly agitated.  Lieutenant Turner began walking toward the exit of the common area but returned after Officer Lewis ordered Rusan to "step-in" to his cell.  After Rusan ignored at least five directives to "step-in" to his cell, Lieutenant Turner sprayed him for approximately one second.  Immediately after being sprayed, Rusan picked up a chair and threw it at Lieutenant Turner.

Considering the relevant factors, Lieutenant Turner's use of mace was not excessive.  Rusan persistently refused to step into his cell and became increasingly agitated as the incident escalated.  The security risk was high at this time, particularly because only two officers were in the housing unit with several other detainees, and Rusan's demeanor became increasingly hostile.  *See Leonard v. St. Charles Cnty Pol. Dep't*, 59 F.4th 355, 360 (8th Cir. 2023) (considering the inmate's "size and strength" in determining whether use of mace was reasonable).  Lieutenant Turner had a legitimate interest in maintaining safety and order in the housing unit.  *See Bell*, 441 U.S. at 561.  And "[g]iven the fast-moving and volatile situation [s]he faced, the use of non-lethal force was reasonable under the circumstances." *Leonard*, 59 F.4th at 360.  Because Rusan failed to show the use of force violated his due process rights, we reverse the denial of qualified immunity as to Lieutenant Turner.

-8-

### 3.  Derrick's claims against Lieutenant Richard and Lieutenant Fowlkes

Because Derrick's cellmate along with other inmates in the facility were exhibiting symptoms of COVID-19, Lieutenant Richard directed Derrick to enter his cell, but he refused.  Lieutenant Richard left the area and returned with mace.  She and Lieutenant Fowlkes repeatedly directed Derrick to get into his cell, but he remained in the common area.  Derrick began pacing around the common area and, at one point, entered the officer-only area of the floor.  Derrick then stood still with his arms crossed, and Lieutenant Richard sprayed him for approximately one second.  Derrick then lunged towards Lieutenant Richard and was taken to the ground by other officers, including Lieutenant Fowlkes.  While in the process of restraining Derrick, Lieutenant Fowlkes sprayed him with mace again.  The officers eventually restrained and handcuffed Derrick.

Here, Derrick resisted Lieutenant Richard's and Lieutenant Fowlkes's repeated commands to return to his cell for over two minutes.  But when Lieutenant Richard deployed the mace, Derrick had been standing still for nearly two minutes and had just crossed his arms.  There were eight officers — and no other inmates — in the room.  These circumstances do not indicate that Derrick posed a "real threat." *Bolin*, 174 F.4th at 1091.  While the officers were entitled to use "reasonable force" to move Derrick into his cell, *Johnson v. Bi-State Just. Ctr.*, 12 F.3d 133, 136 (8th Cir. 1993), the officers made no attempt to use lesser means of force.  *See Shelton v. Stevens*, 964 F.3d 747, 753 (8th Cir. 2020) ("Although the reasonableness requirement of the Fourth Amendment does not require an officer to pursue the least aggressive or most prudent course of conduct, the availability of lesser measures is relevant to the inquiry." (internal citation omitted)).  Further, while potential exposure to COVID-19 may pose a safety risk, it is difficult to say that this risk was particularly pertinent here, given that only minutes had passed since Derrick had been allowed to freely wander the common area.  Although Derrick was non-compliant, he posed no "real threat to others" nor "raise[d] security concerns." *Treats*, 308 F.3d at 872.  Thus, viewing the facts in Derrick's favor, we conclude Lieutenant Richard is not entitled to qualified immunity.

-9-

As to Lieutenant Fowlkes's use of mace, Derrick threatened Lieutenant Richard's and other officers' safety when he lunged at Lieutenant Richard and continued to physically resist officers while he was on the ground. *See id.*; *see also Kingsley*, 576 U.S. at 397.  Because Lieutenant Fowlkes sprayed Derrick to protect Lieutenant Richard from his attack and to help officers restrain him, it did not violate his constitutional rights. *See Leonard*, 59 F.4th at 360.  We therefore reverse the denial of qualified immunity as to Lieutenant Fowlkes's first use of force against Derrick.

### 4.  Derrick's second claim against Lieutenant Fowlkes

These facts flow from the preceding incident but were not captured on video. Derrick asserts that after the officers restrained him, he was escorted to a medical room.  While cuffed in the medical room, Derrick yelled he felt like he was burning, couldn't breathe, and his lungs were closing up.  Lieutenant Fowlkes then entered the medical room and directly sprayed Derrick for seven seconds and flippantly said, "[L]et him marinate."

Viewed in the light most favorable to Derrick, Lieutenant Fowlkes's use of force in this instance was objectively unreasonable. *See Glover*, 78 F.4th at 1021 (considerations for reasonableness).  Derrick alleges that he was restrained, was non-threatening, and was not resisting when Lieutenant Fowlkes sprayed him.  Our caselaw is clear that spraying with mace a restrained and non-resisting pretrial detainee who "does not pose a threat to others or raise security concerns" violates his Fourteenth Amendment rights. *Bolin*, 174 F.4th at 1091 (affirming the denial of qualified immunity for an excessive force claim where an officer fired pepper spray balls against a detainee who was "standing inside his cell, six feet away, with his arms raised" and otherwise did not pose a safety threat or security concern); s*ee also Walker v. Bowersox*, 526 F.3d 1186, 1189 (8th Cir. 2008) (affirming the denial of qualified immunity for an excessive force claim against officer who maced an inmate that refused to return meal tray, but was restrained in his cell, sprayed with no warning, and not allowed to shower or change his mace-soaked clothes or bedding

-10-

for three days); *Lawrence v. Bowersox*, 297 F.3d 727, 732 (8th Cir. 2002) (holding that spraying a non-resistant and restrained inmate and leaving him in his mace-filled cell with no opportunity to remove the mace from his skin and clothing was not entitled to qualified immunity).  Taking the facts in the light most favorable to Derrick, his due process rights were violated when Lieutenant Fowlkes maced him. Accordingly, we affirm the district court's denial of qualified immunity to Lieutenant Fowlkes on this claim.

### 5.  Rusan's claim against Lieutenant Fowlkes

During a "shake down" of Rusan's housing unit, Rusan was taken to a visiting booth to be strip searched.  Rusan fully complied with the initial strip search, and the officers found no contraband on him.  After the first search, while Rusan was in the process of putting his boxer shorts back on, Rusan turned to the officer who performed the search and said, "Hey, you like this job, man?"  The officer told Rusan to "bend over and spread them again."  Another officer suggested they should just let Rusan go back to his cell.  But the officer who performed the search refused, called Lieutenant Fowlkes in, and told him Rusan was refusing the search. Lieutenant Fowlkes walked into the visiting booth, maced Rusan, and left him in the mace-filled booth for three to four hours without medical attention or the ability to remove the mace residue from his person or clothing.

Likewise, under Rusan's telling of the facts, Lieutenant Fowlkes's use of mace against Rusan, who was restrained and non-resistant at the time, was unreasonable.  *See Glover*, 78 F.4th at 1021; *Bolin*, 174 F.4th at 1091; *Walker*, 526 F.3d at 1189; *Lawrence*, 297 F.3d at 732.  So we affirm the denial of qualified immunity to Lieutenant Fowlkes on this claim.

### 6.  Jerome's claim against Lieutenant Fowlkes

After Jerome failed to comply with orders to move cells, Lieutenant Fowlkes handcuffed him, took him to a visiting booth, sprayed him with mace, and left him

-11-

in the closed booth for thirty minutes. Jerome was restrained and not physically resisting when he was sprayed. Jerome yelled for help because he could not breathe and laid on the floor "to suck some air from under the door." But no one provided Jerome with medical attention or allowed him to shower, and he continued to experience respiratory distress.

As with the previous two incidents, the plaintiff-friendly version of the facts says that Lieutenant Fowlkes's use of force was unreasonable under these circumstances because Jerome was restrained and non-resistant when he was maced. *See Glover*, 78 F.4th at 1021; *Bolin*, 174 F.4th at 1091; *Walker*, 526 F.3d at 1189; *Lawrence*, 297 F.3d at 732. So we also affirm the denial of qualified immunity to Lieutenant Fowlkes on this claim.

### 7. Derrick and Jerome's claim against Lieutenant Fowlkes

Additionally, Derrick and Jerome also brought conditions of confinement claims against Lieutenant Fowlkes for deprivation of water. The district court did not analyze these claims in its order. Jerome testified during his deposition that his access to water was shut off after riots broke out in the facility, which included detainees breaking windows and "popping sprinklers" to flood the housing units, causing his unit to become "like a mini olympic swimming pool." But he did not testify as to who was responsible for restricting his access to water. Derrick, on the other hand, testified that Lieutenant Fowlkes shut off his access to water during this period. He also testified, however, that the water was never off for more than twelve hours at a time and that he was still given fluids at mealtimes when the water was off.

"[T]he government may detain defendants pretrial and 'may subject [them] to the restrictions and conditions of [a] detention facility so long as those conditions and restrictions do not amount to punishment, or otherwise violate the Constitution.'" *Stearns v. Inmate Servs. Corp.*, 957 F.3d 902, 907 (8th Cir. 2020) (quoting *Bell*, 441 U.S. at 536–37). The plaintiff must either "show that the

-12-

conditions were intentionally punitive" or "that the conditions were not reasonably related to a legitimate governmental purpose or were excessive in relation to that purpose." *Id.*

Jerome's claim against Lieutenant Fowlkes fails because he did not testify or present any evidence that Officer Fowlkes was responsible for shutting off his access to water. *See Baribeau*, 596 F.3d at 482. And while Derrick testified that Lieutenant Fowlkes restricted his access to water, he also testified that the water was never turned off for more than twelve hours at a time and that he was provided with fluids during these periods. Given the serious security risks caused by detainees flooding their cells and housing units at this facility, Derrick did not meet his burden to show that the temporary water shut-offs "were excessive in relation to" the officers' legitimate purpose in maintaining a secure facility. *Stearns*, 957 F.3d at 907.

### B.  Claims against the City

The City urges us to also address the detainees' *Monell* claims for excessive use of mace and deprivation of water. To exercise pendent jurisdiction over these claims, the *Monell* claims must be "inextricably intertwined with the qualified immunity analysis." *Roberts*, 723 F.3d at 975 (cleaned up). "An issue is inextricably intertwined with properly presented issues only when the appellate resolution of the collateral appeal necessarily resolves the pendent claims as well." *Id.* (quoting *Lockridge v. Bd. of Trs., Univ. of Ark.*, 315 F.3d 1005, 1012 (8th Cir. 2003)). Because we reverse the denial of qualified immunity on some of the detainees' claims, the issues before us are not inextricably intertwined with those raised by the *Monell* claims and we, therefore, cannot resolve them as part of this appeal. *See Shannon v. Koehler*, 616 F.3d 855, 865–66 (8th Cir. 2010) (dismissing *Monell* claims for lack of appellate jurisdiction because qualified immunity claims against specific officers are not inextricably intertwined with *Monell* claims against a municipality).

-13-

Next, the City also asks us to exercise pendent appellate jurisdiction over the district court's denial of summary judgment as to Withers and Rusan's ADA claim against the City for failure to accommodate their medical conditions.  But ADA claims are not "inextricably intertwined" with the denial of qualified immunity, so this court lacks pendent jurisdiction over this issue.  *Langford*, 614 F.3d at 458–59 (dismissing appeal brought under the ADA and Rehabilitation Act because pendent appellate jurisdiction did not exist from the plaintiffs' § 1983 claims where the collateral claim did not "necessarily resolve the pendent claim").  Here, there is no independent basis to appeal the denial of summary judgment of an ADA claim.  The ADA claim brought against the City is not necessarily resolved by the excessive force claims against the individual officers that were brought by Withers and Rusan because it arises from different facts than the excessive force claims.  *Id.* at 458–59.  We therefore dismiss the appeal of Withers and Rusan's ADA claim for lack of jurisdiction.

## II.  Conclusion

For the foregoing reasons, we dismiss in part for lack of jurisdiction, affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.[2]

---

[2]At oral argument, the officers conceded they waived their appeal of the denial of qualified immunity as to the claim against Officer Alexander and Officer Borders, so we do not exercise jurisdiction over Rusan's use of force claim against them.

-14-